Hilary L. Barnes, #19669
Philip J. Giles, #30340
**ALLEN BARNES & JONES, PLC**
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona  85004
Office: (602) 256-6000
Fax: (602) 252-4712
Email: hbarnes@allenbarneslaw.com
          pgiles@allenbarneslaw.com

Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| Bob Bondurant School of High Performance Driving, Inc., | Case No. 2:18-bk-12041-BKM |
| Debtor. | **EXPEDITED MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING; (II) GRANTING SECURITY INTERESTS AND LIENS TO DEBTOR-IN-POSSESSION LENDER AND RELATED RELIEF** |
| | Hearing Date:  TBD<br>Hearing Time:  TBD |

Bob Bondurant School of High Performance Driving, Inc., the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**"), hereby submits this emergency motion (the "**Motion**")[1] seeking entry of interim and final orders, as applicable, (1) authorizing the Debtor to obtain a post-petition loan totaling $675,000 (the "**DIP Loan**") from Arlington Street Investments, LLC (collectively, with its nominee, successors and assigns, the "**DIP Lender**"); (2) granting to the DIP Lender super-priority administrative status and a first-position lien on substantially all of the Debtor's assets; and (3) granting certain related relief under sections 362, 364(c), (d) and (e), 503(b), 507(b), and 546(c), of title 11 of the United

---

[1] With this Motion the Debtor is filing its motion for expedited hearing seeking and order setting this Motion for consideration at the hearing currently scheduled on February 13, 2019 at 2:30 p.m.

States Code (as amended, the "**Code**"), and Rules 2002, 4001(b), (c) and (d), 6004(h), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Rules**") and Local Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Arizona (the "**Local Rules**").

Such relief includes approval of the Debtor's execution of that certain *Senior Secured Super-priority Debtor in Possession Credit and Security Agreement* and related loan documents (collectively, the "**DIP Loan Documents**"), attached as <u>Exhibit 1</u> to the Proposed Interim Order. As a condition to funding, the DIP Lender is seeking a priming lien on all current and future assets of the estate including any of the estate's causes of action under Chapter 5 of the Code to secure the Debtor's performance under the DIP Loan.

This Motion is supported by the following Memorandum of Points and Authorities, the *Declaration of Timothy H. Shaffer* (the "**Shaffer Declaration**"), and the entire record before the Court in the Case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**      <u>**INTRODUCTION**</u>

Pursuant to Code §§ 362, 364(c), (d), and (e), 503(b), 507(b), and 546(c), the Debtor seeks entry of an interim order, substantially in the form attached as **Exhibit A** hereto (the "**Interim Order**"): (a) authorizing the Debtor to obtain debtor-in-possession financing in the total amount of $675,000 in two tranches: (i) on an interim basis in the amount of $281,186, and (ii) on a final basis in the amount of $393,814, and (b) in connection therewith granting super-priority administrative expense status to the DIP Lender and grant to the DIP Lender a priming lien on substantially all of the Debtor's current and future assets, including Chapter 5 causes of action; (b) scheduling an expedited final hearing (the "**Final Hearing**") on the Motion to consider entry of a final order (the "**Final Order**") authorizing the request relief; and (c) granting certain related relief.

## II. **SPECIAL NOTICES UNDER LOCAL RULE 4001-4**[2]

In accordance with the disclosure requirements of Rules 4001(b)-(d) and Local Rule 4001-4(b), the material terms of the DIP Loan Documents are summarized below.[3]

| Provision | Description |
|---|---|
| **Borrower** | Bob Bondurant School of High Performance Driving, Inc. |
| **DIP Lender** | Arlington Street Investments or its nominee |
| **DIP Loan** | A senior secured post-petition term loan of $675,000, of which $281,186 (**"Interim Order Amount"**) will be funded to the Debtor within 48 hours after entry of the Interim Order to satisfy specific post-petition obligations, and $393,814 (the "**Final Order Amount**") will be funded within 24 hours after entry of a Final Order, with $15,000 to be used immediately to pay the DIP Lender's legal fees and costs (**"DIP Lender Fees"**) and $29,250 held back to establish an interest reserve (**"Interest Reserve"**). After the holdbacks for the DIP Lender Fees and the Interest Reserve, the amount to be advanced to the Debtor to fund post-petition operations and professional fees of the Debtor shall be $349,564. |
| **Termination Date** | The DIP Loan will become due and payable on the occurrence of the "Termination Date," which would be the earliest of the following: (i) March 31, 2019, (ii) the date the Debtor terminates the DIP Lender's commitment to make any further advances under the DIP Loan; (iii) the closing of a Code § 363 sale; or (iv) the date the DIP Lender terminates the DIP Loan or decides to make no further advances following an Event of Default. |
| **Interest Rate** | Thirteen percent (13%) per annum. |
| **Fees** | From the Final Order Amount, the Debtor shall set aside $15,000 for the DIP Lender's legal fees and expenses (**"DIP Lender Fees"**) in the amount of $15,000. The DIP Lender Fees will be deducted from the principal amount of the DIP Loan prior to disbursement of funds to the Debtor. |
| **Use of Cash Collateral/ Budget** | Debtor is authorized to use the DIP Lender's cash collateral, in accordance with a budget (the "**Budget**"), attached as Exhibit 2 to the Interim Order, subject to a ten (10%) adversarial change in |

---

[2] Pursuant to Local Rule 4001-4(a), in advance of this filing, the Debtor provided a copy of the term sheet attached as **Exhibit B** to this Motion to the Office of the United States Trustee.

[3] The following summary is intended only for informational purposes and is qualified in its entirety by the more specific and detailed provisions of the DIP Loan Documents, attached as Exhibit 1 to the Interim Order (currently slip-sheeted). Capitalized terms not otherwise defined in this Motion have the meaning ascribed to those terms in the DIP Loan Documents.

| Provision | Description |
|---|---|
| | the aggregate. |
| **Super-priority Claims and DIP Liens (including priming lien)** | The DIP Loan will constitute an allowed super-priority administrative claim under Code § 364(c)(1) with priority over all administrative expenses and other claims against the Debtor, including all administrative expenses specified in §§ 503(b) and 507(b) and any claims arising under Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), or 726, payable from all the Debtor's prepetition and post-petition property and all proceeds thereof.<br><br>Pursuant to Code § 364(c) and (d), as security for the extension of the DIP Loan, effective and perfected on entry of the Interim Order and without the execution or recordation of any security agreement, pledge, financing statement, or other similar document, though the same may be required by DIP Lender, the Debtor will grant a valid, binding, continuing, enforceable, perfected first-priority lien on all of the Debtor's property, including all causes of action arising under Chapter 5 of the Code, if any. |
| **Prohibition of Sale of DIP Collateral and Credit Bid Rights** | Debtor shall not sell, assign (by operation of law or otherwise) or otherwise dispose of any of the DIP Collateral (defined below) without approval from the Bankruptcy Court, except in the ordinary course of business pursuant to Rule 6004, in which case such DIP Collateral shall be free and clear of the DIP Lender's security interest. In the event the Bankruptcy Court approves a sale not in Debtor's ordinary course of business, the DIP Lender may credit bid for the then-balance of the DIP Loan. Should the resulting sale price exceed the balance of the DIP Loan, the DIP Collateral shall be sold free and clear of DIP Lender's security interest, with said security interest attaching to the sale proceeds upon closing of the sale transaction. |
| **Events of Default** | The occurrence or existence of any one or more of the following events or conditions, whether voluntary or involuntary, constitutes an Event of Default:<br><br>(a) Debtor fails to perform or observe any covenant or other agreement contain in the DIP Loan Documents and such failure shall continue for a period of fifteen days after DIP Lender gives Debtor written notice thereof;<br><br>(b) The CRO is removed or replaced before consummation of a Code § 363 sale or confirmation of a plan acceptable in terms and conditions approved by the DIP Lender;<br><br>(c) Any representation or warranty made by or on behalf of Debtor, or other information provided by or on behalf of Debtor to DIP Lender, was incorrect or misleading in any material |

| Provision | Description |
|---|---|
| | respect at the time it was made or provided; |
| | (d)    Any DIP Loan Document is terminated other than as provided for in the DIP Loan Documents or becomes void or unenforceable, or any security interest or lien ceases to be a valid and perfected first-priority security interest in or lien on any portion of the DIP Collateral; |
| | (e)    A trustee or examiner with expanded powers is appointed in the Case and the order appointing such trustee, responsible officer, or examiner shall not have been stayed, reversed, or vacated within thirty days after the entry thereof; |
| | (f)    The conversion of the Case from one under chapter 11 to one under chapter 7 of the Bankruptcy Code; |
| | (g)    If there occurs an uninsured loss to any material portion of the DIP collateral; |
| | (h)    an order is entered by the Bankruptcy Court approving a sale of the Debtor or any DIP Collateral (other than the sale of Inventory in the ordinary course of business) on terms to which DIP Lender has not given its prior written consent, unless such motion provides for immediate repayment in cash of all obligations and indebtedness under the DIP Loan Documents; and/or |
| | (i)    without DIP Lender's written consent, the Debtor's actual cumulative disbursements exceeds the projected monthly disbursements in the Budget by more than 10% in the aggregate. |

## I.    **JURISDICTION AND VENUE**

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates and legal bases for the relief requested herein are Code §§ 362, 364(c), (d) and (e), 503(b), 507(b), and 546(c); Rules 2002, 4001, and 9014; and Local Rule 4001-4.

## II.     PROCEDURAL BACKGROUND

3.     On October 2, 2018 (the "**Petition Date**"), the Debtor commenced the Case by filing a petition for relief under Chapter 11 of the Bankruptcy Code.

4.     After an operational disruption on November 12, 2018, the Debtor engaged Timothy H. Shaffer of Clotho Recovery Systems as its Chief Restructuring Officer ("CRO"), whose retention and employment the Court approved on December 11, 2018 *nunc pro tunc* to November 13, 2018.

5.     On July 28, 2011, the Debtor entered into certain loan documents with JPMorgan Chase Bank, N.A. ("**Chase**") whereby Chase provided a business line of credit ("**Line of Credit**") to Debtor in the principal amount of $150,000, and the obligation was secured purportedly by a blanket lien against the Debtor's assets pursuant to a grant of security within a promissory note and a filed UCC-1 financing statement.  Chase's claim against the Debtor is approximately $151,000.  The Debtor is still investigating the scope of Chase's lien, and fully reserves its rights in connection therewith. However, the Debtor avers that Chase is protected by an equity cushion given the relatively small amount due under the Line of Credit.   In addition, the Debtor is current on its obligations under the Line of Credit and makes monthly adequate protection payments of approximately $800, which are applied to the interest due and owing on the Line of Credit.

6.     Since the Petition Date, the Debtor has been engaged in discussions and negotiations with numerous parties and groups, subject to non-disclosure agreements, regarding debtor-in-possession financing ("**DIP financing**") and/or other possible transactions involving the Debtor's operations, assets, and its plan of reorganization.

7.     Despite its diligent efforts, the Debtor has been unable to obtain DIP financing in the form of unsecured credit allowable under Code § 503(b)(1) as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Code § 364(c)(1).

8.      On January 4, 2019, the Debtor's landlord ("Sun Valley") filed the *Sun Valley Marina Development Corporation's Motion to Compel Payment of Post-Petition Rent* [Docket No. 118] ("**Motion to Compel**"), seeking payment of approximately $212,000 for overdue rent payments.  Sun Valley and the Debtor have been involved in discussions about how to bring Sun Valley current and continue the Debtor's operations without disruption, but without the DIP Loan, the Debtor will be unable to pay the total amount due to Sun Valley in one lump sum.

