Larry O. Folks, #012142
**FOLKS HESS KASS, PLLC**
Suite 1140
1850 North Central Avenue
Phoenix, AZ 85004
Telephone: (602) 256-5906
Facsimile: (602) 256-9101
E-mail: folks@folkshesskass.com
*Attorneys for JPMorgan Chase Bank, N.A.*

# IN THE UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.,<br><br>Debtor and Debtor-In-Possession. | Chapter 11 Proceeding<br><br>Case No. 2:18-120041-BKM<br><br>**OBJECTION OF CHASE BANK TO DEBTOR'S <u>EXPEDITED MOTION</u> FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING; AND (II) GRANTING SECURITY INTERESTS AND LIENS TO DEBTOR-IN-POSSESSIO LENDER AND RELATED RELIEF PURSUANT TO 11 U.S.C. §364**<br><br><u>Hearing:</u><br>**Date: February 13, 2019<br>Time: 2:30 p.m.<br>Place: Courtroom 7a01<br>United States Bankruptcy Court<br>230 N. First Avenue, Phoenix, AZ 85003**<br><br>**[Relates To Docket Entry No. 146]** |

JPMorgan Chase Bank, N.A., a secured creditor of the Bob Bondurant School of High Performance Driving, Inc., the debtor and debtor-in-possession in the above-captioned proceeding ("**Debtor**"), by and through its undersigned counsel, hereby opposes (this "**Objection**") the Debtor's <u>Expedited Motion For Interim And Final Orders (I) Authorizing Debtor To Obtain Post-Petition Financing; And (II) Granting Security Interests And Liens To Debtor-In-Possession</u>

05-86718.01

Lender And Related Relief Motion For Authority To Incur Debt Pursuant To 11 U.S.C. §364 [Docket No. 146] (the "**DIP Financing Motion**") which has been set for hearing on an emergency basis on Wednesday, February 13, 2019, at 2:30 p.m. (the "**Emergency DIP Financing Hearing**"). This Response is submitted pursuant to 11 U.S.C. §364, Bankruptcy Rule 4001 and is supported by the following Memorandum of Points and Authorities. Due to the emergency nature of the relief sought, Chase Bank and its legal counsel (who will have had 3 business days notice of the DIP Financing Motion prior to the Emergency Financing Hearing) has had insufficient time, and lacks of sufficient information, to be able to fully respond to the DIP Financing Motion. As a result, Chase Bank reserves all of its rights to address the DIP Financing Motion in greater detail at the Emergency Financing Hearing, and to file supplemental pleadings in opposition to the relief sought prior to any final hearing to consider the DIP Financing Motion.

RESPECTFULLY SUBMITTED this 11th day of February, 2019.

**FOLKS HESS KASS, PLLC**

By /s/ Larry O. Folks
Larry O. Folks
Suite 1140
1850 North Central Avenue
Phoenix, AZ 85004
*Attorneys for Chase Bank*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTORY STATEMENT**

Bankruptcy Code §364(d) imposes a heavy burden of proof upon the Debtor to "prime" Chase Bank's lien as is sought by the DIP Financing Motion. The Debtor must prove both: (1) that the Debtor has exhausted all other options and is unable to obtain the DIP financing otherwise (meaning on less drastic terms) than imposing a "priming lien" upon Chase Bank's collateral; and (2) that Chase Bank's lien interest in its collateral will be adequately protected after the DIP loan closes and the "priming" lien is imposed upon the subject collateral. The Debtor's DIP Financing

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

2

Case 2:18-bk-12041-BKM    Doc 151    Filed 02/11/19    Entered 02/11/19 10:11:08    Desc
Main Document    Page 2 of 14

Motion and supporting Declaration fail to provide evidence to meet the required burden and, as a result, the DIP Financing Motion must be denied.

