Hilary L. Barnes, #19669
Philip J. Giles, #30340
**ALLEN BARNES & JONES, PLC**
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona 85004
Office: (602) 256-6000
Fax: (602) 252-4712
Email: hbarnes@allenbarneslaw.com
       pgiles@allenbarneslaw.com

Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| In re: | Chapter 11 |
|---|---|
| Bob Bondurant School of High Performance Driving, Inc., | Case No. 2:18-bk-12041-BKM |
| Debtor. | **MOTION TO APPROVE BID PROCEDURES FOR SALE OF ASSETS** |

Bob Bondurant School of High Performance Driving, Inc., the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned bankruptcy case ("**Case**"), hereby moves this Court to approve certain bid procedures ("**Procedures**") for the public auction ("**Sale**") of most of the Debtor's assets ("**Subject Assets**"). In conjunction with this Motion, the Debtor is also filing its (a) *Motion to Approve Sale of Assets Free and Clear of Lien* ("**Sale Motion**") and (b) *Motion for Shortened Notice and Expedited Hearings* on both this Motion and the Sale Motion. This Motion is supported by the following Memorandum of Points and Authorities, and the entire record before the Court in this Case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   JURISDICTION AND BACKGROUND**

1.   Debtor requests relief pursuant to 11 U.S.C. §§ 105, 363, and Fed. R Bankr. P. 6004. The Court has jurisdiction over this Chapter 11 proceeding under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.   For relevant background, the Debtor incorporates by reference the Background

section of the Sale Motion, filed contemporaneously herewith.

## II. PROPOSED PROCEDURES

A debtor-in-possession, after notice and a hearing, may sell property of the estate outside the ordinary course of business. 11 U.S.C. § 363(b). Further, it may conduct such sale through a public auction. Fed. R. Bankr. P. 6004(f). The Debtor proposes the following Procedures in its sound business judgment, without negotiation or preference to any party or person.

    a.    <u>Overview</u>. The Debtor intends to conduct the Sale as a competitive bidding process in the form of a public auction to be conducted at the Sale Hearing. After the bidding concludes, the Debtor will ask the Court to approve the Successful Bidder (defined herein) and the Backup Bidder(s) (defined herein). After the Sale Hearing, the Successful Bidder and the Debtor shall proceed to close the sale no later than March 29, 2019 (the "**Closing Date**"). To facilitate prompt closing of the sale, the Debtor will request the Court waive the stay imposed by Fed. R. Bankr. P. 6004(h). Further, the Procedures contemplate that all interested parties have concluded any desired due diligence before the Sale Hearing. Except to the extent that the Sale involves assignment and assumption of any unexpired lease or contract, the Sale shall not transfer any debt of the Debtor.

    b.    <u>Right to Determine Highest and Best Bid</u>. On behalf of the Debtor, the CRO will have the sole and exclusive right to negotiate any bid or offer for the purchase of the Subject Assets, which may fluctuate depending on any Qualified Bid (defined herein), and to determine the highest and best offer, subject to Court approval. In evaluating what constitutes the highest and best bid or offer, the Debtor may consider the following factors, without limitation: (i) the total purchase price, (ii) the liabilities assumed by the bidder, to the extent they benefit the estate, (iii) the bidder's financial ability to pay the purchase price, (iv) the terms and conditions related to the purchase price and assumption of liabilities, (v) the probability of a prompt closing, (vi) the net benefit to the estate, taking into account potential entitlement to the Termination Fee, and (vii) any other factor that maximizes value for the bankruptcy estate.

c. <u>Stalking Horse Bidder</u>. An undisclosed Arizona limited liability company ("**Proposed Buyer**") entered into an Asset Purchase Agreement ("**APA**") with the Debtor pursuant to which the Debtor shall sell the Subject Assets to the Proposed Buyer in exchange for a purchase price valued in excess of $5 million in the aggregate, as defined in the APA, comprised of the following (collectively, the "**Initial Bid**"):

