Hilary L. Barnes, #19669
Philip J. Giles, #30340
**ALLEN BARNES & JONES, PLC**
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona 85004
Office: (602) 256-6000
Fax: (602) 252-4712
Email: hbarnes@allenbarneslaw.com
           pgiles@allenbarneslaw.com

Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| In re: | Chapter 11 |
|---|---|
| Bob Bondurant School of High Performance Driving, Inc., | Case No. 2:18-bk-12041-BKM |
| Debtor. | **MOTION TO APPROVE SALE OF ASSETS FREE AND CLEAR OF LIEN** |

Pursuant to 11 U.S.C. §§ 363(b), (f), and (m), Bob Bondurant School of High Performance Driving, Inc., the debtor and debtor-in-possession ("**Debtor**") in the above-captioned bankruptcy case ("**Case**"), hereby moves the Court to approve the auction sale ("**Sale**") of certain of the Debtor's assets ("**Subject Assets**," a list of which is attached hereto as **Exhibit A**), in accordance with the Asset Purchase Agreement ("**APA**," attached hereto as **Exhibit B**[1]), free and clear of any lien or encumbrance in favor of secured lender JPMorgan Chase Bank, N.A. ("**Chase**"). The Sale will enable the Debtor's driving school ("**School**") to continue operating as a going concern and avoid liquidation in the near future.

Contemporaneously herewith, the Debtor filed its *Motion to Approve Bid Procedures For Sale of Assets* [ECF No. 178] ("**Procedures Motion**."), in which the Debtor requests the Court to approve procedures governing the Sale, and its *Motion for Shortened Notice and Expedited Hearings on (I) Motion to Approve Bid Procedures; and (II) Motion to Approve Sale*. The

---

[1] The APA is still being negotiated and will be filed before the Procedures Motion is heard by the Court.

hearing on the Procedures Motion will predate the hearing on the Sale Motion, and a Court-approved Sale Notice will go out to all interested parties and the master mailing list.

The following Memorandum of Points and Authorities, the *Declaration of Timothy H. Shaffer*, and the entire record in this Case supports this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     BACKGROUND**

1. The Debtor requests relief pursuant to 11 U.S.C. §§ 105, 363, and Fed. R Bankr. P. 6004. The Court has jurisdiction over this Chapter 11 proceeding under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On October 2, 2018 ("**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has operated its driving school (the "**School**") and holds and controls its assets as a debtor-in-possession. No committee or trustee has been appointed in this case.

3. Founded by Bob Bondurant, who has had an incredibly successful racing career, the Debtor has an illustrious 51-year history as an internationally acclaimed racing school. Located in Phoenix, Arizona, the Debtor's school is the only purpose-built driver training facility for performance enthusiasts and is the largest training facility of its kind in the world.

4. In 2011, the Debtor entered into a business line of credit ("**Line of Credit**"), pursuant to which Chase loaned to the Debtor $150,000. The obligation was secured purportedly by a blanket lien against the Debtor's assets pursuant to a grant of security within a promissory note and a filed UCC-1 financing statement.[2] The current amount due to Chase is approximately $149,813 [Claim No. 9]. The Debtor is current on its obligations under the Line of Credit.

5. The circumstances leading to the bankruptcy filing are set forth in the *Declaration of Patricia C. Bondurant, President and Chief Executive Officer in Support of Debtor's First*

---

[2] The Chase financing statement is larger in scope that the security granted in the Promissory Note.

*Day Filings* [ECF No. 12].

6. Since the Petition Date, the following events have occurred which support the Debtor's reasonably business judgment to proceed forward to the Sale in an expeditious manner:

   a. On October 25, 2018, the Debtor obtained the Court's approval to use cash collateral for its ongoing operations [ECF No. 42]. The Debtor makes monthly adequate protection payments of approximately $800 to Chase, which are applied to the interest due and owing on the Line of Credit.

