**ORDERED ACCORDINGLY.**

**Dated: March 15, 2019**

**Brenda K. Martin, Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In re:<br><br>Bob Bondurant School of High Performance Driving, Inc.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:18-bk-12041-BKM<br><br>**ORDER APPROVING BID PROCEDURES FOR SALE OF ASSETS** |
|---|---|

Upon consideration of Debtor's *Motion to Approve Bid Procedures for Sale of Assets* [ECF No. 178] ("**Procedures Motion**"); the objections thereto filed by Moses Smith Racing, LLC, Arlington Street Investments, Semple Marchal Cooper PLC, and the U.S. Trustee at ECF Nos. 187, 189, 191 and 194; and after hearing the arguments made by counsel at the hearing on March 14, 2019, the Court finds and concludes as follows:

1. The Court has jurisdiction over the Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Court considered certain proposed bid procedures outlined more fully in the Procedures Motion in anticipation of a sale ("**Sale**") of most of the Debtor's assets and its operations scheduled for March 22, 2019 ("**Sale Hearing**").

3. Notice of the Procedures Motion was provided in accordance with this Court's prior *Order Approving Motion for Shortened Notice and Setting Expedited Hearings on (I) Motion to Approve Bid Procedures and (II) Motion to Approve Sale* [ECF No. 182], and the notice provided by the Debtor is appropriate under the circumstances.

4. The Court conducted a hearing on March 14, 2019 at 11:00 a.m. regarding the

Procedures Motion ("**Hearing**"). After careful consideration of the Procedures Motion, all related objections, and the arguments and averments made by counsel at the Hearing, and finding good cause,

**IT IS HEREBY ORDERED** that the bidding procedures ("**Procedures**") as provided in the Procedures Motion are hereby approved as modified herein.

**IT IS HEREBY FURTHER ORDERED** that the approved Bid Procedures are as follows:

a. <u>Overview</u>. The Debtor intends to conduct the Sale as a competitive bidding process in the form of a public auction to be conducted at the Sale Hearing. After the bidding concludes, the Debtor will ask the Court to approve the Successful Bidder (defined herein) and the Backup Bidder(s) (defined herein). After the Sale Hearing, the Successful Bidder and the Debtor shall proceed to close the Sale no later than March 29, 2019, or on such other date that is no longer than 10 business days after March 29, 2019, unless otherwise agreed in writing by the Parties (the "**Closing Date**"). To facilitate prompt closing of the Sale, the Court will waive the stay imposed by Fed. R. Bankr. P. 6004(h). Further, all interested parties who are Qualified Bidders must conclude any desired due diligence before the Sale Hearing. Except to the extent that the Sale involves assignment and assumption of any unexpired lease or contract, the Sale shall not transfer any debt of the Debtor.

b. <u>Right to Determine Highest and Best Bid</u>. On behalf of the Debtor, Timothy Shaffer, the Debtor's Chief Restructuring Officer ("**CRO**"), will have the sole and exclusive right to negotiate any bid or offer for the purchase of the Subject Assets (defined in the *Motion to Approve Sale of Assets Free and Clear of Lien* [ECF No. 179], as supplemented ("**Sale Motion**")), which may fluctuate depending on any Qualified Bid (defined herein), and to determine the highest and best offer, subject to Court approval. In evaluating what constitutes the highest and best bid or offer, the Debtor may consider the following factors, without limitation: (i) the total purchase price, (ii) the liabilities assumed by the bidder, to the extent they benefit the estate, (iii) the bidder's financial ability to pay the purchase price, (iv)

the terms and conditions related to the purchase price and assumption of liabilities, (v) the probability of a prompt closing, (vi) the net benefit to the estate, taking into account the Termination Fee and expense reimbursement amount, and (vii) any other factor that maximizes value for the bankruptcy estate.

    c.    <u>Stalking Horse Bidder</u>. AZNY22, LLC, an Arizona limited liability company ("**Proposed Buyer**"), entered into an Asset Purchase Agreement ("**APA**") with the Debtor pursuant to which the Debtor shall sell the Subject Assets to the Proposed Buyer in exchange for a purchase price valued in excess of $5 million in the aggregate, as defined in the APA, comprised of the following (collectively, the "**Initial Bid**"):

        i.    A cash payment of $300,000;

        ii.    Assumption of certain liabilities

            1.    The Debtor's lease with Sun Valley Marina Development Corporation ("**Sun Valley**"), including the Debtor's post-petition rent obligation, under amended terms negotiated by Proposed Buyer with Sun Valley;

            2.    Student deposits in the amount of $250,000 or 33.3% of future revenue, whichever is higher at the Closing Date;

            3.    Hunter Fully Automatic Tire Changer Lease; and

            4.    Nitehawk Osprey II Lease.

The Proposed Buyer shall be the stalking horse bidder for the Subject Assets, and the Initial Bid shall serve as the "stalking horse" bid and will be subject to higher and better offers submitted at the Sale.