9.      The Debtor is also behind on certain other lease payments, but those leaseholders have been patient with the Debtor given its cash flow issues; however, their patience is beginning to wear thin.

10.      To prevent immediate and irreparable harm to the bankruptcy estate and its creditors, the Debtor has no choice but to obtain DIP financing granting a lien on certain estate property of the estate that is already subject to a lien and other estate property that is not subject to any lien.  The Debtor has been unable to procure DIP financing in the appropriate amount from any source other than the DIP Lender.

11.      An immediate infusion of funds in the form of the DIP Loan is critical to bringing Sun Valley and other leaseholders current, providing the Debtor with operational breathing room, and moving the Debtor forward to a § 363 sale and a confirmable plan of reorganization.

12.      The DIP Lender is willing to provide the DIP Loan to the Debtor on the condition that, as security, the DIP Lender shall receive a first-position senior security interest in and blanket lien on (the "**DIP Lien**") all of Debtor's property and assets (tangible, intangible, real, personal, and mixed), whether in existence on or before the Petition Date or created, acquired, or arising on or after the Petition Date and wherever located, including, without limitation, accounts, books, chattel paper, cash and cash equivalents, deposit accounts, goods, equipment, fixtures, inventory, investment-related property, negotiable instruments, commercial tort claims, leasehold interests, contracts, customer lists, chapter 5 causes of action, websites, and all other assets related to or associated with e-commerce, insurance, general intangibles (including intellectual property and intellectual property licenses), and all products and proceeds (including

insurance proceeds) thereof (all such tangible, intangible, real and personal property, and the proceeds thereof, being collectively referred to hereinafter as the "**DIP Collateral**"). The DIP Lender shall also receive a super-priority administrative claim as set forth above.

13.     Working with the Debtor's CFO, the CRO developed a Budget that is attached to the Interim Order as <u>Exhibit 2</u>. The Debtor and the DIP Lender have agreed that the Debtor may use the proceeds of the DIP Loan to fund its operations in accordance with the Budget. However, the initial loan amount will be used to bring post-petition lease payments current to resolve the Motion to Compel and to fund other post-petition lease amounts.

## III.     <u>BASIS FOR RELIEF REQUESTED</u>

As set forth in detail above, the Debtor needs post-petition financing to bring the Sun Valley lease and certain other leases current, sustain its operations, and enable the Debtor to move forward to exit the bankruptcy case. The DIP Loan is the only financing available to the Debtor at this time, and the Debtor's need is critical. Thus, based on the foregoing and for the reasons set forth below, the Debtor submits that it has satisfied the requirements to access post-petition financing on a super-priority secured basis under Code § 364.

### A.     <u>Post-petition Financing Under Code § 364 Is Appropriate Here.</u>

Under Code § 364(c), a court may authorize a debtor to incur debt that is (a) entitled to a super-priority administrative expense status; (b) secured by a lien on otherwise unencumbered property; or (c) secured by a junior lien on encumbered property if the debtor cannot obtain post-petition credit on an unsecured basis, on an administrative expense priority, or secured solely by junior liens on the debtor's assets. 11 U.S.C. § 364(c); *In re Barbara K. Enters*, Inc., No. 08-11474 (MG), 2008 WL 2439649, at *8 (Bankr. S.D.N.Y. June 16, 2008) (for a debtor to obtain post-petition secured credit under Code § 364, the debtor must prove that it was unable to reasonably obtain secure credit elsewhere); *Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001) (super-priority administrative expenses authorized where debtor could not obtain credit as an administrative expense).

Under Code § 364(d), a court may authorize a debtor to obtain credit secured by a senior lien on property already subject to a lien if (a) the Debtor cannot obtain such credit any other way, and (b) the current lienholder to be primed is adequately protected. 11 U.S.C. § 364(d). Such financing should be approved "[o]nce unavailability of less intrusive credit has been shown and adequate protection found, if required." *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

Courts consider whether the post-petition financing: (a) is necessary to preserve the assets of the estate and is necessary, essential, and appropriate for continued operation of the debtor's business; (b) is in the best interests of the debtor's creditors and estates; (c) is an exercise of the debtor's sound and reasonable business judgment; (d) was negotiated in good faith and at arm's length between the debtor, on the one hand, and the lender on the other; and (e) contains terms that are fair, reasonable, and adequate, given the circumstances of the debtor and the proposed post-petition lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003); *In re Lyondell Chem. Co.*, No. 09-10023 (Bankr. S.D.N.Y. Feb. 27, 2009); *Ames Dep't Stores*, 115 B.R. at 40.

Here, the Debtor proposes to obtain the DIP Loan by providing the DIP Lender, among other things, super-priority claims, security interests, and liens pursuant to Code §§ 364(c)(1)-(2) and 364(d). Chase, whose lien will be primed, is protected by an equity cushion and receives monthly payments under its Line of Credit. The Debtor submits that entry into the DIP Loan Documents satisfies these factors.

**1. The DIP Financing was negotiated in good faith, is in the best interests of the Debtor's creditors and estate, is necessary to preserve estate assets, and is an exercise of the Debtor's sound and reasonable business judgment.**

A debtor's decision to enter into a post-petition lending facility under Code § 364 is governed by the business judgment standard. *See Barbara K. Enters.*, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment);

*Ames Dep't Stores*, 115 B.R. at 38 (noting that financing decisions under Code § 364 must reflect a debtor's business judgment). Courts grant a debtor considerable deference in acting in accordance with its sound business judgment. *See, e.g., Barbara K. Enters*., 2008 WL 2439649, at *14 (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest.").

Specifically, to determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *272 (Bankr. D. Del. Aug. 15, 2007) (quoting *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006)); *In re Brooklyn Hosp. Ctr. and Caledonian Health Ctr., Inc.*, 341 B.R. 405, 410 (Bankr. E.D.N.Y. 2006) (the business judgment rule "is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company") *quoting Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

The Debtor's decision to enter into the proposed DIP Loan Documents is well within the exercise of its sound business judgment. Approval of the DIP Loan will provide the Debtor with immediate access to cash to pay its past-due, current and ongoing post-petition operating expenses. Unless the operating expenses are paid in the interim, the Debtor may be forced to cease operations, which would likely (a) result in irreparable harm to its business, (b) extinguish the Debtor's going concern value, and (c) jeopardize the Debtor's ability to maximize the value of its estate to the detriment of its creditors, shareholders, and employees. With the DIP Loan, the Debtor will be able to resolve the Motion to Compel, continue to satisfy its vendors, service its students, pay its employees, and operate its business in an orderly and reasonable manner to preserve and enhance the value of its estate for the benefit of all parties in interest. Accordingly, the timely approval of the relief requested herein is imperative.

Prior to and after the Petition Date, the Debtor attempted to locate alternative financing to address its liquidity needs. Notwithstanding its efforts, the Debtor has been unable to procure sufficient financing in the form of unsecured credit allowable under Code § 503(b)(1) as an administrative expense under Code § 364(a) or (b). After many meetings and negotiations, the DIP Lender provided the Debtor with the DIP Term Sheet, which will assist the Debtor to move forward.

For these reasons, the Debtor submits that the DIP Loan Documents were negotiated in good faith, and that entry into the DIP Loan Documents to obtain the DIP Loan is (a) within the exercise of the Debtor's sound and reasonable business judgment, (b) in the best interests of the Debtor's creditors, and (c) necessary to preserve the value of the Debtor's estate assets.

**2.** **The terms of the DIP Loan Documents are fair, reasonable, and appropriate in light of the Debtors' needs and the current market environment.**

It is well recognized that the appropriateness of a proposed post-petition financing facility must be considered in light of current market conditions. *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 27, 2009); *Bray v. Shenandoah Fed. Savs. & Loan Assoc. (In re Snowshoe Co. Inc.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (noting that a debtor is not required to seek credit from every possible lender before determining such credit is unavailable). Indeed, courts often recognize that, where there are few lenders likely able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd*, 99 B.R. 117 (N.D. Ga. 1989). Rather, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources available under Code §§ 364(a) and (b). *See Snowshoe*, 789 F.2d at 1088.

Though the current market for financing has improved in recent years, it is still strained in certain distressed industries, including the motor sports industry. In addition, the Debtor faces some unique challenges: its real property is leased from Sun Valley; the fleet of cars it uses to

train Dodge Hellcat and SRT owners is owned and provided to the Debtor by FCA USA; and the Formula 4 cars that it uses for its Grand Prix training course are leased/financed by Bancorp. For the normal asset-based lenders in the DIP lending arena, the Debtor's collateral mix is unusual and challenging. Accordingly, the Debtor believes that the DIP Loan terms are favorable, fair, and appropriate.

**B.** **The DIP Loan Documents Were Negotiated in Good Faith, and the DIP Lender Should Be Afforded the Protection of Code § 364(e).**

Code § 364(e) protects the validity of any debt incurred from a good faith lender and its right in any lien securing the debt, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Specifically, Code § 364(e) provides that any "reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith. . . ." 11 U.S.C. § 364(e).

Courts generally hold that "good faith" in the context of post-petition financing means, consistent with the Uniform Commercial Code, honesty in fact in the conduct or transaction concerned. *See Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599, 605 (6th Cir. 1987) (citing U.C.C. § 1-201(19)). Additionally, good faith is measured with respect to the good faith of the lender as contrasted to that of the borrower. *In re Lyondell Chem. Co.*, No. 09-10023 (Bankr. S.D.N.Y. Feb. 27, 2009). Moreover, a lender's desire to ensure that it is repaid, to make money on interest and fees, and to protect prepetition positions are understandable and acceptable motivations for a post-petition lender in negotiating a deal. *Id*. at 737.

The terms of the DIP Loan Documents were negotiated in good faith and at arm's length between the Debtor and the DIP Lender, and all of the DIP Loan obligations will be extended by the DIP Lender in good faith (as such term is used in Code § 364(e)). No consideration is being provided to any party to the obligations arising under the DIP Loan Documents, other than as set

forth herein. Moreover, the DIP Loan has been extended in express reliance upon the protections offered by Code § 364(e), and the DIP Lender should be entitled to the full protection of Code § 364(e) in the event that either of the orders granting the Motion (or any provision thereof) are vacated, reversed, modified on appeal, or otherwise.

### C.      A Reasonable Modification of the Automatic Stay Is Appropriate.

The DIP Lender requires that the automatic stay imposed under Code § 362 be modified to the extent reasonably necessary to permit the Lender to (i) implement the DIP Loan, (ii) perform any act to create, validate, evidence, or perfect any lien granted or authorized under this Interim Order (although nothing in the Interim Order requires any such act), and, among other things, (iii) to charge, collect, advance, and receive payments under the DIP Loan, as necessary.

Stay modification provisions of this sort are ordinary and usual features of debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances. *See, e.g., In re Innkeepers USA Trust*, Case No. 10-13800 (Bankr. S.D.N.Y. Sept. 2, 2010). Accordingly, the Court should modify the automatic stay to the extent contemplated by the Debtor and the DIP Lender to effectuate the DIP Loan.

### D.      The Court Should Grant Interim Approval.

Bankruptcy Rule 4001 permits a court to approve a debtor's request for financing on an interim basis following the filing of a motion requesting authorization to obtain financing, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001. In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g, Simasko*, 47 B.R. at 449; *see also Ames*, 115 B.R. at 38.

Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtor respectfully requests that the Court conduct an expedited preliminary hearing on this Motion and authorize the Debtor to incur debt in the amount of $675,000 in total, $281,186 initially, pending entry of the Final Order, at which time the Debtor is authorized to borrow the remaining balance of $393,814, to bring Sun Valley current, pay other leaseholders certain overdue amounts, to maintain and finance the

ongoing operations of the Debtor, and to avoid immediate and irreparable harm to the Debtor's estate and all parties in interest.

The Debtor has an urgent and immediate need for cash to continue to operate. As discussed above, absent authorization from the Bankruptcy Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the Motion, the Debtor will be immediately and irreparably harmed. The availability of interim loan under the DIP Loan Documents will provide necessary assurance to the Debtor's vendors, employees, and customers of its ability to meet its near-term obligations. Failure to meet these obligations and to provide these assurances likely would have a significant negative impact on the value of the business, to the detriment of all parties in interest. Accordingly, the interim relief requested is critical to preserving and maintaining the going-concern value of the Debtor until entry of a final order on this Motion.

### E.  <u>Request for Final Hearing</u>

Inasmuch as this Motion seeks interim and final relief in connection with the proposed DIP Financing, the Debtor further requests that the Court schedule an expedited Final Hearing to consider entry of the Final Order that authorizes the Debtor to incur post-petition financing, including granting super-priority administrative expense status and a lien on substantially all of the Debtor's assets under §§ 364(c), 364(d), 503(b), and 507(b), on a final basis.

### IV.  <u>WAIVER OF BANKRUPTCY RULE 6004(h)</u>

The Debtor further seeks a waiver of any stay of the effectiveness of the Interim Order and Final Order approving the Motion. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the DIP Financing is essential to prevent irreparable damage to the Debtor's business, value of its estate, and ability to conduct an orderly sale process. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

# V.     RESERVATION OF RIGHTS

Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Code § 365. In addition, the Debtor reserves the right to seek additional relief from this Court as relates to any of the relief requested pursuant to the Motion.

# VI.     CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order substantially in the form attached as Exhibit A:

A.   Authorizing the Debtor to incur post-petition financing in the amount of $675,000 in accordance with the DIP Loan Documents, including granting super-priority administrative expense status and a first-position security interest in and lien on substantially all of the Debtor's assets, on an interim basis ($281,186 to be paid upon entry of the Interim Order);

B.   Scheduling the Final Hearing on the Motion to consider entry of the Final Order ($349,564 to be paid to the Debtor upon entry of the Final Order, with $15,000 being earmarked for the DIP Lender Fees and $29,250 being used to establish the Interest Reserve, for a total of $393,814); and

C.   Granting such other and further relief as the Court may deem appropriate under the circumstances.

DATED: February 7, 2019.

**ALLEN BARNES & JONES, PLC**

/s/ *HLB #19669*
Hilary L. Barnes
Philip J. Giles
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona 85004
*Attorneys for the Debtor*

{00150446}
-15-
Case 2:18-bk-12041-BKM   Doc 146   Filed 02/07/19   Entered 02/07/19 18:14:40   Desc
Main Document   Page 15 of 48

**E-FILED** on February 7, 2019 with the
U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have
appeared in the case.

**COPY** mailed same date via U.S. Mail to:

OFFICE OF THE UNITED STATES TRUSTEE
230 N. First Avenue, Suite 204
Phoenix, AZ 85003-1706

*Twenty (20) largest unsecured creditors*

**COPY** emailed same date to:

Elizabeth C. Amorosi
OFFICE OF THE UNITED STATES TRUSTEE
230 N. First Avenue, Ste 204
Phoenix, AZ 85003-1706
Elizabeth.C.Amorosi@usdoj.gov

Warren J. Stapleton
OSBORN MALEDON
2929 N. Central Ave., Ste 2100
Phoenix, AZ 85012
wstapleton@omlaw.com
*Attorneys for Sun Valley Marina Development Corp.*

Michelle E. Shriro
SINGER & LEVICK, P.C.
16200 Addison Road, Suite 140
Addison, TX 75001
mshriro@singerlevick.com
*Attorneys for Moses Smith Racing LLC*

Thomas E. Littler
LITTLER, PC
341 W Secretariat Dr.
Phoenix, AZ 85284
telittler@gmail.com
*Attorneys for Semple Marchal Cooper PLC*

Christopher C. Simpson
STINSON LEONARD STREET LLP
1850 N. Central Ave., #2100
Phoenix, AZ 85004
Christopher.simpson@stinson.com
*Attorneys for FCA US LLC*

Sheryl L. Toby
DYKEMA GOSSETT PLLC
39577 Woodward Ave., #300
Bloomfield Hills, MI 48304
stoby@dykema.com
*Attorneys for FCA US LLC*

Larry O. Folks
FOLKS HESS KASS, PLLC
1850 North Central Ave., Suite 1140
Phoenix, AZ 85004
folks@folkshesskass.com
*Attorneys for JPMorgan Chase Bank, NA*

Leslie A. Berkoff
MORITT HOCK & HAMROFF LLP
400 Garden City Plaza
Garden City, NY 11530
lberkoff@moritthock.com
*Attorneys for Unifi Equipment Finance, Inc.*

Christopher R. Kaup
TIFFANY & BOSCO, P.A.
Seventh Floor, Camelback Esplanade II
2525 E. Camelback Rd.
Phoenix, AZ 85016
crk@tblaw.com
*Attorneys for Robert and Patricia C. Bondurant*


*/s/ Misty Vasquez*

# Exhibit A

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| Bob Bondurant School of High Performance Driving, Inc., | Case No. 2:18-bk-12041-BKM |
| Debtor. | **[PROPOSED] INTERIM ORDER GRANTING MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING POST-PETITION SECURED FINANCING** |

Upon the *Expedited Motion for Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Secured Financing; (II) Granting Security Interests and Liens to Debtor-In-Possession Lender and Related Relief* (the "**Motion**") [Docket No. _] filed by Bob Bondurant School of High Performance Driving, Inc., the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned bankruptcy case ("**Case**"), seeking entry of interim and final orders (1) authorizing the Debtor to obtain a post-petition loan totaling $675,000 (the "**DIP Loan**") from Arlington Street Investments, LLC (collectively, with its nominee, successors and assigns, the "**DIP Lender**"); (2) granting to the DIP Lender super-priority administrative status and a first-position lien on substantially all of the Debtor's assets; and (3) granting certain related relief under sections 362, 364(c), (d) and (e), 503(b), 507(b), and 546(c), of title 11 of the United States Code (as amended, the "**Code**"), and Rules 2002, 4001(b), (c) and (d), 6004(h), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Rules**") and Rule 4001-2 of the Local Bankruptcy Rules (the "**Local Rules**"), and upon the Court's consideration of the pleadings, the evidence presented and representations made at the interim hearing held by the Court with regard

to the relief requested in the Motion, the statements of counsel, and after review of the *Senior Secured Super-priority Debtor in Possession Credit and Security Agreement* and related loan documents (collectively, the "**DIP Loan Documents**"), attached as <u>Exhibit 1</u> hereto, and the *Declaration of Timothy H. Shaffer* (the "**Shaffer Declaration**") filed in support of the Motion, the Court hereby makes the following findings of fact and conclusions of law:

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates and legal bases for the relief requested herein are Code §§ 362, 364(c), (d) and (e), 503(b), 507(b), and 546(c); Rules 2002, 4001, and 9014; and Local Rule 4001-4.

3.      On October 2, 2018 (the "**Petition Date**"), the Debtor commenced the Case by filing a petition for relief under Chapter 11 of the Bankruptcy Code.

4.      Since the Petition Date, the Debtor has been managing and continues to manage its properties and operating its businesses as a debtor-in-possession pursuant to Code §§ 1107 and 1108.

5.      No trustee or examiner has been appointed in this bankruptcy case, and an official committee of unsecured creditors has not been appointed at this time.

6.      After an operational disruption on November 12, 2018, the Debtor engaged Timothy H. Shaffer of Clotho Recovery Systems as its Chief Restructuring Officer ("CRO"), whose retention and employment this Court approved on December 11, 2018 *nunc pro tunc* to November 13, 2018.

7.      Since the Petition Date, the Debtor has been engaged in discussions and negotiations with numerous parties and groups, subject to non-disclosure agreements, regarding debtor-in-possession financing ("**DIP financing**") and/or other possible transactions involving the Debtor's operations, assets, and its plan of reorganization.

8.      Despite its diligent efforts, the Debtor has been unable to obtain DIP financing in the form of unsecured credit allowable under Code § 503(b)(1) as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Code § 364(c)(1).

9.      The Debtor has an immediate and ongoing need to obtain financing of the type requested in the Motion to satisfy its current and ongoing post-petition operating and administrative expenses, and to preserve the going-concern value of its assets.

10.     Unless the operating expenses are paid in the interim, the Debtor may be forced to cease operations, which would likely (a) result in irreparable harm to its businesses, (b) diminish the Debtor's going concern value, and (c) jeopardize the Debtor's ability to maximize the value of its estate to the detriment of its creditors, members, and employees.  With the DIP Loan, the Debtor will be able to bring its lease payments current and pay certain other leaseholders, continue to satisfy its vendors, service its students, pay its employees, and operate its business in an orderly and reasonable manner to preserve and enhance the value of its estate for the benefit of all parties in interest.

11.     Subject to the terms and conditions set forth herein, the DIP Lender is willing to extend debtor-in-possession financing to the Debtor in the total amount of $675,000 in two tranches: (i) on an interim basis in the amount of $281,186 and (ii) on a final basis in the amount of $393,814.

12.     A condition to the DIP Lender's willingness to fund the DIP Loan is that, as security for the prompt payment and performance of the DIP Loan and all interest, fees, expenses, and charges at any time payable by the Debtor under this Interim Order and the DIP Loan Documents, the Court grant the DIP Lender the protections set forth in the DIP Loan Documents, including, without limitation[1]—

a.      Senior security interests and a perfected first-position lien in all of the Debtor's

---

[1] To the extent of any conflict, the terms of the Interim Order will control.

-3-

{00150453}

presently-owned and after-acquired assets pursuant to Code §§ 364(c) and (d), including a first-position senior security interest in and lien on (the "**DIP Lien**") all of the Debtor's property and assets (tangible, intangible, real, personal, and mixed), whether in existence on or before the Petition Date or created, acquired, or arising on or after the Petition Date and wherever located, including, without limitation, accounts, books, chattel paper, cash and cash equivalents, deposit accounts, goods, equipment, fixtures, inventory, investment-related property, negotiable instruments, commercial tort claims, leasehold interests, contracts, customer lists, chapter 5 causes of action, websites, and all other assets related to or associated with insurance, general intangibles (including intellectual property, trademarks, and intellectual property licenses), and all products and proceeds (including insurance proceeds) thereof (all such tangible, intangible, real and personal property, and the proceeds thereof, being collectively referred to hereinafter as the "**DIP Collateral**"); and

b. An allowed super-priority administrative claim with respect to the DIP Loan over any and all administrative expenses of the kinds specified in Code §§ 503(b) and 507(b) under Code § 364(c) and (d).

13. The Debtor has shown good cause for the entry of this Interim Order and authorization for the Debtor to execute the DIP Loan Documents and any related documents and to obtain the initial $281,186 of the DIP Loan pending a final hearing on the relief requested in the Motion and entry of a final order granting or denying the relief requested in the Motion.

14. JPMorgan Chase Bank, N.A. ("**Chase**") is adequately protected by an equity cushion and receives adequate protection payments from the Debtor; therefore, the requirements of Code § 364(d) are met.