More specifically, Chase Bank objects to the relief sought by the DIP Financing Motion, because the Debtor has not, and cannot, carry its heavy burden pursuant to Bankruptcy Code §364(d)(1) and (2) to establish BOTH that granting Arlington Street Investments, LLC (the "**DIP Lender**") a priming lien (the "**DIP Priming Lien**") on substantially all of the Debtor's personal property business assets (the "**DIP Collateral**") senior to Chase Bank's lien on the DIP Collateral is: (1) the only means for the Debtor to obtain the requested $675,000.00 debtor-in-possession loan (the "**DIP Loan**"); and (2) that, if approved, Chase Bank's subordinated lien interest in the DIP Collateral will be adequately protected. 11 U.S.C. §364(d)(1) and (2).

The only evidence submitted by the Debtor in support of its DIP Financing Motion is a Declaration Of Timothy H Shaffer [Docket No. 150] (the **"Shaffer Declaration"**) who is the court-appointed Chief Restructuring Officer of the Debtor (the "**CRO**"). The Shaffer Declaration does not include the required factual evidence to prove that, in fact, exhaustive efforts were made to obtain DIP Financing on terms which do not require "priming" Chase Bank's lien. In addition, of more significance, the Debtor has failed to provide an appraisal or any admissible evidence of the value of the DIP Collateral. This is a critical omission, because the parties agree that before the DIP Loan closes, there is an "equity cushion" adequately protecting Chase Bank's lien meaning that as things stand, even if the Debtor is liquidated, Chase Bank will be paid in full. The only objective means to establish that Chase Bank's lien position will remain the same position after the DIP Loan closes and be adequately protected is if the value of the DIP Collateral equals or exceeds both the $675,000 DIP Loan balance and the approximate $150,000.00 due under the Chase Bank Loan. Neither the DIP Financing Motion nor the Shaffer Declaration reference a professional appraisal of the DIP Collateral. In addition, the CRO is not a Certified Appraiser nor

05-86718.01

even an owner of the DIP Collateral qualified to testify as to its value under the Federal Rules of Evidence. Therefore, the only evidence before the Court is a bald assertion that Chase Bank is secured by an equity cushion and that simply is not sufficient to grant the "priming lien" sought by the DIP Financing Motion. Without this critical information, for all Chase Bank, the Court or anyone else knows, Chase Bank could be immediately converted from an oversecured creditor to an undersecured (or even wholly undersecured creditor) the moment the DIP Loan is approved and that simply is not permissible and the Debtor must prove that won't be the case.

## II. FACTUAL BACKROUND

1. On October 2, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code located at 11 U.S.C. §101 *et. seq.* (the "**Bankruptcy Code**").

2. Prior to the Petition Date, Chase Bank entered into a revolving line of credit loan with the Debtor with a maximum credit limit of $150,000.00 (the "**Loan**").

**DESCRIPTION OF CHASE BANK'S LOAN DOCUMENTS AND THE COLLATERAL SECURING ITS LOAN**

3. On July 28, 2011, the Debtor, executed and delivered to Chase Bank a Promissory Note evidencing a line of credit with a maximum credit limit of $150,000.00 (collectively, the "**Note**"). A true and accurate copy of the Note is attached hereto as Exhibit 1 and is herein incorporated herein by this reference.

4. The Additional Terms of the Note that the Debtor executed and delivered to Chase Bank serve as a Security Agreement (the "**Security Agreement**") which has pledged a security interest in and first-priority lien upon the majority of the Debtor's personal property business assets (the "**Business Assets**").

5. On August 2, 2011, Chase Bank filed a UCC-1 financing statement with the Secretary of State of Arizona as Instrument No. 2011-16589553 (the "**UCC-1 Financing**

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

4

Case 2:18-bk-12041-BKM    Doc 151    Filed 02/11/19    Entered 02/11/19 10:11:08    Desc
Main Document    Page 4 of 14

**Statement**") which identifies Chase Bank's lien upon the Business Assets specifically as all "Inventory", "Chattel Paper", "Accounts", "Equipment" and "General Intangibles" and all "Proceeds" thereof as defined by the Uniform Commercial Code as enacted in Arizona (the "UCC") (hereinafter, the "**Chase Bank Collateral**"). Chase Bank's act of filing the UCC-1 Financing Statement with the Secretary of State of Arizona perfected its first-priority lien upon the Chase Bank Collateral. A true and accurate copy of the UCC-1 Financing Statement is attached hereto as Exhibit 2 and is herein incorporated by this reference.