    (i) A cash payment of $300,000;

    (ii) Assumption of certain liabilities

        1. The Debtor's lease with Sun Valley Marina Development Corporation ("**Sun Valley**"), including the Debtor's post-petition rent obligation, under amended terms negotiated by Proposed Buyer with Sun Valley;

        2. Student deposits in the amount of $250,000 or 33.3% of future revenue, whichever is higher at the Closing Date;

        3. Hunter Fully Automatic Tire Changer Lease; and

        4. Nitehawk Osprey II Lease.

The Proposed Buyer shall be the stalking horse bidder for the Subject Assets, and the Initial Bid shall serve as the "stalking horse" bid and will be subject to higher and better offers submitted at the Sale.

d. <u>Termination Fee</u>. If the Debtor sells the Subject Assets to a competing bidder, the Debtor has agreed to pay to the Proposed Buyer a Termination Fee of $100,000.00, plus reimbursement of any out-of-pocket legal and due diligence costs associated with the transaction from the Sale proceeds, so long as the Proposed Buyer provides adequate documentation of such expenses and the aggregate of such expenses does not exceed $25,000.00, with such Termination Fee to survive termination of the Agreement and, until paid, constitute an administrative priority claim against the Debtor's estate under Code §§ 503(b) and 507(a)(1). Payment of the Termination Fee is a material inducement for, and a condition of, the Proposed Buyer's entry into the Agreement. Furthermore, the Termination

Fee (as that term is defined in the Procedures Motion and Agreement) (a) is an actual and necessary cost and expense of preserving Debtor's estate, within the meaning of Code § 503(b); (b) is of substantial benefit to the Debtor's estate; (c) is reasonable and appropriate in light of the size and nature of the Sale and the assets being sold and the efforts that have been and will be expended by the Proposed Buyer; (d) was negotiated by the parties at arms' length and in good faith; and (e) is necessary to ensure that the Proposed Buyer will continue to pursue its proposed acquisition of the Purchased Assets. The Proposed Buyer is unwilling to commit to hold open its offer to acquire the Purchased Assets under the terms of the Agreement absent court approval of the Termination Fee. Accordingly, assurance to the Proposed Buyer of payment of the Termination Fee creates and promotes competitive bidding. Accordingly, the Debtor requests approval, in the event the Termination Fee becomes due under the terms of the Agreement, to immediately pay Proposed Buyer (without further application to this Court) the amount of $100,000.00, plus reimbursement of any out-of-pocket legal and due diligence costs associated with the transaction from the Sale proceeds, so long as the Proposed Buyer provides adequate documentation of such expenses and the aggregate of such expenses does not exceed $25,000.00, with such Termination Fee to survive termination of the Agreement and, until paid, constitute an administrative priority claim against the Debtor's estate under Code §§ 503(b) and 507(a)(1).

e. <u>Subject Assets to be Sold</u>. The Subject Assets to be sold, as well as those certain assets which are specifically excluded from the Initial Bid, are listed on Exhibit A and C to the Sale Motion.

f. "<u>As Is, Where Is</u>". The sale of the Subject Assets will be on an "as is, where is" basis, without representations or warranties, express or implied of any type, kind or description, except as may be agreed upon by the Debtor and any Successful Bidder, subject to the approval of the Bankruptcy Court. To the extent a Qualified Bidder seeks to purchase any of the excluded assets, those sale of those assets will also be on an "as is, where is" basis, without representations or warranties, express or implied of any type, kind or description,

except as may be agreed upon by the Debtor and any Successful Bidder, subject to the approval of the Bankruptcy Court.

g. <u>Satisfaction of Chase Liens and Assumption of Liabilities</u>. The Debtor shall use proceeds from the Sale to satisfy any lien or claim held by Chase arising from its Line of Credit, and the Proposed Buyer intend to assume certain liabilities as set forth in Paragraph 2 above.