   b. On November 12, 2018, led by then-vice president Jason Bondurant, certain employees orchestrated a walkout, suspended an ongoing class and dismissed students from the classroom, and locked the doors to the School without the knowledge of its equity holders. The disruption generated significant negative media attention and inaccurate reports that the Debtor was going to convert the Case immediately to a Chapter 7 and was shuttering its doors for good.[3]

   c. As a result, on November 13, 2018, on an emergency basis, the Debtor engaged Timothy H. Shaffer of Clotho Recovery Systems as its Chief Restructuring Officer ("**CRO**") [ECF No. 52]. Certain key employees returned to the School, and the Debtor restarted operations in less than a week after the walkout.

   d. The unexpected disruption led to that certain *Stipulated Order Granting Stay Relief, Adequate Protection, and Conditional Rejection of Contract* [ECF No. 119] related to a negotiated resolution by and between the Debtor and FCA USA, LLC, pursuant to which FCA USA, LLC has been granted stay relief upon the occurrence of certain triggering events, none of which have occurred.

   e. The disruption also resulted in the Debtor's most long-standing sponsor, The Goodyear Tire & Rubber Company, terminating - with scant explanation - its 45-year relationship with the Debtor [ECF Nos. 94 and 162].

---

[3] The Debtor reserves its rights in connection with any and all claim it may have in connection with the walkout.

f. After receiving a notice of intent not to renew its insurance in late November, the Debtor with the help of Lovitt Touche obtained replacement financing and entered into a premium financing agreement [ECF Nos. 110 and 126]. Since January 1, 2019, the Debtor has paid nearly $180,000 in insurance premiums.

g. While the Debtor has continued to run the School's programs and hold events as usual, the foregoing events, stigma of the bankruptcy, the disruption caused by the walkout, and the subsequent media reports have negatively affected the Debtor's operating capital, slowed its business, and significantly reduced its revenues.

h. Consequently, the Debtor became delinquent on its post-petition rent, and while its landlord, Sun Valley Marina Development Corporation ("**Sun Valley**"), has been patient and supportive of the School's operations during the bankruptcy, Sun Valley filed its "*Motion to Compel Payment of Post Petition Rent*" ("**Motion to Compel**") [ECF No. 118].

i. The Debtor engaged in discussions, document and information exchange, and negotiations with more than 20 individuals and groups, subject to non-disclosure agreements, regarding debtor-in-possession financing and/or purchase transactions involving the Debtor's operations and assets. While these negotiations have been ongoing, Sun Valley agreed to continuances of the hearing on its Motion to Compel [ECF Nos. 134 and 145] and agreed to extend the Debtor's time to assume or reject the Sun Valley lease [ECF Nos. 136, 157, and 173].

j. On February 4, 2019, one of the interested investors, Arlington Street Investments stepped forward with a term sheet to provide debtor-in-possession financing to the Debtor, which if approved by the Court would have enabled the Debtor to resolve the Motion to Compel and move toward a sale, with Arlington Street Investments serving as the putative stalking horse bidder. The Debtor spent significant resources (i) meeting with Arlington Street Investments, (ii) working on an asset purchase agreement with Arlington Street Investments, (iii) filing its *Emergency Motion to Approve Interim and*

*Final Orders (I) Authorizing Debtor to Obtain Post-Petition Secured Financing; (II) Granting Security Interests and Liens to Debtor-In-Possession Lender and Related Relief* (the "**DIP Financing Motion**") and related pleadings to have the DIP Financing Motion heard by the Court on an expedited basis [ECF Nos. 146-150], and (iv) working to resolve the objections filed by Chase [ECF No. 151] and Sun Valley [ECF No. 153]. However, on the morning of the hearing to consider the DIP Financing Motion, Arlington Street Investments abruptly withdrew its offer to provide DIP financing.

    k.    As a result of Arlington Street Investments' about face, the Debtor could not resolve the Motion to Compel as intended. With no DIP financing, the Debtor had no choice but to stipulate to resolve the Motion to Compel by agreeing to turn over the leased premises to Sun Valley by March 1, 2019 [ECF No. 157], and then negotiated an additional 30-day extension from Sun Valley, or until April 1, 2019 ("**Turnover Deadline**"), to enable the Debtor to continue its negotiations with various parties interested in purchasing the School as a going concern [ECF No. 173].

    l.    Arlington Street Investments then provided the Debtor with a term sheet to be the stalking horse bidder, but then again withdrew the term sheet.

    m.    Finally, The Bancorp Bank ("**Bancorp**") filed a Motion for Relief from Stay [ECF No. 168] related to certain assets that the Debtor asserts are property of its bankruptcy estate. The Bancorp stay relief motion is pending and will be heard on March 19, 2019 [ECF No. 175].