    d.    <u>Termination Fee</u>. If the Subject Assets are sold to a competing Qualified Bidder (defined below), the Debtor has agreed to pay and the Court has approved such payment to the Proposed Buyer a Termination Fee of $25,000.00, plus reimbursement of any out-of-pocket legal and due diligence costs associated with the transaction from the Sale proceeds, so long as the Proposed Buyer provides adequate documentation of such expenses and the

aggregate of such expenses does not exceed $25,000.00, with such Termination Fee and expense reimbursement to survive termination of the APA and, until paid, constitute an administrative priority claim against the Debtor's estate under Code §§ 503(b) and 507(a)(1). The Termination Fee and expense reimbursement (a) are actual and necessary costs and expenses of preserving Debtor's estate, within the meaning of Code § 503(b); (b) are of substantial benefit to the Debtor's estate; (c) are reasonable and appropriate in light of the size and nature of the Sale and the assets being sold and the efforts that have been and will be expended by the Proposed Buyer; (d) were negotiated by the parties at arm's length and in good faith; and (e) are necessary to ensure that the Proposed Buyer will continue to pursue its proposed acquisition of the Purchased Assets.

  e. <u>Subject Assets to be Sold</u>.  The Subject Assets to be sold, as well as those certain assets which are specifically excluded from the Initial Bid, are listed on Exhibit A and C to the Sale Motion, as supplemented.

  f. <u>FCA Interests Not Included</u>.  Notwithstanding anything contained in the Sale-related documents (including the Procedures Motion or Sale Motion, or the proposed APA or any subsequent APA), the FCA contracts, vehicles, or trademarked or licensed products (collectively the "**FCA Interests**") are *not* subject to either (i) sale or (ii) assumption and assignment to any proposed buyer. Any proposed buyer must enter into new agreements with FCA, at FCA's sole discretion, to obtain access to the FCA Interests.

  g. <u>"As Is, Where Is"</u>.  The Sale will be on an "as is, where is" basis, without representations or warranties, express or implied of any type, kind or description, except as may be agreed upon by the Debtor and any Successful Bidder, subject to the approval of the Bankruptcy Court.  To the extent a Qualified Bidder seeks to purchase any of the excluded assets, those sale of those assets will also be on an "as is, where is" basis, without representations or warranties, express or implied of any type, kind or description, except as may be agreed upon by the Debtor and any Successful Bidder, subject to the approval of the Bankruptcy Court.

h. <u>Satisfaction of Chase Liens and Assumption of Liabilities</u>. The Debtor shall use proceeds from the Sale to satisfy any lien or claim held by Chase arising from its Line of Credit, and the Proposed Buyer intend to assume certain liabilities as set forth in Paragraph (c) above.

i. <u>Due Diligence</u>. It is anticipated that the Debtor's books, records, and other materials (collectively, "**Due Diligence Materials**") related to the Subject Assets will be made available to any potential bidder ("**Potential Bidder**") that executes a nondisclosure agreement provided by Debtor's counsel. The inspection of the Subject Assets must be concluded before the Bid Deadline (defined herein). The Debtor makes no representations or warranties of any kind about the Due Diligence Materials. In addition, a Potential Bidder that becomes eligible to bid at the Sale shall be determined to have participated in the Sale process based upon its own due diligence and upon its own evaluation of the Subject Assets and not upon representations made by the Debtor.

j. <u>Qualified Bidder</u>. Each Potential Bidder that wishes to participate in the Sale must become a "**Qualified Bidder**." To become a Qualified Bidder, a Potential Bidder must deliver to the Debtor's counsel by or before the Bid Deadline the following: (i) a $50,000.00 refundable earnest money deposit in certified funds ("**Bid Deposit**"), to be wired to or deposited with and held by Debtor's counsel, Allen Barnes & Jones, PLC, 1850 N Central Ave., Suite 1150, Phoenix, AZ 85004 in its trust account; (ii) proof of the Potential Bidder's ability to consummate the Sale and to provide adequate assurance of financial ability and of future performance on all contracts and leases that the proposed bidder proposes to be assumed and assigned; and (iii) a clean and marked asset purchase agreement showing changes to the APA that includes a bid amount of at least $400,000.00; and ~~assumption of the same liabilities as set forth in the APA that is reasonably acceptable to the Debtor, irrevocable, unconditional, and non-contingent; and~~ (iv) a statement affirming and acknowledging that all consents and financing necessary to purchase the Subject Assets have been obtained. The CRO will evaluate any submission that includes the foregoing criteria

(BKM)

and determine in the Debtor's reasonable business judgment that such submission is a "**Qualified Bid**." To the extent any Potential Bidder wishes to submit a bid to purchase both the Subject Assets and some or all of the excluded assets, that Potential Bidder's bid must still conform with subsections (i)-(iv) herein. The Debtor shall timely inform a Qualified Bidder that it has submitted a Qualified Bid. Notwithstanding anything to the contrary, the Proposed Buyer shall be deemed a Qualified Bidder without the need for any further action or deposit.