15. The Debtor's need for financing of the type afforded by this Interim Order and the DIP Loan Documents is immediate and critical. Entry of this Interim Order will minimize

disruption of the Debtor's business and operations as a going concern and is in the best interests of the Debtor, its creditors, and the bankruptcy estate.

16. The terms of the DIP Loan Documents authorized hereby are fair and reasonable, reflect the Debtor's reasonable exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

17. Based upon the Motion, the DIP Loan Documents, and the record presented at the interim hearing, the Court finds that the DIP Loan Documents and the DIP Loan to be evidenced thereby have been negotiated in good faith and at arm's length between the Debtor and the DIP Lender, and the DIP Loan shall be deemed to have been made in good faith within the meaning of Code § 364(e).

18. The Court finds that notice of the Motion, as it relates to the entry of this Interim Order, is sufficient, and that no further notice is necessary.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED AS FOLLOWS:**

A. The Court's findings of fact and conclusions of law made herein are incorporated in this Interim Order and constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052.

B. Due, proper, timely, adequate, and sufficient notice of the Motion and the transactions contemplated thereby has been provided to all parties entitled thereto and such notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion or the transactions contemplated thereby is or shall be required.

C. Subject to the terms and conditions of this Interim Order, the Debtor shall be, and hereby is, authorized (a) to execute the DIP Loan Documents, which are approved hereby in all respects, in substantially similar form attached as Exhibit 1 hereto, and all other related documents requested by the DIP Lender to give effect to the terms thereof and hereof, (b) to receive the $281,186 advance from the DIP Lender under this Interim Order, to be used only in accordance with the Budget attached as Exhibit 2 hereto (the "**Budget**") and as provided in the DIP Loan Documents.

D.      Pending a final hearing on the relief requested in the Motion and entry of a Final Order granting or denying the relief requested in the Motion, the Debtor is further authorized to satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof.

E.      Notwithstanding anything to the contrary in this Interim Order, in no event shall the DIP Lender be obligated to make any advances comprising the DIP Loan if at the time of a requested advance an Event of Default (as defined below) has occurred or a default under this Interim Order exists.  Proceeds of the DIP Loan may be used to pay items identified on the Budget as agreed between the Debtor and the DIP Lender.  The DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of proceeds of the DIP Loan and may, but is not required to, rely on the Debtor's representations that the amount of any advances requested by the Debtor, and the use thereof, are in accordance with the requirements of this Interim Order, the DIP Loan Documents, and the Budget.

F.      To secure the prompt payment and performance of the Obligations, the DIP Lender shall have, and is hereby granted, effective on and after the Petition Date:

a. Senior security interests and a perfected first-position lien in all of the Debtor's presently-owned and after-acquired assets and Collateral pursuant to Code §§ 364(c), and (d) ("**DIP Lien**");

b. An allowed super-priority administrative claim with respect to the DIP Financing over any and all administrative expenses of the kinds specified in Code §§ 503(b) and 507(b) under Code § 364(c)(1).

G.      The DIP Lien shall also attach to: (a) any causes of action pursuant to Code §§ 544, 545, 547, 548, 550, or 553 (the "**Avoidance Actions**") and (b) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions.

H.      The occurrence or existence of any one or more of the following events or conditions, whether voluntary or involuntary, constitute an Event of Default:

(a)   Debtor fails to perform or observe any covenant or other agreement contain in the

DIP Loan Documents and such failure shall continue for a period of fifteen days after DIP Lender gives Debtor written notice thereof;

(b) The CRO is removed or replaced before consummation of a Code § 363 sale or confirmation of a plan acceptable in terms and conditions approved by the DIP Lender;

(c) Any representation or warranty made by or on behalf of Debtor, or other information provided by or on behalf of Debtor to DIP Lender, was incorrect or misleading in any material respect at the time it was made or provided;

(d) Any DIP Loan Document is terminated other than as provided for in the DIP Loan Documents or becomes void or unenforceable, or any security interest or lien ceases to be a valid and perfected first-priority security interest in or lien on any portion of the DIP Collateral;

(e) A trustee or examiner with expanded powers is appointed in the Case and the order appointing such trustee, responsible officer, or examiner shall not have been stayed, reversed, or vacated within thirty days after the entry thereof;

(f) The conversion of the Case from one under chapter 11 to one under chapter 7 of the Bankruptcy Code;

(g) If there occurs an uninsured loss to any material portion of the DIP collateral;

(h) An order is entered by the Bankruptcy Court approving a sale of the Debtor or any DIP Collateral (other than the sale of Inventory in the ordinary course of business) on terms to which DIP Lender has not given its prior written consent, unless such motion provides for immediate repayment in cash of all obligations and indebtedness under the DIP Loan Documents; and/or

(i) without DIP Lender's written consent, the Debtor's actual cumulative disbursements exceeds the projected monthly disbursements in the Budget by more than 10% in the

aggregate.

I.      Notwithstanding the applicability or potential applicability of Rule 6004(h), because immediate and irreparable harm would result if this Order is not immediately effective, the provisions of this Interim Order shall be effective immediately upon entry of this Interim Order by the Court.

J.      This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, validity, and enforceability of all of the liens and security interests in and upon granted to the DIP Lender under the DIP Loan Documents, as set forth herein and in the DIP Loan Documents.   The DIP Lender shall not be required to file any financing statement, mortgage, deed of trust, assignments of rents, notice of lien, and/or any similar document or take any other action (including possession of any of the Collateral) to validate the perfection of the DIP Liens.   If the DIP Lender shall, in its discretion, elect for any reason to file any such financing statements, mortgages, deeds of trust, assignments of rent, and/or other documents with respect to such security interests and liens, the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements, mortgages, deeds of trust, assignments of rents, and/or other agreements, documents, or instruments upon the DIP Lender's request and the filing, recording, or service thereof (as the case may be) of such financing statements, or other agreements, documents, or instruments shall be deemed to have been made at the time of and on the Petition Date.   The DIP Lender may, in its discretion, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtor has an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Interim Order.

K.      The automatic stay provisions of Code § 362 are hereby lifted and terminated as to the DIP Lender to the extent necessary to implement the provisions of this Interim Order and the DIP Loan Documents, thereby permitting the DIP Lender to file or record any UCC-1 financing statements and other instruments and documents evidencing the DIP Lien, and to enforce its security interests and liens upon default subject to the provisions of this Interim

Order.

L.    The DIP Lender is extending credit on the terms set forth in the DIP Loan Documents in good faith and after arms' length negotiation; therefore, under Code § 364(e), if any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed —

a.    such stay, modification, or vacation shall not affect the validity of any obligation, indebtedness, liability, security interest, or lien granted or incurred by the Debtor to the DIP Lender prior to the effective date of such stay, modification, or vacation, or the validity, enforceability, or priority of any security interest, lien, priority, or right authorized or created under the original provisions of this Interim Order or pursuant to the DIP Loan Documents; and

b.    any indebtedness, obligation, or liability incurred by the Debtor to the DIP Lender under the DIP Loan Documents prior to the effective date of such stay, modification, or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits, including the DIP Liens and the super-priority claims granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation, or liability.  The DIP Loan is made in reliance upon this Interim Order, and, therefore, the indebtedness resulting from such DIP Loans prior to the effective date of any stay, modification, or vacation of this Interim Order cannot (i) be subordinated, (ii) lose the priority of the DIP Lien or the super-priority claims, or (iii) be deprived of the benefit of its status, the super-priority claims, or any other liens or claims granted to the DIP Lender under this Interim Order or the DIP Loan Documents, as a result of any subsequent order in this Case or any subsequent case of the Debtor.

M.    Promptly after entry of this Order, the Debtor shall provide notice, together with a copy of this Interim Order and a copy of the Motion, to all parties having been given notice of the interim hearing, counsel to any official committee of unsecured creditors appointed in this

case, the Office of the United States Trustee, and all parties who have filed requests for notice under Bankruptcy Rule 2002. Any party-in-interest objecting to the entry of a Final Order approving the relief sought in the Motion shall file written objections with the Court no later than 4:00 p.m. (MST) on or before February___, 2019, which objections shall be served so that the same are received on or before such date and time by counsel for the Debtor, counsel for the DIP Lender, and the Office of the United States Trustee.

N. The Final Hearing will be held on _____ __, 2019, at __:___ __.m. in Courtroom ___, U.S. Courthouse and Federal Building, 230 North 1st Avenue, Suite 101, Phoenix, AZ 85003.