6. Although the Debtor has made allegations about the scope of Chase Bank's lien, it doesn't contest that the bank holds a first-priority lien upon certain of the Debtor's Business Assets. *See,* the Debtor's DIP Financing Motion at Paragraph 5. Furthermore, as of the Petition Date, the Debtor and Chase Bank agree that the bank's lien upon the DIP Collateral was and remains oversecured.

7. As of the Petition Date, the loan balance due to Chase Bank was comprised of: (i) $149,813.25 of unpaid principal; and (ii) $742.38 of accrue and unpaid interest for a total of $149,813.25 (the "**Loan Balance**").

8. Chase Bank was not consulted with by the Debtor concerning the proposed DIP Loan or relief sought by the DIP Financing Motion prior the emergency relief being sought.

## THE PROPOSED FINANCING

9. The Debtor's DIP Financing Motion contains a dearth of information, and no admissible evidence, of any kind with respect to the Debtors efforts to locate financing on less drastic terms. What is clear, however, is that the Debtor is seeking enter into the $675,000.00 DIP Loan pursuant to Bankruptcy Code Section 364(d) secured by a first-priority "priming" lien upon all of the Debtor's Business Assets and to subordinate Chase Bank's currently oversecured lien

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

5

Case 2:18-bk-12041-BKM    Doc 151    Filed 02/11/19    Entered 02/11/19 10:11:08    Desc
Main Document    Page 5 of 14

to the DIP Lien with no evidence of the value of the Business Assets to establish what Chase Bank's lien position will be after the DIP Loan is granted.

## CHASE BANK'S LEGAL OPPOSITION TO APPROVAL OF THE DIP FINANCING MOTION AND THE PROPOSED DIP LOAN

10. Chase Bank first opposes the DIP Financing Motion on the procedural basis that it fails to satisfy the express requirements of Bankruptcy Rule 4001(c). Therefore, the Court should make an initial preliminary determination concerning whether, or not, to even consider the DIP Financing Motion at the Emergency DIP Financing Hearing. In particular, Bankruptcy Rule 4001(c)(1)(A) provides that a motion for authority to obtain post-petition credit <u>shall be accompanied by a copy of the credit agreement.</u> In this case, although the DIP Financing Motion does attach a DIP Loan Term Sheet, it does not satisfy the requirement of Bankruptcy Rule 4001(c)(1)(A) requirement that the Debtor submit the actual proposed credit agreement to document the terms of the DIP Loan.

12. Second, Chase Bank opposes the DIP Financing Motion, because the Debtor has not submitted sufficient evidence that the Debtor will suffer "immediate and irreparable harm" as is required to entitle the Debtor to obtain an interim post-petition loan without a Final Hearing as is required Bankruptcy Rule 4001(c)(2). Other than assertions in the DIP Financing Motion that the funds are needed to bring their landlord's payments current and to fund operational breathing room there are no concrete facts asserted such as facing immediate eviction or closure of the business to justify granting the relief requested on an interim basis pursuant to Local Bankruptcy Rule 4001-4(c). In short, there is no basis for this Court to grant the Debtor's requested emergency relief.

**13. Third, Chase Bank opposes the DIP Financing Motion, <u>because it fails to satisfy the requirements of Bankruptcy Code §364.</u>**

Bankruptcy Code §364(c) provides—

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing may authorize the obtaining of credit, or the incurring of debt—
>
> (1)  with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2)  secured by a lien on property of the estate that that is not otherwise subject to a lien; or
>
> (3)  secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. §364(c).