h. <u>Due Diligence</u>. It is anticipated that the Debtor's books, records, and other materials (collectively, "**Due Diligence Materials**") related to the Subject Assets will be made available to any potential bidder ("**Potential Bidder**") that executes a nondisclosure agreement provided by Debtor's counsel. The inspection of the Subject Assets must be concluded before the Bid Deadline (defined herein). The Debtor makes no representations or warranties of any kind about the Due Diligence Materials. In addition, a Potential Bidder that becomes eligible to bid at the Sale shall be determined to have participated in the Sale process based upon its own due diligence and upon its own evaluation of the Subject Assets.

i. <u>Qualified Bidder</u>. Each Potential Bidder that wishes to participate in the Sale must become a "**Qualified Bidder**." To become a Qualified Bidder, a Potential Bidder must deliver to the Debtor's counsel by or before the Bid Deadline the following: (i) a $50,000.00 refundable earnest money deposit in certified funds ("**Bid Deposit**"); (ii) a written purchase offer for the Subject Assets that includes a bid amount of at least $500,000.00 and assumption of the same liabilities as set forth in the APA (which will be on file prior to the Procedures Hearing) that is reasonably acceptable to the Debtor, irrevocable, unconditional, and non-contingent; (iii) a statement evidencing the Potential Bidder's financial ability to purchase the Subject Assets; and (iv) a statement affirming and acknowledging that all consents and financing necessary to purchase the Subject Assets have been obtained. The CRO will evaluate any submission that includes the foregoing criteria and determine in the Debtor's reasonable business judgment that such submission is a "**Qualified Bid**." To the extent any Potential Bidder wishes to submit a bid to purchase both the Subject Assets and

some or all of certain excluded assets, that Potential Bidder's bid must still conform with subsections (i)-(iv) herein. The Debtor shall timely inform a Qualified Bidder that it has submitted a Qualified Bid. Notwithstanding anything to the contrary, the Proposed Buyer shall be deemed a Qualified Bidder without the need for any further action or deposit.

j. <u>Qualified Bid Deadline</u>. All Qualified Bids must be delivered to the Debtor's counsel no later than two (2) business days before the Sale Hearing ("**Bid Deadline**").

b. <u>Copies of Qualified Bids</u>. The Debtor shall notify the Proposed Buyer of any Qualified Bids as soon as practicable after the Bid Deadline. Before the Sale, the Debtor shall indicate to the Proposed Buyer the Qualified Bid that the Debtor believes represents the highest and best bid for the Subject Assets ("**Starting Bid**"). If no Qualified Bids are presented to the Debtor, the Sale will not go forward, and the Proposed Buyer will be presented to the Court as the Successful Bidder.

k. <u>No Unqualified Bids</u>. Only Qualified Bidders that have submitted Qualified Bids shall be entitled to bid on the Subject Assets at the Sale unless the Court approves otherwise.

l. <u>No Collusion</u>. At the Sale Hearing, Qualified Bidders may be required to confirm that they have not engaged in any collusion regarding the bidding or the sale.

m. <u>Bid Increments</u>. If there are Qualified Bidders in addition to the Proposed Buyer at the Sale, bidding will commence with the Starting Bid, which must be at least $500,000, and will continue in one or more rounds if and until the Successful Bidder is chosen by the Debtor in its reasonable business judgment. Bid increments must be at least $25,000.

n. <u>No Termination Fee or Expense Reimbursement</u>. Other than the Proposed Buyer, no Qualified Bidder shall be entitled to a termination fee or expense reimbursement. Except as explicitly provided herein, neither the Proposed Buyer nor any Qualified Bidder shall be entitled to assert any claim against the bankruptcy estate for having participated in the Sale.

o. <u>Additional Procedures</u>. Notwithstanding the foregoing, subject to Court approval, the Debtor may adopt other procedures in its reasonable business judgment that may maximize the value of the Subject Assets for the bankruptcy estate.