    7.    Of the many parties with whom the Debtor has executed non-disclosure agreements, one has stepped forward with an agreement in principal. On March 7, 2019, the Debtor and an undisclosed buyer ("**Proposed Buyer**") executed a term sheet, and the parties are working on an Asset Purchase Agreement ("**APA**"), whereby, subject to the Court's approval, the Debtor will sell the Subject Assets to the Proposed Buyer in exchange for a purchase price valued in excess of $5 million in the aggregate, as defined in the APA, comprised of the following (collectively, the "**Initial Bid**"):

      a.      Cash payment of $300,000;

      b.      Assumption of certain liabilities

           i.      Sun Valley Lease, including post-petition rent obligation, under amended terms negotiated with Sun Valley;

           ii.      Student deposits in the amount of $250,000 or 33.3% of future revenue, whichever is higher at the Closing Date;

           iii.      Hunter Fully Automatic Tire Changer Lease; and

           iv.      Nitehawk Osprey II Lease.

8. The Initial Bid will serve as the stalking horse bid and is subject to higher and better offers submitted at the Sale in accordance with the Procedures to be approved by the Court.

9. The Proposed Buyer has performed due diligence over the past two months and is committed to acquiring the Subject Assets pursuant to the terms of the APA. The Propose Buyer is neither an insider nor connected to the Debtor.

10. The Debtor has determined that the Sale of the Subject Assets to the Proposed Buyer pursuant to a competitive bidding process will recognize a greater return for its estate and enable the School to continue its operations. Unfortunately, the Debtor has insufficient resources to engage in a long-term reorganization, and no party has stepped up to underwrite one. Absent a sale, the Debtor will run into the Turnover Deadline, and a chapter 7 liquidation will follow, which will provide little to nothing for creditors of this estate, and irreparably damage the legacy of its founder.

11. The contemplated Sale of the Subject Assets includes the Prospective Buyer's assumption of certain ongoing obligations of the Debtor, including the Sun Valley lease (subject to agreement with Sun Valley) and other personal property leases,[4] which will significantly

---

[4] While this transaction is a sale under Code § 363, the Debtor may provide the same effect through assumption and assignment of leases pursuant to 11 U.S.C. § 365(f). The Bankruptcy Code provides that "notwithstanding a provision in an . . . unexpired lease of the debtor . . . that prohibits, restricts, or conditions the assignment of such . . . lease, the trustee may assign such . . . lease." 11 U.S.C. § 365(f). Section 365 permits a debtor-in-possession to "assume and assign a lease, often at a profit to the estate." *In re Windmill Farms Mgmt. Co.*, 116 B.R. 755, 765 (Bankr. S.D. Cal. 1990). Further, the Court has the

{00153700 2}      -6-
Case 2:18-bk-12041-BKM    Doc 179    Filed 03/07/19    Entered 03/07/19 16:11:12    Desc
Main Document    Page 6 of 16

increase return for these and other creditors of the estate. Conversely, a chapter 7 liquidation would realize a minimal return to creditors.

12. As noted, the Debtor intends to sell the Subject Assets more fully described in **Exhibit A**. Other assets, including all Chapter 5 claims <u>except one</u> owned by the Debtor are specifically excluded from the Subject Assets to be purchased. See the list of "**Excluded Assets**" attached hereto as **Exhibit C**.

13. The Debtor shall first use the Sale proceeds to pay the Chase Line of Credit to the extent necessary to release any purported lien on the Subject Assets held by Chase. Purchase of the Subject Assets shall be subject to any other liens and encumbrances to extent provided by applicable law.