k. <u>Qualified Bid Deadline</u>. All Qualified Bids must be delivered to the Debtor's counsel no later than close of business (5:00 p.m. Arizona time) on March 20, 2019 ("**Bid Deadline**").

l. <u>Copies of Qualified Bids</u>. The Debtor shall notify the Proposed Buyer of any Qualified Bids as soon as practicable after the Bid Deadline. Before the Sale, the Debtor shall indicate to the Proposed Buyer the Qualified Bid that the Debtor believes represents the highest and best bid for the Subject Assets ("**Starting Bid**"). If no Qualified Bids are presented to the Debtor, the Sale will not go forward, and the Proposed Buyer will be presented to the Court as the Successful Bidder.

m. <u>No Unqualified Bids</u>. Only Qualified Bidders that have submitted Qualified Bids shall be entitled to bid on the Subject Assets at the Sale unless the Court approves otherwise.

n. <u>No Collusion</u>. At the Sale Hearing, Qualified Bidders may be required to confirm that they have not engaged in any collusion regarding the bidding or the sale.

o. <u>Bid Increments</u>. If there are Qualified Bidders in addition to the Proposed Buyer at the Sale, bidding will commence with the Starting Bid, which must be at least $400,000, and will continue in one or more rounds until the Successful Bidder is chosen by the Debtor in its reasonable business judgment. After the Starting Bid, the bidding increments must be at least $25,000.

p. <u>No Termination Fee or Expense Reimbursement</u>. Other than the Proposed Buyer, no Qualified Bidder shall be entitled to a termination fee or expense reimbursement. Except

as explicitly provided herein, neither the Proposed Buyer nor any Qualified Bidder shall be entitled to assert any claim against the bankruptcy estate for its having participated in the Sale.

q. <u>Additional Procedures</u>. Notwithstanding the foregoing, subject to Court approval, the Debtor may adopt other procedures in its reasonable business judgment that may maximize the value of the Subject Assets for the bankruptcy estate.

r. <u>Successful Bidder</u>. After the Sale is concluded, the Debtor, in its reasonable business judgment, shall declare the Qualified Bidder that submitted the highest and best offer for the Subject Assets the winning bidder ("**Successful Bidder**"). The Debtor will then ask the Bankruptcy Court to approve the sale of the Subject Assets (and any excluded assets, as applicable) to the Successful Bidder. Any dispute regarding whether a bid is higher or better will be determined by the Court.

s. <u>Backup Bids</u>. Backup bids will be accepted at the conclusion of the Sale. If the Successful Bidder fails to close by the Closing Date, the Subject Assets will be sold to the Qualified Bidder that submitted the next highest and best bid during the Sale that is willing to close the transaction ("**Backup Bidder**"). The Debtor will present the Backup Bidder to the Bankruptcy Court for approval at the Sale Hearing. Notwithstanding the foregoing, the Debtor may decline to sell the Subject Assets to the Backup Bidder in the exercise of the Debtor's reasonable business judgment.

t. <u>Return of Earnest Money Deposits</u>. All Bid Deposits shall be credited toward the purchase price for the Subject Assets. The Bid Deposits shall be returned without interest to the parties that submitted them within five (5) business days after the Sale Hearing has concluded, provided that such persons are neither the Successful Bidder nor the Backup Bidder(s). If the Successful Bidder closes the Transaction, then the deposit submitted by the Backup Bidder shall be returned to the Backup Bidder without interest within five (5) business days after the sale of the Subject Assets to the Successful Bidder closes.

u. <u>Suspension of the Sale and Continuation of the Sale Hearing</u>. The Debtor, in the

(BKM)

exercise of its reasonable business judgment and subject to Court approval, may suspend the Sale and continue the Sale Hearing. The Debtor may seek to suspend the Sale and to continue the Sale Hearing, among other reasons, to facilitate discussions with those Qualified Bidders participating in the Sale, to address unanticipated events, and to allow bidders to make alternative financing arrangements, or to demonstrate financial ability to close the Transaction based upon incremental overbids made at the Sale.

  v. <u>Consent to Bankruptcy Court Jurisdiction</u>. All Qualified Bidders that have submitted a Qualified Bid to participate in the Sale shall be deemed to have consented to the constitutional authority of and the jurisdiction of the Bankruptcy Court to enter any final order and judgment related to the sale of the Subject Assets or to the Procedures. Any right to a jury trial shall be deemed waived. The consent and waiver apply to any failure to close the transaction by the Successful Bidder or the Backup Bidder.

**DATED AND SIGNED ABOVE**

{00156917}
-8-
Case 2:18-bk-12041-BKM   Doc 207   Filed 03/15/19   Entered 03/16/19 21:16:04   Desc
Main Document   Page 8 of 8