**DATED AND SIGNED ABOVE**

# EXHIBIT 1
# to Interim Order

## (to be supplemented)

# Exhibit 2

**BONDURANT RACING SCHOOL**
**CASH BASIS - BUDGET**

| | Baseline | Week Ending | 1 27-Jan | 2 3-Feb | 3 10-Feb | 4 17-Feb | 5 24-Feb | 6 3-Mar | 7 10-Mar | 8 17-Mar | 9 24-Mar | 10 31-Mar | 11 7-Apr | 12 14-Apr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Collections** | | | | | | | | | | | | | | |
| Cash Collections Projected - Booked | | | 4,898 | 3,487 | 9,447 | 13,802 | 10,497 | 42,445 | 23,995 | 51,819 | 3,374 | 9,372 | 33,659 | 14,542 |
| Cash Collections - New Bookings EST | | | 25,000 | 40,000 | 55,000 | 60,000 | 65,000 | 81,584 | 65,000 | 70,000 | 75,000 | 75,000 | 80,000 | 85,000 |
| Total Cash Collections | - | | 29,898 | 43,487 | 64,447 | 73,802 | 75,497 | 124,029 | 88,995 | 121,819 | 78,374 | 84,372 | 113,659 | 99,542 |
| **Operating Expenses:** | | | | | | | | | | | | | | |
| **Payroll Expense** | | | | | | | | | | | | | | |
| Wages - Regular | 82,500 | | 41,250 | | 41,250 | | 41,250 | | 41,250 | | 41,250 | | 41,250 | |
| Wages - OT | 2,500 | | 1,250 | | 1,250 | | 1,250 | | 1,250 | | 1,250 | | 1,250 | |
| Commissions  0.05 | 8,000 | | 1,250 | 2,000 | 2,750 | 3,000 | 3,250 | 4,079 | 3,250 | 3,500 | 3,750 | 3,750 | 4,000 | 4,250 |
| Payroll Taxes  0.14 | 12,555 | | 6,278 | | 6,278 | | 6,278 | | 6,278 | | 6,278 | | 6,278 | |
| HSA - Employer Match | 90 | | 90 | | 90 | | 90 | | 90 | | 90 | | 90 | |
| Employee Medical Benefits | 6,250 | | | 6,250 | | | | 6,250 | | | | | 6,250 | |
| Payroll Exp - ADP Fees | 3,000 | | | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 |
| Insurance - Workers Comp | 2,600 | | | 2,600 | | 2,600 | | 2,600 | | 2,600 | | 2,600 | | 2,600 |
| Total Payroll Expense | 117,495 | | 50,118 | 13,850 | 51,618 | 8,600 | 52,118 | 15,929 | 52,118 | 9,100 | 52,618 | 9,350 | 59,118 | 9,850 |
| **Office Expense** | | | | | | | | | | | | | | |
| Computer Exp & R&M | 750 | | 750 | | | | 750 | | | | | 750 | | |
| Office Supplies | 350 | | 350 | | | | 350 | | | | | 350 | | |
| Postage/Shipping | 75 | | 75 | | | | 75 | | | | | 75 | | |
| Stationery & Printing | 150 | | 150 | | | | 150 | | | | | 150 | | |
| Lease Office Equipment | 2,000 | | 2,000 | | | | 2,000 | | | | | 2,000 | | |
| Total Office expense | 3,325 | | 3,325 | - | - | - | 3,325 | - | - | - | - | 3,325 | - | - |
| **Facility Expense** | | | | | | | | | | | | | | |
| Rent - Sun Valley Marina Corp - Facilities | 61,350 | | | 61,350 | | | | | 61,350 | | | | 61,350 | |
| Utilities - Facilities | 5,700 | | | | | | 5,700 | | | | | 5,700 | | |
| Landscaping - Facilities | 625 | | | 625 | | | | | 625 | | | | - | |
| Janitorial Svc/Plant Svc - Facilities | 500 | | 500 | | | | 500 | | | | 500 | | | |
| Lighting Maintenance | 100 | | 100 | | | | 100 | | | | 100 | | | |
| Supplies - Janitorial - Facilities | 150 | | 150 | | | | 150 | | | | 150 | | | |
| Hazardous Waste Removal - Facilities | 6,000 | | 6,000 | | | | 1,900 | | | | 1,900 | | | |
| Repair & Maintenance - Equipment EST | 6,000 | | 4,000 | | 2,000 | | | 2,000 | | | | 2,000 | | 2,000 |
| Repair & Maintenance - Facilties EST | 750 | | 250 | - | 250 | | 250 | | 250 | | 250 | - | | 250 |
| Fuel Tanks (gas/diesel) - Facilities | 18,000 | | 18,000 | | | | | | 18,000 | | | | | |
| Telephone | 3,000 | | 1,500 | | | | 1,500 | | | | 1,500 | | | |
| Insurance - Auto/Prop/Comm | 25,928 | | | 25,928 | | | 25,928 | | | | | | 25,928 | |
| Tires EST | 25,000 | | 25,000 | | | | | | - | 25,000 | | | | |
| Total Facilities Expense | 153,103 | | 30,500 | 112,903 | 2,250 | - | 36,028 | 2,000 | 80,225 | 25,000 | 1,750 | 10,350 | 87,278 | 2,250 |
| **Travel Expense** | | | | | | | | | | | | | | |
| Airfare | 1,500 | | | | 1,500 | | | | | 1,500 | | | | 1,500 |
| Car Rental | 500 | | | | 500 | | | | | 500 | | | | 500 |
| Hotel | 500 | | | | 500 | | | | | 500 | | | | 500 |
| Entertainment | 1,500 | | | | 1,500 | | | | | 1,500 | | | | 1,500 |
| Meals | 350 | | | | 350 | | | | | 350 | | | | 350 |
| Total Travel Expense | 4,350 | | - | - | 4,350 | - | - | - | - | 4,350 | - | - | - | 4,350 |
| **Shop Expenses** | | | | | | | | | | | | | | |
| Brakes - Shop EST | 750 | | 750 | | | | 750 | | | | | 750 | | |
| Small Tools - Facilities | 450 | | 450 | | | | 450 | | | | | 450 | | |
| Tire Shop EST | 1,000 | | 500 | | | | 500 | | | | | 500 | | |
| Fluid/Oil - Shop EST | 200 | | 200 | | | | 200 | | | | | 200 | | |
| Shop Supplies - Hardware Est | 200 | | 200 | | | | 200 | | | | | 200 | | |
| Shop Supplies - Cleaning Materials EST | 350 | | 350 | | | | 350 | | | | | 350 | | |
| Shop Supplies - Welding EST | 200 | | 200 | | | | 200 | | | | | 200 | | |
| Hazardous Waste Removal - Shop | 750 | | 750 | | | | 750 | | | | | 750 | | |
| Car Accident Repair Costs - Shop | 750 | | 750 | | | | 750 | | | | | 750 | | |
| Total Shop Expenses | 4,650 | | 4,150 | - | - | - | 4,150 | - | - | - | - | 4,150 | - | - |
| **Sales and Marketing** | | | | | | | | | | | | | | |
| Advertising/Promotional | 6,000 | | 6,000 | | | | 6,000 | | | | | 6,000 | | |
| Banners/Signs - Mktg/Sales | 350 | | 350 | | | | | | | | | | | 350 |

# BONDURANT RACING SCHOOL
## CASH BASIS - BUDGET

| | | Week Ending | 1 27-Jan | 2 3-Feb | 3 10-Feb | 4 17-Feb | 5 24-Feb | 6 3-Mar | 7 10-Mar | 8 17-Mar | 9 24-Mar | 10 31-Mar | 11 7-Apr | 12 14-Apr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **Baseline** | | | | | | | | | | | | |
| Internet - Site - Mktg / Sales | | 350 | 350 | | | | 350 | | | | | 350 | | |
| Merchant Processing Fees | 0.08 | - | 2,000 | 3,200 | 4,400 | 4,800 | 5,200 | 6,527 | 5,200 | 5,600 | 6,000 | 6,000 | 6,400 | 6,800 |
| **Total Sales & Marketing** | | 6,700 | 8,700 | 3,200 | 4,400 | 4,800 | 11,900 | 6,527 | 5,200 | 5,600 | 6,000 | 12,700 | 6,400 | 6,800 |
| | | | | | | | | | | | | | | |
| **Other Costs** | | | | | | | | | | | | | | |
| Formula Expense | | 5,000 | 5,000 | | | | 5,000 | | | | | 5,000 | | |
| Cost of Merchandise Sold | | 2,500 | 2,500 | | | | 2,500 | | | | | 2,500 | | |
| Track Rental Expense | Avg | 4,000 | 2,000 | | | 2,000 | | | | 2,000 | | | | 2,000 |
| Emergency Services - Ambulance, EMT, etc | Avg | 1,500 | 1,500 | | | 1,500 | | | | 1,500 | | | | 1,500 |
| Student Supplies | EST | 750 | 750 | | | | 750 | | | | | 750 | | |
| Race Suit Cleaning - Instructors | | 200 | 200 | | | | 200 | | | | | 200 | | |
| Uniform Expense | | 750 | 750 | | | | 750 | | | | | 750 | | |
| Classroom Supplies | Est | 1,500 | 1,500 | | | | 1,500 | | | | | 1,500 | | |
| Catering Expense | | | | | | | | | | | | | | |
| Dues & Subscriptions | | 750 | 750 | | | | 750 | | | | | 750 | | |
| Licenses & Fees | EST | 1,000 | 1,000 | | | | 1,000 | | | | | 1,000 | | |
| Bank Services Fees | | 250 | 250 | | | | 250 | | | | | 250 | | |
| Taxes & Licenses | EST | 500 | 500 | | | | 500 | | | | | 500 | | |
| **Total Other Costs** | | 18,700 | 16,700 | - | | 3,500 | 13,200 | - | | 3,500 | - | 13,200 | - | 3,500 |
| **Total Expenses** | | 308,323 | 113,493 | 129,953 | 62,618 | 16,900 | 120,721 | 24,456 | 137,543 | 47,550 | 60,368 | 53,075 | 152,796 | 26,750 |
| **Net Operating Income** | | (308,323) | (83,594) | (86,467) | 1,830 | 56,902 | (45,224) | 99,573 | (48,548) | 74,269 | 18,007 | 31,297 | (39,136) | 72,792 |
| | | | | | | | | | | | | | | |
| **Other Income** | | | | | | | | | | | | | | |
| Track Rental | Est | 7,000 | 7,000 | | | 7,000 | | | | 7,000 | | 7,000 | | |
| **Reorganization Expenses:** | | | | | | | | | | | | | | |
| Allen Barnes and Jones | | 25,000 | 25,000 | | | | 25,000 | | | | | 25,000 | | |
| CRO | | 20,000 | 20,000 | | | | 20,000 | | | | | 20,000 | | |
| B2B CFO | | 5,000 | 5,000 | | | | 5,000 | | | | | 5,000 | | |
| | | 50,000 | 50,000 | - | | - | 50,000 | - | | - | - | 50,000 | - | |
| **Profit (Loss)** | | (351,323) | (126,594) | (86,467) | 1,830 | 63,902 | (95,224) | 99,573 | (48,548) | 81,269 | 18,007 | (11,703) | (39,136) | 72,792 |
| | | | | | | | | | | | | | | |
| **CASH FLOW:** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Post-filing Debts - Past Due** | | | | | | | | | | | | | | |
| Rent - Sun Valley Marina Corp - Facilities | | 212,000 | 212,000 | | | | | | | | | | | |
| Debt Repayment Bancorp | | 69,186 | 69,186 | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Committed Payments** | | | | | | | | | | | | | | |
| Sun Valley Marina Corp | | | | | | | | | | | | | | |
| Debt Repayment Bancorp | | 34,593 | | | 34,593 | | | | | 34,593 | | | 34,593 | |
| UNFI Debt Repayment | | 2,404 | | | 2,404 | | | | | 2,404 | | | 2,404 | |
| **Reorganization - Past Due** | | | | | | | | | | | | | | |
| Allen Barnes and Jones | | 100,000 | 100,000 | | | | | | | | | | | |
| CRO | | 40,000 | 40,000 | | | | | | | | | | | |
| B2B CFO | | 5,000 | 10,000 | | | | | | | | | | | |
| | | 181,997 | 431,186 | - | 36,997 | - | - | - | - | 36,997 | - | - | 36,997 | - |
| **Cash Flow** | | **(533,320)** | **(557,780)** | **(86,467)** | **(35,167)** | **63,902** | **(95,224)** | **99,573** | **(48,548)** | **44,272** | **18,007** | **(11,703)** | **(76,133)** | **72,792** |
| | | | | | | | | | | | | | | |
| **Cash Beginning Balance** | | | 144,929 | | | | | | | | | | | |
| DIP Loan | | 630,750 | 630,750 | | | | | | | | | | | |
| | | | (412,851) | (86,467) | (35,167) | 63,902 | (95,224) | 99,573 | (48,548) | 44,272 | 18,007 | (11,703) | (76,133) | 72,792 |
| | | | | | | | | | | | | | | |
| **DIP Availability** | | | 217,899 | 131,432 | 96,265 | 160,167 | 64,943 | 164,516 | 115,968 | 160,240 | 178,247 | 166,544 | 90,411 | 163,203 |