The Bankruptcy Code contemplates that if post-petition borrowing is necessary, debtors-in-possession should pursue such loans, first, as unsecured loans; second, as unsecured loans with priority over administrative claims; third, as secured loans with a lien on unencumbered property; and fourth, as secured loans with a lien junior to an existing lien. The Debtor has not shown by convincing evidence that it has exhausted all of these options. The only evidence submitted to the Court in support of the DIP Financing Motion is the Shaffer Declaration. The Schaffer Declaration, however, only makes a cursory statement that the Debtor has been unable to obtain financing in the form of unsecured credit allowable under Bankruptcy Code §503(b)(1) as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Bankruptcy Code §364(c)(1). There is no detail of the efforts made and no explanation of whether the Debtor even explored granting the DIP Lender a lien on collateral less than all of the Debtor's Business Assets. *See,* the Shaffer Declaration at ¶9. Instead, of explaining why the DIP Loan couldn't be obtained by affording the DIP Lender other safeguards in the form of §§503(b)(1), 503(b), 507(b), 364(c)(2) and (c)(3) protections, the Debtor simply asserts that isn't possible.

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

Case 2:18-bk-12041-BKM  Doc 151  Filed 02/11/19  Entered 02/11/19 10:11:08  Desc
Main Document    Page 7 of 14

Additionally, the Debtor's request that the DIP Loan be given superiority status to "prime"/subordinate Chase Bank's currently oversecured lien is not supported by the evidence before the Court:

Bankruptcy Code §364(d)(1) provides—

The court, after notice and a haring, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A)  *the trustee is unable to obtain such credit otherwise*; and

(B)  *there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be grant*ed.

11 U.S.C. §364(d)(1) (*emphasis added).*

Even if the Court accepts the testimony of the Shaffer Declaration that the Debtor simply cannot obtain the DIP Loan without priming Chase Bank's lien, there is no evidence before the Court to meet the second (and also mandatory) prong of §364(d)(1)(B) that Chase Bank's lien will be afforded adequate protection after the DIP Loan closes. Currently, the Chase Bank Loan is oversecured. There has been no appraisal, nor any other evidence submitted in the Shaffer Declaration, or elsewhere, of what the value of the DIP Collateral is to allow Chase Bank, or the Court, to conclude what Chase Bank's collateral position will be after the DIP Lien is in place. Also, no form of adequate protection to Chase Bank is offered by the DIP Financing Motion or form of Order presented at all.

Bankruptcy Code §364(d) permits the Court to authorize a debtor to obtain senior secured debt only if, among other requirements "there is adequate protection of the interest" of existing interest holders. Section 364(d)(2) places the burden of establishing adequate protection of existing lienholders' interests on the party requesting the post-petition financing. Here, as discussed above, the Debtor fails to explain or substantiate how the terms or effect of the proposed

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

8

Case 2:18-bk-12041-BKM   Doc 151   Filed 02/11/19   Entered 02/11/19 10:11:08   Desc
Main Document    Page 8 of 14

DIP Loan will adequately protect the existing interest in the DIP Collateral, beyond a cursory claim that here exists additional equity beyond the value of the existing lien interests with no support whatsoever.

Under the facts and circumstances of the case, whether or not the terms and conditions of the proposed DIP Loan are sufficient to adequately protect existing interests is highly questionable, and the Debtor has failed to offer sufficient basis at this time. There is no plan on file that would reveal how the DIP Financing is intended to rehabilitate the Debtor and protect the interests of all parties in the case. Furthermore, although a budget has been submitted and arguments made that the DIP Loan will keep the organization afloat, no exit strategy has been proposed such as a firm signed asset purchase agreement for the business to allow creditors or the Court to conclude that the DIP Loan will simply keep the lights on for awhile for failure of the business down the road. Absent actual proof of real and adequate protection, as well as adequate justification for the amount and proposed use of the requested funds, the DIP Financing Motion should be denied.