p. <u>Successful Bidder</u>. After the Sale is concluded, the Debtor, in its reasonable business judgment, shall declare the Qualified Bidder that submitted the highest and best offer for the Subject Assets the winning bidder ("**Successful Bidder**"). The Debtor will then ask the Bankruptcy Court to approve the sale of the Subject Assets to the Successful Bidder.

q. <u>Backup Bids</u>. Backup bids will be accepted at the conclusion of the Sale. If the Successful Bidder fails to close by the Closing Date, which the Debtor may extend in its reasonable business judgment, then the Subject Assets will be sold to the Qualified Bidder that submitted the next highest and best bid during the Sale that is willing to close the transaction ("**Backup Bidder**"). The Debtor will present the Backup Bidder to the Bankruptcy Court for approval at the Sale Hearing. Notwithstanding the foregoing, the Debtor may decline to sell the Subject Assets to the Backup Bidder in the exercise of the Debtor's reasonable business judgment.

r. <u>Return of Earnest Money Deposits</u>. All Bid Deposits shall be credited toward the purchase price for the Subject Assets. The Bid Deposits shall be returned without interest to the parties that submitted them within five (5) business days after the Sale Hearing has concluded, provided that such persons are neither the Successful Bidder nor the Backup Bidder(s). If the Successful Bidder closes the Transaction, then the deposit submitted by the Backup Bidder shall be returned to the Backup Bidder without interest within five (5) business days after the sale of the Subject Assets to the Successful Bidder closes.

s. <u>Suspension of the Sale and Continuation of the Sale Hearing</u>. The Debtor, in the exercise of its reasonable business judgment and subject to Court approval, may suspend the Sale and continue the Sale Hearing. The Debtor may seek to suspend the Sale and to continue the Sale Hearing, among other reasons, to facilitate discussions with those Qualified Bidders participating in the Sale, to address unanticipated events, and to allow bidders to make alternative financing arrangements, or to demonstrate financial ability to close the Transaction based upon incremental overbids made at the Sale.

t. <u>Consent to Bankruptcy Court Jurisdiction</u>. All Qualified Bidders that have

submitted a Qualified Bid to participate in the Sale shall be deemed to have consented to the constitutional authority of and the jurisdiction of the Bankruptcy Court to enter any final order and judgment related to the sale of the Subject Assets or to the Procedures. Any right to a jury trial shall be deemed waived. The consent and waiver apply to any failure to close the transaction by the Successful Bidder or the Backup Bidder.

## III. LEGAL DISCUSSION

Bid procedures are appropriate when they enhance bidding and are designed to maximize sale proceeds under the particular circumstances of a Chapter 11 case. *In re Blixseth*, No. BKR. 09-60452-7, 2010 WL 716198, at *8 (Bankr. D. Mont. Feb. 23, 2010); *In re Golden Empire Air Rescue, Inc.*, No. BAP EC-07-1086, 2007 WL 7540946, at *7 (B.A.P. 9th Cir. Oct. 25, 2007) (citing *In re Lahijani*, 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005); *see also Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (stating that the general policy behind the Bankruptcy Code is to "maximi[ze] the value of the bankruptcy estate.").

The proposed Procedures are designed to allow the Subject Assets to be broadly marketed to those parties who have already expressed interest in the Debtor's assets and to those who may yet be interested, and to be sold in an expeditious and efficient manner. They provide a reasonable and prudent framework for the Debtor to entertain competing bids in a fair manner, with the stalking horse bidder providing the Initial Bid. If the bids received by the Debtor in advance of the Sale Hearing are Qualified, the Procedures ensure the Sale will be conducted to encourage participation by financially capable bidders. The Procedures also set forth a schedule for achieving these objectives in an expeditious and efficient manner by the Closing Date. Under the circumstances, the proposed Procedures are fair, reasonable, and designed to maximize the recovery to the Debtor's bankruptcy estate and enable the Debtor's school to continue operating.