### B. THE SALE IS IN THE BEST INTEREST OF CREDITORS

In general, courts will defer to a debtor-in-possession's decision to sell assets outside the ordinary course where the Debtor's reasonable business judgment and an articulated business justification for the sale supports the decision. *See In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992). Under the business judgment test, the court should approve a sale if it will benefit the estate. *Robertson v. Pierce (In re Chi-feng Huang)*, 23 B.R. 798, 801 (Bankr. 9th Cir. 1982). A debtor-in-possession's business judgment should be accepted unless the evidence shows that it is "clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Allied Technology, Inc. v. R.B. Brunemann & Sons (In re Allied Technology, Inc.)*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982). A debtor-in-possession may sell property free and clear of a lien if the price at which the property is to be sold is greater than the value of related liens on the property. 11 U.S.C. § 363(f)(3).

---

power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts may invoke Section 105 to give effect to the intent of the Bankruptcy Code in accordance with its other statutes. *See, e.g., Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1070 (9th Cir. 2004)

In a reasonable exercise of its business judgment, the Debtor asserts that moving forward with an expedited Sale, with the Proposed Buyer serving as the stalking horse bidder, is imperative to avoid the Turnover Deadline and maximize the benefit to the estate. Various factors, all of which are of record before the Court, including the Debtor's diminishing revenues and inability to meet its post-petition obligations, provide a sound business justification for the Sale on an expedited basis.

Based on these factors and others, the Debtor cannot move forward with a long-term reorganization and has deemed the Sale the best vehicle for obtaining the most value for its estate and creditors. From its negotiations with prospective purchasers, upon the Debtor's information and belief, significant interest in purchasing and continuing the Debtor's operations and its founder's legacy exists in the marketplace; thus, the Debtor expects that the Sale will be attended by more bidders than the Proposed Buyer. As a result, the Sale of the Subject Assets will provide the greatest return to the estate. The less desirable alternative – a chapter 7 liquidation – would result in minimal value being realized if the Subject Assets were liquidated in a piecemeal manner.

The Debtor proposes to use the Sale proceeds to pay off Chase's Line of Credit because the Initial Bid provides enough proceeds to do so. Regardless, Chase's lien shall attach to the Sale proceeds. As discussed above, and as set forth in the APA, the Proposed Buyer intends to take on the obligations associated with the Subject Assets. Any other purchaser of the Subject Assets will take such Subject Assets free and clear, except to the extent any of the Subject Assets are subject to any remaining lien or encumbrance arising out of a liability assumed by the purchaser.

The Debtor further requests that the 14-day stay under Fed. R. Bankr. P. 6004(h) be waived. The Debtor seeks to complete the Sale and close the sale of the Subject Assets no later than March 29, 2019, and waiver of the 14-day stay is necessary to complete the sale on this timeline. Finally, the Debtor requests that any Qualified Bidder (as defined in the Procedures Motion) be deemed a good faith purchaser and entitled to the protections afforded under 11

U.S.C. § 363(m).

C. **NOTICE**

The Debtor shall provide notice of this Motion and the Sale to all creditors and interested parties entitled to receive such notice in accordance with Fed. R. Bankr. P. 2002(a)(2), 6004, and Local Bankruptcy Rule 6004-1.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order

(a) approving the sale of the Subject Assets free and clear of Chase's Lien pursuant to 11 U.S.C. § 363(f);

(b) deeming the Successful Bidder (as defined in the Procedures Motion) a good faith purchaser entitled to the protections afforded under 11 U.S.C. § 363(m);

(c) waiving the stay imposed by Fed. R. Bankr. P. 6004(h); and

(d) granting such other and further relief as is appropriate under the circumstances.

DATED: March 7, 2019.

**ALLEN BARNES & JONES, PLC**

/s/ *HLB #19669*
Hilary L. Barnes
Philip J. Giles
*Attorneys for the Debtor*

**E-FILED** on March 7, 2019 with the
U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have appeared in the case.

**COPY** mailed same date via U.S. Mail to:

OFFICE OF THE UNITED STATES DEBTOR
230 N. First Avenue, Suite 204
Phoenix, AZ 85003-1706

*Twenty (20) largest unsecured creditors*

**COPY** emailed same date to:

Elizabeth C. Amorosi
OFFICE OF THE U.S. TRUSTEE
230 N. First Avenue, Ste 204
Phoenix, AZ 85003-1706
Elizabeth.C.Amorosi@usdoj.gov