| | Baseline | Week Ending | 13 21-Apr | 14 28-Apr | 15 5-May | 16 12-May |
|---|---|---|---|---|---|---|
| **Cash Collections** | | | | | | |
| Cash Collections Projected - Booked | | | 6,867 | 6,699 | 10,000 | 10,000 |
| Cash Collections - New Bookings | EST | | 85,000 | 85,000 | 95,000 | 95,000 |
| Total Cash Collections | - | | 91,867 | 91,699 | 105,000 | 105,000 |
| | | | | | | |
| **Operating Expenses:** | | | | | | |
| **Payroll Expense** | | | | | | |
| Wages - Regular | 82,500 | | 41,250 | | 41,250 | |
| Wages - OT | 2,500 | | 1,250 | | 1,250 | |
| Commissions | 0.05 | 8,000 | 4,250 | 4,250 | 4,750 | 4,750 |
| Payroll Taxes | 0.14 | 12,555 | 6,278 | | 6,278 | |
| HSA - Employer Match | 90 | | 90 | | 90 | |
| Employee Medical Benefits | 6,250 | | | | 6,250 | |
| Payroll Exp - ADP Fees | 3,000 | | | 3,000 | | 3,000 |
| Insurance - Workers Comp | 2,600 | | | 2,600 | | 2,600 |
| Total Payroll Expense | 117,495 | | 53,118 | 9,850 | 59,868 | 10,350 |
| **Office Expense** | | | | | | |
| Computer Exp & R&M | 750 | | | 750 | | |
| Office Supplies | 350 | | | 350 | | |
| Postage/Shipping | 75 | | | 75 | | |
| Stationery & Printing | 150 | | | 150 | | |
| Lease Office Equipment | 2,000 | | | 2,000 | | |
| Total Office expense | 3,325 | | - | 3,325 | - | - |
| | | | | | | |
| **Facility Expense** | | | | | | |
| Rent - Sun Valley Marina Corp - Facilities | 61,350 | | | | 61,350 | |
| Utilities - Facilities | 5,700 | | | 5,700 | | |
| Landscaping - Facilities | 625 | | | | - | |
| Janitorial Svc/Plant Svc - Facilities | 500 | | | 500 | | |
| Lighting Maintenance | 100 | | | 100 | | |
| Supplies - Janitorial - Facilities | 150 | | | 150 | | |
| Hazardous Waste Removal - Facilities | 6,000 | | | 1,900 | | |
| Repair & Maintenance - Equipment | EST | 6,000 | | | | 2,000 |
| Repair & Maintenance - Facities | EST | 750 | | 250 | | 250 |
| Fuel Tanks (gas/diesel) - Facilities | 18,000 | | 18,000 | | - | |
| Telephone | 3,000 | | | 1,500 | | |
| Insurance - Auto/Prop/Comm | 25,928 | | | | 25,928 | |
| Tires | EST | 25,000 | 25,000 | | | |
| Total Facilities Expense | 153,103 | | 43,000 | 10,100 | 87,278 | 2,250 |
| | | | | | | |
| **Travel Expense** | | | | | | |
| Airfare | 1,500 | | | | | 1,500 |
| Car Rental | 500 | | | | | 500 |
| Hotel | 500 | | | | | 500 |
| Entertainment | 1,500 | | | | | 1,500 |
| Meals | 350 | | | | | 350 |
| Total Travel Expense | 4,350 | | - | - | - | 4,350 |
| | | | | | | |
| **Shop Expenses** | | | | | | |
| Brakes - Shop | EST | 750 | | 750 | | |
| Small Tools - Facilities | 450 | | | 450 | | |
| Tire Shop | EST | 1,000 | | 500 | | |
| Fluid/Oil - Shop | EST | 200 | | 200 | | |
| Shop Supplies - Hardware | Est | 200 | | 200 | | |
| Shop Supplies - Cleaning Materials | EST | 350 | | 350 | | |
| Shop Supplies - Welding | EST | 200 | | 200 | | |
| Hazardous Waste Removal - Shop | 750 | | | 750 | | |
| Car Accident Repair Costs - Shop | 750 | | | 750 | | |
| Total Shop Expenses | 4,650 | | - | 4,150 | - | - |
| | | | | | | |
| **Sales and Marketing** | | | | | | |
| Advertising/Promotional | 6,000 | | | 6,000 | | |
| Banners/Signs - Mktg/Sales | 350 | | | 350 | | |

| | Baseline | Week Ending | 13 21-Apr | 14 28-Apr | 15 5-May | 16 12-May |
|---|---|---|---|---|---|---|
| Internet - Site - Mktg / Sales | 350 | | | 350 | | |
| Merchant  Processing Fees | 0.08 | - | | 6,800 | 6,800 | |
| **Total Sales & Marketing** | 6,700 | | 6,800 | 13,500 | - | - |
| | | | | | | |
| **Other Costs** | | | | | | |
| Formula Expense | 5,000 | | | 5,000 | | |
| Cost of Merchandise Sold | 2,500 | | | 2,500 | | |
| Track Rental Expense | Avg | 4,000 | | 2,000 | | |
| Emergency Services - Ambulance, EMT, etc | Avg | 1,500 | | 1,500 | | |
| Student Supplies | EST | 750 | | 750 | | |
| Race Suit Cleaning - Instructors | | 200 | | 200 | | |
| Uniform Expense | | 750 | | 750 | | |
| Classroom Supplies | Est | 1,500 | | 1,500 | | |
| Catering Expense | | | | | | |
| Dues & Subscriptions | | 750 | | 750 | | |
| Licenses & Fees | EST | 1,000 | | 1,000 | | |
| Bank Services Fees | | 250 | | 250 | | |
| Taxes & Licenses | EST | 500 | | 500 | | |
| Total Other Costs | 18,700 | | - | 16,700 | - | - |
| **Total Expenses** | 308,323 | | 102,918 | 57,625 | 147,146 | 16,950 |
| **Net Operating Income** | (308,323) | | (11,051) | 34,074 | (42,146) | 88,050 |
| | | | | | | |
| **Other Income** | | | | | | |
| Track Rental | Est | 7,000 | | 7,000 | | 7,000 |
| **Reorganization Expenses:** | | | | | | |
| Allen Barnes and Jones | 25,000 | | | 25,000 | | |
| CRO | 20,000 | | | 20,000 | | |
| B2B CFO | 5,000 | | | 5,000 | | |
| | 50,000 | | - | 50,000 | - | - |
| | | | | | | |
| **Profit (Loss)** | (351,323) | | (4,051) | (15,927) | (42,146) | 95,050 |
| | | | | | | |
| **CASH FLOW:** | | | | | | |
| | | | | | | |
| | | | | | | |
| **Post-filing Debts - Past Due** | | | | | | |
| Rent - Sun Valley Marina Corp - Facilities | 212,000 | | | | | |
| Debt Repayment Bancorp | 69,186 | | | | | |
| | | | | | | |
| **Committed Payments** | | | | | | |
| Sun Valley Marina Corp | | | | | | |
| Debt Repayment Bancorp | 34,593 | | | | 34,593 | |
| UNFI Debt Repayment | 2,404 | | | | 2,404 | |
| **Reorganization  - Past Due** | | | | | | |
| Allen Barnes and Jones | 100,000 | | | | | |
| CRO | 40,000 | | | | | |
| B2B CFO | 5,000 | | | | | |
| | 181,997 | | - | - | 36,997 | - |
| **Cash Flow** | (533,320) | | (4,051) | (15,927) | (79,142) | 95,050 |
| | | | | | | |
| **Cash Beginning Balance** | | | | | | |
| DIP Loan | 630,750 | | | | | |
| | | | (4,051) | (15,927) | (79,142) | 95,050 |
| **DIP Availability** | | | 159,152 | 143,226 | 64,083 | 159,133 |

| Sources | | Uses | | |
|---|---|---|---|---|
| Loan | $ 675,000 | Interest Reserve- 4 Months | 13.0% $ | 29,250 |
| | | Lender Legal Fees | | 15,000 |
| | | Net Proceeds to Bondurant | | 630,750 |
| | $ 675,000 | | $ | 675,000 |

# Exhibit B

# DIP Loan Term Sheet

1. Debtor in Possession ("DIP") Loan by DIP Lender ("Arlington Street Investments or Nominee") for post-petition financing in the amount of $675,000 is conditioned upon the following terms which cannot be waived:

   a. Bankruptcy Court approval of DIP Loan pursuant to an order in form and substance acceptable to DIP Lender for both Interim and final financing ("Financing Orders').

   b. Continued retention of CRO, Timothy Shaffer, through consummation of 11 U.S.C. §363 sale or plan confirmation of plan acceptable in terms and conditions approved by DIP Lender.

   c. Grant of a Senior Secured Superpriority Lien and Priming Lien on all current and future assets of the estate including any estate causes of action under Chapter 5 of the Code. Such lien shall prime and take priority over any existing secured liens on the proposed Collateral.

   d. Loan and related documentation suitable in form and substance to DIP Lender in its sole discretion.

   e. Modifying the automatic stay under Bankruptcy Code § 362 to the extent reasonably necessary to permit the Debtors and the DIP Lender to implement the terms of the Interim Order and the Final Order.

   f. DIP Lender's satisfactory inspection and due diligence of all proposed Collateral.

   g. DIP Loan may be used as credit bid for future §363 Sale.

   h. Strict compliance with the DIP Loan Proposal and proposed budget, attached hereto as Exhibits "A" and "B" subject only to written modification as agreed by the parties.

2. In connection with the Post-Petition Financing, the Debtor, on behalf of its bankruptcy estate (the "**Estate**"), shall request authorization (i) to grant DIP Lender, pursuant to Bankruptcy Code §§ 364(c) and (d), first priority (and priming where necessary) liens and security interests in all of the Collateral (as more clearly defined in the DIP Loan documents) to secure the Obligations (asmore clearly defined in the DIP Loan documents) owing by the Estates under the Post-Petition Financing; and (ii) to grant DIP Lender super-priority administrative expense status with respect to the Obligations, with priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b), 507(b) and 546(c) (other than as described below).

3. The Debtor shall also request that a final hearing (the "**Final Hearing**") be scheduled by this Court to consider entry of a final order (the "**Final Order**") authorizing on a

final basis, <u>inter alia</u>, the Post-Petition Financing. The Debtor shall request authority to borrow $281,186 pursuant to the Interim Order (amount sufficient to bring all existing equipment and real property leases current) and the remaining $349,564 (after deduction of DIP Lender's fees and interest reserve) to fund post-petition operating and administrative expenses pursuant to the Final Order.

4. In connection with the Post-Petition Financing, the Debtor shall, on behalf of its bankruptcy estate (the "Estate"), request authorization (i) to grant DIP Lender, pursuant to Bankruptcy Code §§ 364(c) and (d), first priority (or priming) liens and security interests in all of the Collateral (to be more fully defined hereafter in the DIP Loan documents) to secure the Obligations (to be more fully defined hereafter in the DIP Loan documents) owing by the Estate under the Post-Petition Financing; and (ii) to grant DIP Lender super-priority administrative expense status with respect to the Obligations, with priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b), 507(b) and 546(c) (other than as described below). The Debtor shall also request that a final hearing (the "Final Hearing") be scheduled by the court to consider entry of a final order (the "Final Order") authorizing on a final basis, inter alia, the Post-Petition Financing. The Debtor shall request authority to borrow $281,186 pursuant to the Interim Order and the remaining $349,564 pursuant to the Final Order.

5. The Loan is due and payable on the occurrence of the "Termination Date," which would be the earliest to occur of (i) March 31, 2019, (ii) the date Borrower terminates the DIP Lender's Commitment to make further advances under the Credit Facility, (iii) the closing of a Section 363 sale, or (iii) the date the DIP Lender terminates the the DIP Loan or decides to make no further advances following an event of default as set forth in the DIP Loan . Events of Default will be more fully set forth in the proposed DIP Loan. Any obligation of DIP Lender to provide advances under the DIP Loan would automatically terminate on the Termination Date. The Obligations under the DIP Loan are due and payable on the Termination Date.

6. Borrowing Conditions: DIP Lender's obligation to make the initial and subsequent advances under the DIP Facility is conditioned on full and timely satisfaction (in DIP Lender's sole discretion) of certain conditions precedent deemed appropriate by DIP Lender in its sole discretion, as shall be more fully set in the DIP Facility Agreement, including but not limited to the following:

    a. Debtors have executed, and delivered to DIP Lender all DIP Loan documents required by DIP Lender, in form and substance acceptable to DIP Lender;
    b. The Budget has been approved by the DIP Lender; and
    c. The Financing Order has been entered and remains in full force and effect.

7. Additional Events of Default:

# DIP Loan Term Sheet

    a. Conversion to Chapter 7;
    b. Appointment of a Trustee;
    c. Material breach of DIP Loan terms and conditions.

This letter is a non-binding commitment and is for discussion purposes only, unless and until all conditions contained herein are fully fulfilled and contained in a DIP Loan agreement acceptable in sum and substance to DIP Lender in its sole discretion.