As discussed above, the DIP Financing Motion is a priming request, subject to an elevated level of scrutiny. In re First South Savings Assoc., 820 F.2d 700, 710 (5th Cir. 1987)("Given the fact that super priority financing displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected"); In re Seth Co., 281 B.R. 150, 153 (Bankr. D. Conn. 2002)("the ability to prim an existing lien is extraordinary…").

While the focus of any DIP financing analysis is centered on the "adequate protection" granted to current creditors, bankruptcy courts have consistently applied a three factor approach analysis of DIP financing requests, especially those that seek to prime another party's position:

> However, we believe that the Debtors must nevertheless sustain the burden of establishing the following before we could approve the Stipulations in issue:

(1) They are unable to obtain unsecured credit per 11 U.S.C. §364(b), *i.e.*, by allowing a lender only an administrative claim per 11 U.S.C. §503(b)(1)(A);

(2) The credit transaction is necessary to preserve the assets of the estate; and

(3) The terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Crouse, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987). Here, the Debtor has failed to satisfy these "three requisite elements". *Id.* at 550.

First the Debtor has made no showing regarding efforts made to secure additional financing. The Shaffer Declaration merely alleges that "the Debtor has been unable to procure DIP financing in the appropriate amount from any source other than the DIP Lender. *See,* the Shaffer Declaration at ¶12. Generalized statements and unsubstantiated efforts are insufficient to satisfy the Debtor's burden.

Second, the Debtor has failed to show that the requested financing will sufficiently preserve or benefit the estate. It is not enough to "keep alive a faint hope" that the bankruptcy case and the transactions contemplated therein will be completed successfully. *Id.* at 551.

Finally, the proposed DIP Loan terms are not "fair, reasonable, and adequate" with respect to Chase Bank. In effect, the Debtor wants Chase Bank to convert its unquestionable oversecured loan into what may be in an eroded lien position. Furthermore, even though the Debtor alleges that Chase Bank is receiving payments, those payments are insufficient to even pay current interest on the Chase Bank Loan.

In conclusion, the Debtor has not offered Chase Bank sufficient adequate protection to merit subordination of its lien interest in the DIP Collateral—at a minimum an appraisal must be produced to show that Chase Bank will remain fully secured if the DIP Loan closes for Chase Bank to be adequately protected. Furthermore, the Debtor has not proven that it is unable to obtain other credit on more favorable terms. In particular, the DIP Financing Motion does not

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

even discuss what steps, if any, were taken by the Debtor to locate alternative post-petition financing other than current DIP Lender proposed. The DIP Financing Motion simply includes an unsupported bald assertion by legal counsel that the Debtor was unable to obtain post-petition credit from an alternative source. Although the Debtor does not need to show that it approached every conceivable lender for post-petition financing, it must make an effort to obtain financing without priming a senior lien. A debtor must further show that such financing was not available. See, e.g., In re Snowshoe Co., Inc., 789 F.2d 1085, 1088 (4th Cir. 1986). Clearly, the Debtor must present at least some credible evidence that the proposed DIP Loan is the best financing available and there are no other loans available on more favorable terms. Testimony must be presented by the Debtor to satisfy this important element of proof to obtain authorization to enter into the proposed DIP Loan.

WHEREFORE, for the foregoing reasons, Chase Bank: (1) requests that the Court deny the relief sought by the Debtor's DIP Financing Motion; (2) opposes approval of any debtor-in-possession financing in this case which "primes" Chase Bank's lien; and (3) requests that the Court enter an order granting such other and further relief as the Court may deem just and appropriate under the circumstances.

DATED this 11th day of February, 2019.

**FOLKS HESS KASS, PLLC**

By /s/ Larry O. Folks
    Larry O. Folks
    Suite 1140
    1850 North Central Avenue
    Phoenix, AZ 85004
    *Attorneys for Chase Bank*

**E-FILED** on February 11, 2019, with
The U.S. Bankruptcy Court and copies

05-86718.01

Served via ECF notice on all parties that have appeared in the case.