## IV. CONCLUSION

Based on the foregoing, the Debtor requests that the Court enter an order:

(i) Approving this Motion in its entirety;

(ii) Approving the bid procedures and directing the Debtor to distribute them to the

mailing matrix, the parties that have submitted non-disclosure agreements, and to wider outlets as determined by the Debtor; and

(iii)　granting such other and further relief as is just under the circumstances.

DATED: March 7, 2019.

**ALLEN BARNES & JONES, PLC**

/s/ *HLB #19669*
Hilary L. Barnes
Philip J. Giles
*Attorneys for the Debtor*

**E-FILED** on March 7, 2019 with the
U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have appeared in the case.

**COPY** mailed same date via U.S. Mail to:

OFFICE OF THE U.S. TRUSTEE
230 N. First Avenue, Suite 204
Phoenix, AZ 85003-1706

*Twenty (20) largest unsecured creditors*

**COPY** emailed same date to:

| | |
|---|---|
| Elizabeth C. Amorosi<br>OFFICE OF THE U.S. TRUSTEE<br>230 N. First Avenue, Ste 204<br>Phoenix, AZ 85003-1706<br>Elizabeth.C.Amorosi@usdoj.gov | Warren J. Stapleton<br>OSBORN MALEDON<br>2929 N. Central Ave., Ste 2100<br>Phoenix, AZ 85012<br>wstapleton@omlaw.com<br>*Attorneys for Landlord Sun Valley Marina Development Corp.* |
| Michelle E. Shriro<br>SINGER & LEVICK, P.C.<br>16200 Addison Road, Suite 140<br>Addison, TX 75001<br>mshriro@singerlevick.com<br>*Attorneys for Moses Smith Racing LLC* | Thomas E. Littler<br>LITTLER, PC<br>341 W Secretariat Dr.<br>Phoenix, AZ 85284<br>telittler@gmail.com<br>*Attorneys for Semple Marchal Cooper PLC* |
| Christopher C. Simpson<br>STINSON LEONARD STREET LLP<br>1850 N. Central Ave., #2100<br>Phoenix, AZ 85004<br>Christopher.simpson@stinson.com<br>*Attorneys for FCA US LLC* | Sheryl L. Toby<br>DYKEMA GOSSETT PLLC<br>39577 Woodward Ave., #300<br>Bloomfield Hills, MI 48304<br>stoby@dykema.com<br>*Attorneys for FCA US LLC* |

Larry O. Folks
FOLKS HESS KASS, PLLC
1850 North Central Ave., Suite 1140
Phoenix, AZ 85004
folks@folkshesskass.com
*Attorneys for JPMorgan Chase Bank, NA*

Christopher R. Kaup
TIFFANY & BOSCO, P.A.
Seventh Floor, Camelback Esplanade II
2525 E. Camelback Rd.
Phoenix, AZ 85016
crk@tblaw.com
*Attorneys for Robert and Patricia C. Bondurant*

Jared G. Parker
PARKER SCHWARTZ, PLLC
7310 N. 16th Street, Suite 330
Phoenix, AZ 85020
jparker@psazlaw.com
*Attorneys for The Goodyear Tire & Rubber Company*

Robert Lapowsky
Stevens & Lee
620 Freedom Business Center, Suite 200
King of Prussia, Pennsylvania 19406
rl@stevenslee.com
*Attorneys for The Bancorp Bank*

Leslie A. Berkoff
MORITT HOCK & HAMROFF LLP
400 Garden City Plaza
Garden City, NY 11530
lberkoff@moritthock.com
*Attorneys for Unifi Equipment Finance, Inc.*

James E. Cross
THE CROSS LAW FIRM, P.L.C.
1850 N Central Ave., Suite 1150
Phoenix, AZ 85004
JCross@crosslawaz.com
*Attorneys for Arlington Street Investments*

Mark J. Giunta
Liz Nguyen
Law Office of Mark J. Giunta
531 E. Thomas Road, Suite 200
Phoenix, AZ 85012
Mark.giunta@giuntalaw.com
liz@giuntalaw.com
*Attorneys for The Bancorp Bank*

/s/ Carol McDonald