Warren J. Stapleton
OSBORN MALEDON
2929 N. Central Ave., Ste 2100
Phoenix, AZ 85012
wstapleton@omlaw.com
*Attorneys for Landlord Sun Valley Marina Development Corp.*

| | |
|---|---|
| Michelle E. Shriro<br>SINGER & LEVICK, P.C.<br>16200 Addison Road, Suite 140<br>Addison, TX 75001<br>mshriro@singerlevick.com<br>*Attorneys for Moses Smith Racing LLC* | Thomas E. Littler<br>LITTLER, PC<br>341 W Secretariat Dr.<br>Phoenix, AZ 85284<br>telittler@gmail.com<br>*Attorneys for Semple Marchal Cooper PLC* |
| Christopher C. Simpson<br>STINSON LEONARD STREET LLP<br>1850 N. Central Ave., #2100<br>Phoenix, AZ 85004<br>Christopher.simpson@stinson.com<br>*Attorneys for FCA US LLC* | Sheryl L. Toby<br>DYKEMA GOSSETT PLLC<br>39577 Woodward Ave., #300<br>Bloomfield Hills, MI 48304<br>stoby@dykema.com<br>*Attorneys for FCA US LLC* |
| Larry O. Folks<br>FOLKS HESS KASS, PLLC<br>1850 North Central Ave., Suite 1140<br>Phoenix, AZ 85004<br>folks@folkshesskass.com<br>*Attorneys for JPMorgan Chase Bank, NA* | Leslie A. Berkoff<br>MORITT HOCK & HAMROFF LLP<br>400 Garden City Plaza<br>Garden City, NY 11530<br>lberkoff@moritthock.com<br>*Attorneys for Unifi Equipment Finance, Inc.* |
| Christopher R. Kaup<br>TIFFANY & BOSCO, P.A.<br>Seventh Floor, Camelback Esplanade II<br>2525 E. Camelback Rd.<br>Phoenix, AZ 85016<br>crk@tblaw.com<br>*Attorneys for Robert and Patricia C. Bondurant* | James E. Cross<br>THE CROSS LAW FIRM, P.L.C.<br>1850 N Central Ave., Suite 1150<br>Phoenix, AZ 85004<br>JCross@crosslawaz.com<br>*Attorneys for Arlington Street Investments* |
| Jared G. Parker<br>PARKER SCHWARTZ, PLLC<br>7310 N. 16th Street, Suite 330<br>Phoenix, AZ 85020<br>jparker@psazlaw.com<br>*Attorneys for The Goodyear Tire & Rubber Company* | Mark J. Giunta<br>Liz Nguyen<br>Law Office of Mark J. Giunta<br>531 E. Thomas Road, Suite 200<br>Phoenix, AZ 85012<br>Mark.giunta@giuntalaw.com<br>liz@giuntalaw.com<br>*Attorneys for The Bancorp Bank* |
| Robert Lapowsky<br>Stevens & Lee<br>620 Freedom Business Center, Suite 200<br>King of Prussia, Pennsylvania 19406<br>rl@stevenslee.com<br>*Attorneys for The Bancorp Bank* | |

*/s/ Carol McDonald*

# EXHIBIT A

# SUBJECT ASSETS

**All Assets (free and clear of any and all liabilities) including but not limited to:**

- Leases, contracts, intangibles (customer lists, brands, intellectual property)
- Accounts Receivables
- Inventory
- Note Receivable
- Prepaid Expenses, excluding insurance premium refunds
- Property, Plant and Equipment
- Seller's interest in the museum cars, which is currently unknown
- OEI Design Project

# EXHIBIT B

ASSET

PURCHASE

AGREEMENT

(TO BE SUPPLEMENTED)

# EXHIBIT C

# EXCLUDED ASSETS

- Cash and cash equivalents

- Bancorp-related vehicles (to the extent the Debtor has an interest in them), including but not limited to 1965 CXS9026 Shelby Cobra Daytona Coupe

- All securities, whether capital stock or debt, of either the Seller or any other entity

- Tax records, minute books, stock transfer books or corporate seals of either Seller

- All the Estate's causes of action, including those under Chapter 5, except those potential Chapter 5 causes of action, if any, related to the museum cars