    Executed this _____ day of February, 2019.

**BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.**

By: _____
    Timothy Shaffer, Chief Restructuring Officer

**ARLINGTON STREET INVESTMENTS**

By: _____
    Frank Lonardelli, President & CEO

# Exhibit A

# Proposal for Debtor-In-Possession Loan

## Objective:

Bob Bondurant School of High-Performance Driving (Debtor) seeks to obtain Debtor-In-Possession (DIP) financing to insure future operations and meet its landlord and Bancorp obligations during the Chapter 11 process.

The Debtor intends to file a Plan of Reorganization (Plan) by January 31, 2019. It is anticipated that the Plan includes a 363 Sale process of the Debtor, including the acceptance and assignment of the leased property and equipment. The Plan anticipates the marketing of the Debtor to be concluded by February 28, 2019 and the 363 Sale to be concluded by March 31, 2019.

| | |
|---|---|
| **Loan Amount:** | **$675,000** |
| **Term:** | **Four Months** or the completion of the 363 Sale, whichever is sooner. |
| **Interest Rate:** | **13%**, Annual, Simple |
| **Post-Petition Lease:** | **$212,000** - Post Petition Lease payments will be paid on close of the DIP Loan. See 13 Week Budget. |
| **Bancorp Payment:** | **$69,186** – Post -Petition Bancorp payments will be paid on close of the DIP Loan. See 13 Week Budget. |
| **Lender Legal Fee:** | **$15,000** – Debtor will pay Lender Legal Fees and Costs. |
| **Net Proceeds to Debtor:** | **$630,750** |

**Sources and Uses:**

| Sources | | | Uses | | | |
|---|---|---|---|---|---|---|
| Loan | $ | 675,000 | Interest Reserve- 4 Months | 13.0% | $ | 29,250 |
| | | | Lender Legal Fees | | | 15,000 |
| | | | Net Proceeds to Bondurant | | | 630,750 |
| | $ | 675,000 | | | $ | 675,000 |

**Exit:**              Loan will be paid from proceeds generated from 363 Sale. Additional collateral from Museum automobiles may be available.

# Exhibit B

**BONDURANT RACING SCHOOL**

**CASH BASIS - BUDGET**

| | Baseline | Week Ending | 1 27-Jan | 2 3-Feb | 3 10-Feb | 4 17-Feb | 5 24-Feb | 6 3-Mar | 7 10-Mar | 8 17-Mar | 9 24-Mar | 10 31-Mar | 11 7-Apr | 12 14-Apr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Collections** | | | | | | | | | | | | | | |
| Cash Collections Projected - Booked | | | 4,898 | 3,487 | 9,447 | 13,802 | 10,497 | 42,445 | 23,995 | 51,819 | 3,374 | 9,372 | 33,659 | 14,542 |
| Cash Collections - New Bookings | EST | | 25,000 | 40,000 | 55,000 | 60,000 | 65,000 | 81,584 | 65,000 | 70,000 | 75,000 | 75,000 | 80,000 | 85,000 |
| Total Cash Collections | - | | 29,898 | 43,487 | 64,447 | 73,802 | 75,497 | 124,029 | 88,995 | 121,819 | 78,374 | 84,372 | 113,659 | 99,542 |
| **Operating Expenses:** | | | | | | | | | | | | | | |
| **Payroll Expense** | | | | | | | | | | | | | | |
| Wages - Regular | 82,500 | | 41,250 | | 41,250 | | 41,250 | | 41,250 | | 41,250 | | 41,250 | |
| Wages - OT | 2,500 | | 1,250 | | 1,250 | | 1,250 | | 1,250 | | 1,250 | | 1,250 | |
| Commissions | 8,000 | 0.05 | 1,250 | 2,000 | 2,750 | 3,000 | 3,250 | 4,079 | 3,250 | 3,500 | 3,750 | 3,750 | 4,000 | 4,250 |
| Payroll Taxes | 12,555 | 0.14 | 6,278 | | 6,278 | | 6,278 | | 6,278 | | 6,278 | | 6,278 | |
| HSA - Employer Match | 90 | | 90 | | 90 | | 90 | | 90 | | 90 | | 90 | |
| Employee Medical Benefits | 6,250 | | | 6,250 | | | 6,250 | | | 6,250 | | | 6,250 | |
| Payroll Exp - ADP Fees | 3,000 | | | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 |
| Insurance - Workers Comp | 2,600 | | | 2,600 | | 2,600 | | 2,600 | | 2,600 | | 2,600 | | 2,600 |
| Total Payroll Expense | 117,495 | | 50,118 | 13,850 | 51,618 | 8,600 | 52,118 | 15,929 | 52,118 | 9,100 | 52,618 | 9,350 | 59,118 | 9,850 |
| **Office Expense** | | | | | | | | | | | | | | |
| Computer Exp & R&M | 750 | | 750 | | | | 750 | | | | | 750 | | |
| Office Supplies | 350 | | 350 | | | | 350 | | | | | 350 | | |
| Postage/Shipping | 75 | | 75 | | | | 75 | | | | | 75 | | |
| Stationery & Printing | 150 | | 150 | | | | 150 | | | | | 150 | | |
| Lease Office Equipment | 2,000 | | 2,000 | | | | 2,000 | | | | | 2,000 | | |
| Total Office expense | 3,325 | | 3,325 | - | - | - | 3,325 | - | - | - | - | 3,325 | - | - |
| **Facility Expense** | | | | | | | | | | | | | | |
| Rent - Sun Valley Marina Corp - Facilities | 61,350 | | | 61,350 | | | | | 61,350 | | | | 61,350 | |
| Utilities - Facilities | 5,700 | | | | | | 5,700 | | | | | 5,700 | | |
| Landscaping - Facilities | 625 | | | 625 | | | | | 625 | | | | - | |
| Janitorial Svc/Plant Svc - Facilities | 500 | | 500 | | | | 500 | | | | 500 | | | |
| Lighting Maintenance | 100 | | 100 | | | | 100 | | | | 100 | | | |
| Supplies - Janitorial - Facilities | 150 | | 150 | | | | 150 | | | | 150 | | | |
| Hazardous Waste Removal - Facilities | 6,000 | | 6,000 | | | | 1,900 | | | | 1,900 | | | |
| Repair & Maintenance - Equipment | EST | 6,000 | 4,000 | | 2,000 | | | 2,000 | | | 2,000 | | | 2,000 |
| Repair & Maintenance - Facities | EST | 750 | 250 | - | 250 | | 250 | | 250 | | 250 | - | - | 250 |
| Fuel Tanks (gas/diesel) - Facilities | 18,000 | | 18,000 | | | | | | 18,000 | | | | | |
| Telephone | 3,000 | | 1,500 | | | | 1,500 | | | | 1,500 | | | |
| Insurance - Auto/Prop/Comm | 25,928 | | | 25,928 | | | 25,928 | | | | | | 25,928 | |
| Tires | EST | 25,000 | 25,000 | | | | | - | 25,000 | | | | | |
| Total Facilities Expense | 153,103 | | 30,500 | 112,903 | 2,250 | - | 36,028 | 2,000 | 80,225 | 25,000 | 1,750 | 10,350 | 87,278 | 2,250 |
| **Travel Expense** | | | | | | | | | | | | | | |
| Airfare | 1,500 | | | | 1,500 | | | | | 1,500 | | | | 1,500 |
| Car Rental | 500 | | | | 500 | | | | | 500 | | | | 500 |
| Hotel | 500 | | | | 500 | | | | | 500 | | | | 500 |
| Entertainment | 1,500 | | | | 1,500 | | | | | 1,500 | | | | 1,500 |
| Meals | 350 | | | | 350 | | | | | 350 | | | | 350 |
| Total Travel Expense | 4,350 | | - | - | 4,350 | - | - | - | - | 4,350 | - | - | - | 4,350 |
| **Shop Expenses** | | | | | | | | | | | | | | |
| Brakes - Shop | EST | 750 | 750 | | | | 750 | | | | | 750 | | |
| Small Tools - Facilities | 450 | | 450 | | | | 450 | | | | | 450 | | |
| Tire Shop | EST | 1,000 | 500 | | | | 500 | | | | | 500 | | |
| Fluid/Oil - Shop | EST | 200 | 200 | | | | 200 | | | | | 200 | | |
| Shop Supplies - Hardware | Est | 200 | 200 | | | | 200 | | | | | 200 | | |
| Shop Supplies - Cleaning Materials | EST | 350 | 350 | | | | 350 | | | | | 350 | | |
| Shop Supplies - Welding | EST | 200 | 200 | | | | 200 | | | | | 200 | | |
| Hazardous Waste Removal - Shop | 750 | | 750 | | | | 750 | | | | | 750 | | |
| Car Accident Repair Costs - Shop | 750 | | 750 | | | | 750 | | | | | 750 | | |
| Total Shop Expenses | 4,650 | | 4,150 | - | - | - | 4,150 | - | - | - | - | 4,150 | - | - |
| **Sales and Marketing** | | | | | | | | | | | | | | |
| Advertising/Promotional | 6,000 | | 6,000 | | | | 6,000 | | | | | 6,000 | | |
| Banners/Signs - Mktg/Sales | 350 | | 350 | | | | | | | | | | | 350 |