COPY mailed the same date via U.S. Mail to:

Bob Bondurant School of High Performance Driving, Inc.
20000 South Maricopa Road, Gate 3
Chandler, AZ 85226
*Debtor*

Hilary L. Barnes, Esq.
Philip J. Giles, Esq.
ALLEN BARNES & JONES, PLC
1850 North Central Avenue, Suite 1150
Phoenix, AZ 85004
*Attorneys for the Debtor*

List Of 20 Largest Unsecured Creditors

Elizabeth C. Amorosi, Esq.
Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003

**COPY** emailed same date to:

Elizabeth C. Amorosi
OFFICE OF THE UNITED STATES TRUSTEE
230 N. First Avenue, Ste 204
Phoenix, AZ 85003-1706
Elizabeth.C.Amorosi@usdoj.gov

Warren J. Stapleton
OSBORN MALEDON
2929 N. Central Ave., Ste 2100
Phoenix, AZ 85012
wstapleton@omlaw.com
*Attorneys for Sun Valley Marina Development Corp.*

Michelle E. Shriro
SINGER & LEVICK, P.C.
16200 Addison Road, Suite 140
Addison, TX 75001
mshriro@singerlevick.com
*Attorneys for Moses Smith Racing LLC*

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

| | |
|---|---|
| 1 | Thomas E. Littler |
| 2 | LITTLER, PC |
|   | 341 W Secretariat Dr. |
| 3 | Phoenix, AZ 85284 |
| 4 | telittler@gmail.com |
|   | *Attorneys for Semple Marchal Cooper PLC* |
| 5 | |
|   | Christopher C. Simpson |
| 6 | STINSON LEONARD STREET LLP |
|   | 1850 N. Central Ave., #2100 |
| 7 | Phoenix, AZ 85004 |
|   | Christopher.simpson@stinson.com |
| 8 | *Attorneys for FCA US LLC* |
| 9 | Sheryl L. Toby |
|   | DYKEMA GOSSETT PLLC |
| 10 | 39577 Woodward Ave., #300 |
|    | Bloomfield Hills, MI 48304 |
| 11 | stoby@dykema.com |
| 12 | *Attorneys for FCA US LLC* |
| 13 | Hilary L. Barnes, Esq. |
|    | ALLEN BARNES & JONES, PLC |
| 14 | 1850 North Central Avenue, Suite 1150 |
|    | Phoenix, AZ 85004 |
| 15 | hbarnes@allenbarneslaw.com |
|    | *Attorneys for the Debtor* |
| 16 | |
|    | Philip J. Giles, Esq |
| 17 | ALLEN BARNES & JONES, PLC |
|    | 1850 North Central Avenue, Suite 1150 |
| 18 | Phoenix, AZ 85004 |
|    | pgiles@allenbareslaw.com |
| 19 | *Attorneys for the Debtor* |
| 20 | |
|    | Leslie A. Berkoff |
| 21 | MORITT HOCK & HAMROFF LLP |
|    | 400 Garden City Plaza |
| 22 | Garden City, NY 11530 |
|    | lberkoff@moritthock.com |
| 23 | *Attorneys for Unifi Equipment Finance, Inc.* |
| 24 | |
| 25 | / / / |
| 26 | / / / |
| 27 | / / / |
| 28 | |

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01

| | |
|---|---|
| 1 | Christopher R. Kaup |
| 2 | TIFFANY & BOSCO, P.A.<br>Seventh Floor, Camelback Esplanade II |
| 3 | 2525 E. Camelback Rd.<br>Phoenix, AZ 85016 |
| 4 | crk@tblaw.com<br>*Attorneys for Robert and Patricia C. Bondurant* |
| 5 | |
| 6 | By ___/s/ Iesha Meza___<br>An employee of Folks Hess Kass, PLLC |

FOLKS HESS KASS, PLLC
ATTORNEYS AT LAW
PHOENIX

05-86718.01