**BONDURANT RACING SCHOOL**

**CASH BASIS - BUDGET**

| | | Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Ending | 27-Jan | 3-Feb | 10-Feb | 17-Feb | 24-Feb | 3-Mar | 10-Mar | 17-Mar | 24-Mar | 31-Mar | 7-Apr | 14-Apr |
| | | Baseline | | | | | | | | | | | | |
| Internet - Site - Mktg / Sales | | 350 | 350 | | | | 350 | | | | | 350 | | |
| Merchant Processing Fees | 0.08 | | 2,000 | 3,200 | 4,400 | 4,800 | 5,200 | 6,527 | 5,200 | 5,600 | 6,000 | 6,000 | 6,400 | 6,800 |
| **Total Sales & Marketing** | | 6,700 | 8,700 | 3,200 | 4,400 | 4,800 | 11,900 | 6,527 | 5,200 | 5,600 | 6,000 | 12,700 | 6,400 | 6,800 |
| **Other Costs** | | | | | | | | | | | | | | |
| Formula Expense | | 5,000 | 5,000 | | | | 5,000 | | | | | 5,000 | | |
| Cost of Merchandise Sold | | 2,500 | 2,500 | | | | 2,500 | | | | | 2,500 | | |
| Track Rental Expense | Avg | 4,000 | 2,000 | | | 2,000 | | | | 2,000 | | | | 2,000 |
| Emergency Services - Ambulance, EMT, etc | Avg | 1,500 | 1,500 | | | 1,500 | | | | 1,500 | | | | 1,500 |
| Student Supplies | EST | 750 | 750 | | | | 750 | | | | | 750 | | |
| Race Suit Cleaning - Instructors | | 200 | 200 | | | | 200 | | | | | 200 | | |
| Uniform Expense | | 750 | 750 | | | | 750 | | | | | 750 | | |
| Classroom Supplies | Est | 1,500 | 1,500 | | | | 1,500 | | | | | 1,500 | | |
| Catering Expense | | | | | | | | | | | | | | |
| Dues & Subscriptions | | 750 | 750 | | | | 750 | | | | | 750 | | |
| Licenses & Fees | EST | 1,000 | 1,000 | | | | 1,000 | | | | | 1,000 | | |
| Bank Services Fees | EST | 250 | 250 | | | | 250 | | | | | 250 | | |
| Taxes & Licenses | EST | 500 | 500 | | | | 500 | | | | | 500 | | |
| Total Other Costs | | 18,700 | 16,700 | - | - | 3,500 | 13,200 | - | - | 3,500 | - | 13,200 | - | 3,500 |
| **Total Expenses** | | 308,323 | 113,493 | 129,953 | 62,618 | 16,900 | 120,721 | 24,456 | 137,543 | 47,550 | 60,368 | 53,075 | 152,796 | 26,750 |
| **Net Operating Income** | | (308,323) | (83,594) | (86,467) | 1,830 | 56,902 | (45,224) | 99,573 | (48,548) | 74,269 | 18,007 | 31,297 | (39,136) | 72,792 |
| **Other Income** | | | | | | | | | | | | | | |
| Track Rental | Est | 7,000 | 7,000 | | | 7,000 | | | | 7,000 | | 7,000 | | |
| **Reorganization Expenses:** | | | | | | | | | | | | | | |
| Allen Barnes and Jones | | 25,000 | 25,000 | | | | 25,000 | | | | | 25,000 | | |
| CRO | | 20,000 | 20,000 | | | | 20,000 | | | | | 20,000 | | |
| B2B CFO | | 5,000 | 5,000 | | | | 5,000 | | | | | 5,000 | | |
| | | 50,000 | 50,000 | - | - | - | 50,000 | - | - | - | - | 50,000 | - | - |
| **Profit (Loss)** | | (351,323) | (126,594) | (86,467) | 1,830 | 63,902 | (95,224) | 99,573 | (48,548) | 81,269 | 18,007 | (11,703) | (39,136) | 72,792 |
| **CASH FLOW:** | | | | | | | | | | | | | | |
| **Post-filing Debts - Past Due** | | | | | | | | | | | | | | |
| Rent - Sun Valley Marina Corp - Facilities | | 212,000 | 212,000 | | | | | | | | | | | |
| Debt Repayment Bancorp | | 69,186 | 69,186 | | | | | | | | | | | |
| **Committed Payments** | | | | | | | | | | | | | | |
| Sun Valley Marina Corp | | | | | | | | | | | | | | |
| Debt Repayment Bancorp | | 34,593 | | | 34,593 | | | | | 34,593 | | | 34,593 | |
| UNFI Debt Repayment | | 2,404 | | | 2,404 | | | | | 2,404 | | | 2,404 | |
| **Reorganization - Past Due** | | | | | | | | | | | | | | |
| Allen Barnes and Jones | | 100,000 | 100,000 | | | | | | | | | | | |
| CRO | | 40,000 | 40,000 | | | | | | | | | | | |
| B2B CFO | | 5,000 | 10,000 | | | | | | | | | | | |
| | | 181,997 | 431,186 | - | 36,997 | - | - | - | - | 36,997 | - | - | 36,997 | - |
| **Cash Flow** | | (533,320) | (557,780) | (86,467) | (35,167) | 63,902 | (95,224) | 99,573 | (48,548) | 44,272 | 18,007 | (11,703) | (76,133) | 72,792 |
| **Cash Beginning Balance** | | | 144,929 | | | | | | | | | | | |
| DIP Loan | | 630,750 | 630,750 | | | | | | | | | | | |
| | | | (412,851) | (86,467) | (35,167) | 63,902 | (95,224) | 99,573 | (48,548) | 44,272 | 18,007 | (11,703) | (76,133) | 72,792 |
| **DIP Availability** | | | 217,899 | 131,432 | 96,265 | 160,167 | 64,943 | 164,516 | 115,968 | 160,240 | 178,247 | 166,544 | 90,411 | 163,203 |

| | | Week | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|
| | **Baseline** | Ending | 21-Apr | 28-Apr | 5-May | 12-May |
| | | | | | | |
| **Cash Collections** | | | | | | |
| Cash Collections Projected - Booked | | | 6,867 | 6,699 | 10,000 | 10,000 |
| Cash Collections - New Bookings | EST | | 85,000 | 85,000 | 95,000 | 95,000 |
| Total Cash Collections | - | | 91,867 | 91,699 | 105,000 | 105,000 |
| | | | | | | |
| **Operating Expenses:** | | | | | | |
| **Payroll Expense** | | | | | | |
| Wages - Regular | 82,500 | | 41,250 | | 41,250 | |
| Wages - OT | 2,500 | | 1,250 | | 1,250 | |
| Commissions | 0.05 | 8,000 | 4,250 | 4,250 | 4,750 | 4,750 |
| Payroll Taxes | 0.14 | 12,555 | 6,278 | | 6,278 | |
| HSA - Employer Match | 90 | | 90 | | 90 | |
| Employee Medical Benefits | 6,250 | | | | 6,250 | |
| Payroll Exp - ADP Fees | 3,000 | | | 3,000 | | 3,000 |
| Insurance - Workers Comp | 2,600 | | | 2,600 | | 2,600 |
| Total Payroll Expense | 117,495 | | 53,118 | 9,850 | 59,868 | 10,350 |
| **Office Expense** | | | | | | |
| Computer Exp & R&M | 750 | | | 750 | | |
| Office Supplies | 350 | | | 350 | | |
| Postage/Shipping | 75 | | | 75 | | |
| Stationery & Printing | 150 | | | 150 | | |
| Lease Office Equipment | 2,000 | | | 2,000 | | |
| Total Office expense | 3,325 | | - | 3,325 | - | - |
| | | | | | | |
| **Facility Expense** | | | | | | |
| Rent - Sun Valley Marina Corp - Facilities | 61,350 | | | | 61,350 | |
| Utilities - Facilities | 5,700 | | | 5,700 | | |
| Landscaping - Facilities | 625 | | | | - | |
| Janitorial Svc/Plant Svc - Facilities | 500 | | | 500 | | |
| Lighting Maintenance | 100 | | | 100 | | |
| Supplies - Janitorial - Facilities | 150 | | | 150 | | |
| Hazardous Waste Removal - Facilities | 6,000 | | | 1,900 | | |
| Repair & Maintenance - Equipment | EST | 6,000 | | | | 2,000 |
| Repair & Maintenance - Facities | EST | 750 | | 250 | | 250 |
| Fuel Tanks (gas/diesel) - Facilities | 18,000 | | 18,000 | | - | |
| Telephone | 3,000 | | | 1,500 | | |
| Insurance - Auto/Prop/Comm | 25,928 | | | | 25,928 | |
| Tires | EST | 25,000 | 25,000 | | | |
| Total Facilities Expense | 153,103 | | 43,000 | 10,100 | 87,278 | 2,250 |
| | | | | | | |
| **Travel Expense** | | | | | | |
| Airfare | 1,500 | | | | | 1,500 |
| Car Rental | 500 | | | | | 500 |
| Hotel | 500 | | | | | 500 |
| Entertainment | 1,500 | | | | | 1,500 |
| Meals | 350 | | | | | 350 |
| Total Travel Expense | 4,350 | | - | - | - | 4,350 |
| | | | | | | |
| **Shop Expenses** | | | | | | |
| Brakes - Shop | EST | 750 | | 750 | | |
| Small Tools - Facilities | 450 | | | 450 | | |
| Tire Shop | EST | 1,000 | | 500 | | |
| Fluid/Oil - Shop | EST | 200 | | 200 | | |
| Shop Supplies - Hardware | Est | 200 | | 200 | | |
| Shop Supplies - Cleaning Materials | EST | 350 | | 350 | | |
| Shop Supplies - Welding | EST | 200 | | 200 | | |
| Hazardous Waste Removal - Shop | 750 | | | 750 | | |
| Car Accident Repair Costs - Shop | 750 | | | 750 | | |
| Total Shop Expenses | 4,650 | | - | 4,150 | - | - |
| | | | | | | |
| **Sales and Marketing** | | | | | | |
| Advertising/Promotional | 6,000 | | | 6,000 | | |
| Banners/Signs - Mktg/Sales | 350 | | | 350 | | |

| | Baseline | Week Ending | 13 21-Apr | 14 28-Apr | 15 5-May | 16 12-May |
|---|---|---|---|---|---|---|
| Internet - Site - Mktg / Sales | 350 | | | 350 | | |
| Merchant Processing Fees | 0.08 | - | | 6,800 | 6,800 | |
| Total Sales & Marketing | 6,700 | | 6,800 | 13,500 | - | - |
| | | | | | | |
| **Other Costs** | | | | | | |
| Formula Expense | 5,000 | | | 5,000 | | |
| Cost of Merchandise Sold | 2,500 | | | 2,500 | | |
| Track Rental Expense | Avg | 4,000 | | | 2,000 | | |
| Emergency Services - Ambulance, EMT, etc | Avg | 1,500 | | | 1,500 | | |
| Student Supplies | EST | 750 | | | 750 | | |
| Race Suit Cleaning - Instructors | 200 | | | 200 | | |
| Uniform Expense | 750 | | | 750 | | |
| Classroom Supplies | Est | 1,500 | | | 1,500 | | |
| Catering Expense | | | | | | |
| Dues & Subscriptions | 750 | | | 750 | | |
| Licenses & Fees | EST | 1,000 | | | 1,000 | | |
| Bank Services Fees | 250 | | | 250 | | |
| Taxes & Licenses | EST | 500 | | | 500 | | |
| Total Other Costs | 18,700 | | - | 16,700 | - | - |
| **Total Expenses** | 308,323 | | 102,918 | 57,625 | 147,146 | 16,950 |
| **Net Operating Income** | (308,323) | | (11,051) | 34,074 | (42,146) | 88,050 |
| | | | | | | |
| **Other Income** | | | | | | |
| Track Rental | Est | 7,000 | | 7,000 | | | 7,000 |
| **Reorganization Expenses:** | | | | | | |
| Allen Barnes and Jones | 25,000 | | | 25,000 | | |
| CRO | 20,000 | | | 20,000 | | |
| B2B CFO | 5,000 | | | 5,000 | | |
| | 50,000 | | - | 50,000 | - | - |
| **Profit (Loss)** | (351,323) | | (4,051) | (15,927) | (42,146) | 95,050 |
| | | | | | | |
| **CASH FLOW:** | | | | | | |
| | | | | | | |
| **Post-filing Debts - Past Due** | | | | | | |
| Rent - Sun Valley Marina Corp - Facilities | 212,000 | | | | | |
| Debt Repayment Bancorp | 69,186 | | | | | |
| | | | | | | |
| **Committed Payments** | | | | | | |
| Sun Valley Marina Corp | | | | | | |
| Debt Repayment Bancorp | 34,593 | | | | 34,593 | |
| UNFI Debt Repayment | 2,404 | | | | 2,404 | |
| **Reorganization - Past Due** | | | | | | |
| Allen Barnes and Jones | 100,000 | | | | | |
| CRO | 40,000 | | | | | |
| B2B CFO | 5,000 | | | | | |
| | 181,997 | | - | - | 36,997 | - |
| **Cash Flow** | (533,320) | | (4,051) | (15,927) | (79,142) | 95,050 |
| | | | | | | |
| **Cash Beginning Balance** | | | | | | |
| DIP Loan | 630,750 | | | | | |
| | | | (4,051) | (15,927) | (79,142) | 95,050 |
| **DIP Availability** | | | 159,152 | 143,226 | 64,083 | 159,133 |

| Sources | | | Uses | | | |
|---------|---|---|------|---|---|---|
| Loan | $ | 675,000 | Interest Reserve- 4 Months | 13.0% | $ | 29,250 |
| | | | Lender Legal Fees | | | 15,000 |
| | | | Net Proceeds to Bondurant | | | 630,750 |
| | $ | 675,000 | | | $ | 675,000 |