BRYAN CAVE LEIGHTON PAISNER LLP, #145700
Robert J. Miller, 013334
Khaled Tarazi, 032446
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7000
Fax: (602) 364-7070
Email: rjmiller@bclplaw.com
khaled.tarazi@bclplaw.com

Attorneys for Wells Fargo Vendor Financial Services, LLC
and Wells Fargo Financial Leasing, Inc.

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| In re: | Chapter 11 |
|---|---|
| Bob Bondurant School of High Performance Driving, Inc., | Case No. 2:18-bk-12041-BKM |
| Debtor. | **NOTICE OF FILING STIPULATED ORDER GRANTING RELIEF FROM AUTOMATIC STAY**<br><br>**Re: Wells Fargo Equipment** |

Wells Fargo Vendor Financial Services, LLC and Wells Fargo Financial Leasing, Inc. (collectively, "**Wells Fargo**") hereby file this *Notice of Filing Stipulated Order Granting Relief from Automatic Stay* ("**Notice**"). Wells Fargo hereby provides notice of the *Stipulated Order Granting Relief from Automatic Stay* ("**Stipulated Order**"), attached hereto as **Exhibit 1**, between Wells Fargo and Bob Bondurant School of High Performance Driving, Inc. ("**Debtor**"), debtor-in-possession in the above-captioned Chapter 11 case, made with respect to certain phone and copier equipment detailed in the exhibits to the Stipulated Order (the "**Equipment**").

The Stipulated Order requests relief from the automatic stay of 11 U.S.C. § 362(a), to the fullest extent necessary to permit Wells Fargo to repossess and liquidate the Equipment. The Debtor is in the process of selling substantially all of its assets, not including the Equipment. Accordingly, the Equipment is burdensome or of inconsequential value and benefit to the estate.

A copy of the Stipulated Order is attached hereto and may also be obtained from the Clerk of the United States Bankruptcy Court at 230 N. 1st Ave., Phoenix, Arizona 85003, from the internet at www.azb.uscourts.gov, if a registered PACER user, or by contacting the office of Bryan Cave Leighton Paisner LLP, at Two North Central Avenue, Suite 2100, Phoenix, Arizona 85004-4406, telephone number (602) 364-700, attention Khaled Tarazi, or khaled.tarazi@bclplaw.com.

DATED this 20th day of March, 2019.

BRYAN CAVE LEIGHTON PAISNER LLP

By /s/ KT, #032446
Robert J. Miller
Khaled Tarazi
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Attorneys for Wells Fargo Vendor Financial
Services, LLC and Wells Fargo Financial
Leasing, Inc.

**E-FILED** on March 20, 2019 with the U.S. Bankruptcy
Court and copies served via CM/ECF notice on all parties
who have appeared in this case.

COPY mailed same date via U.S. Mail to:

OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Suite 204
Phoenix, Arizona 85003-1706

COPY emailed same date to:

Elizabeth C. Amorosi
OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Suite 204
Phoenix, Arizona 85003-1706
Elizabeth.C.Amorosi@usdoj.gov

Hilary L. Barnes
Philip J. Giles
ALLEN BARNES & JONES, PLC
1850 North Central Avenue, Suite 1150
Phoenix, Arizona 85004
hbarnes@allenbarneslaw.com
pgiles@allenbarneslaw.com
Attorneys for the Debtor

By /s/ Cathy Russell

# *EXHIBIT 1*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Bob Bondurant School of High Performance Driving, Inc.,<br><br>        Debtor. | Chapter 11<br><br>Case No. 2:18-bk-12041-BKM<br><br>**STIPULATED ORDER GRANTING RELIEF FROM AUTOMATIC STAY**<br><br>**Re: Wells Fargo Equipment** |
| Wells Fargo Vendor Financial Services, LLC and Wells Fargo Financial Leasing, Inc.,<br><br>        Movants,<br><br>    v.<br><br>Bob Bondurant School of High Performance Driving, Inc.,<br><br>        Respondent. | |

Bob Bondurant School of High Performance Driving, Inc. (the "**Debtor**"), debtor-in-possession in the above-captioned case, and Wells Fargo Vendor Financial Services, LLC and Wells Fargo Financial Leasing, Inc. (collectively, "**Wells Fargo**"), having agreed to the terms set forth herein and stipulated to entry of this Order, the Court having considered the stipulated terms, the *Notice of Filing Stipulated Order Granting Relief from Automatic Stay* (the "**Notice**") and the lack of objection thereto, the entire record before the Court, and after due deliberation thereon and sufficient cause appearing therefor, the Court hereby finds and concludes:

1. On October 2, 2018, the Debtor filed this case under Chapter 11 of the Bankruptcy Code.

2. The Debtor and Wells Fargo are parties to that certain Equipment Lease Agreement dated April 29, 2016 and that certain Image Management Agreement dated July 27, 2017 (collectively, the "**Agreements**") relating to certain phone and copier equipment as detailed therein (the "**Equipment**"). Copies of the Agreements and related documents are attached hereto as **Exhibit A**.

3. On March 7, 2019, the Debtor filed its *Motion to Approve Sale of Assets Free and Clear of Lien* [DE 179] (the "**Motion**"), as supplemented [DE 206], pursuant to which the Debtor proposes the sale of substantially all of its assets (the "**Sale**") to AZNY22, LLC, an Arizona limited liability company (the "**Stalking Horse**").

4. Pursuant to the Asset Purchase Agreement between the Debtor and the Stalking Horse [DE 206] (the "**APA**"), the Stalking Horse has specifically excluded from the Sale the Equipment and any contract or lease rights under the Agreements. See *Notice of Filing Exhibit B to Motion to Approve Sale of Assets Free and Clear of Liens* at DE 190.

5. The Sale to the Stalking Horse pursuant to the APA is subject to higher and better offers, which may include proposals to acquire the Equipment and assume and assign the Agreements, subject to Wells Fargo's consent and rights under the Bankruptcy Code. The Court has scheduled the Motion and an auction in connection with the Sale for hearing on March 22, 2019 (the "**Sale Hearing**").

6. Pursuant to the Motion and the APA, the Debtor seeks a waiver of the 14-day stay under Fed. R. Bankr. P. 6004(h) to close the Sale as soon as practicable after the Sale Hearing (the "**Closing**"). In the event the winning bid at the Sale Hearing does not include the Equipment and the Agreements, it is important that Wells Fargo be able to take possession of the Equipment prior to the Closing. Accordingly, the parties hereby stipulate to and request waiver of the 14-day stay under Fed. R. Bankr. P. 4001(a)(3).

7. Nothing herein precludes the Debtor from voluntarily turning over possession and

control of the Equipment to Wells Fargo prior to entry of this Order or the Closing, but Wells Fargo shall not complete any disposition of the Equipment until entry of this Order.

8. It is in the best interests of creditors and the Debtor's bankruptcy estate to approve this stipulation for relief from the automatic stay with respect to the Equipment because the Equipment is burdensome or of inconsequential value or benefit to the estate.

Based on the foregoing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

A. The automatic stay of 11 U.S.C. § 362(a) and all other bankruptcy stays and injunctions are hereby terminated with respect to the Equipment.

B. The 14-day stay under Fed. R. Bank. P. 4001(a)(3) is hereby waived.

C. At Wells Fargo's request, the Debtor shall cooperate with Wells Fargo to promptly turn over possession and control of the Equipment no later than the Closing or such other time as may be agreed to by the parties.

D. Nothing herein shall affect Wells Fargo's rights in connection with a proposed sale of the Equipment and/or assumption and assignment of the Agreements to the Stalking Horse or any other prospective buyer.

**SIGNED AND DATED ABOVE**

APPROVED AS TO FORM AND CONTENT:

| **ALLEN BARNES & JONES, PLC** | **BRYAN CAVE LEIGHTON PAISNER LLP** |
|---|---|
| */s/ PJG #30340* <br> Hilary L. Barnes <br> Philip J. Giles <br> 1850 N. Central Ave., Suite 1150 <br> Phoenix, AZ 85004 <br> Attorneys for Debtor | */s/ KT #032446* <br> Robert J. Miller <br> Khaled Tarazi <br> Two North Central Avenue, Suite 2100 <br> Phoenix, Arizona 85004-4406 <br> Attorneys for Wells Fargo Vendor Financial Services, LLC and Wells Fargo Financial Leasing, Inc. |

# *EXHIBIT A*



Equipment Lease Agreement No. ████1001

## EQUIPMENT

| Equipment Model & Description | Serial Number | Accessories |
|---|---|---|

☒ See attached schedule for additional Equipment/Accessories

Billing Address: P. O. BOX 51980, PHOENIX, AZ 850761980

Equipment Location: 20000 S MARICOPA RD, CHANDLER, AZ 852260000

### SUPPLIER

Name: DOCUMENT TECHNOLOGIES OF ARIZO

Address: 1350 W 23RD ST

City: TEMPE  State: AZ  Zip: 85282

### TRANSACTION TERMS

Purchase Option: $1.00     Lease Rate Factor: 0.019200

Lease Payment: $2063.00 (plus applicable taxes)

Term: 63 (months)   Billing Period: Monthly

The following additional payments are due on the date this Lease is signed by you:

Advance Payment: $0.00 (Plus Applicable Taxes)  Applied to: ☐ First ☐ Last

Document Fee: $75.00 (Included on first Invoice)

YOU HAVE SELECTED THE EQUIPMENT. THE SUPPLIER AND ITS REPRESENTATIVES ARE NOT OUR AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. YOU ARE AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND YOU WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF YOUR WARRANTY RIGHTS. WE MAKE NO WARRANTIES TO YOU, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY OR OTHERWISE. WE PROVIDE THE EQUIPMENT TO YOU AS-IS. YOU AGREE TO USE THE EQUIPMENT ONLY IN THE LAWFUL CONDUCT OF YOUR BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES. WE SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. WE MAKE NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE LEGAL, TAX OR ACCOUNTING TREATMENT OF THIS LEASE AND YOU ACKNOWLEDGE THAT WE ARE AN INDEPENDENT CONTRACTOR AND NOT A FIDUCIARY OF LESSEE. YOU WILL OBTAIN YOUR OWN LEGAL, TAX AND ACCOUNTING ADVICE RELATED TO THIS LEASE AND WILL MAKE YOUR OWN DETERMINATION OF THE PROPER LEASE TERM FOR ACCOUNTING PURPOSES.

YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER. BOTH PARTIES AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL. THIS LEASE SHALL BE GOVERNED BY THE LAWS OF IOWA. YOU CONSENT TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN IOWA.

TO HELP THE GOVERNMENT FIGHT THE FUNDING OF TERRORISM AND MONEY LAUNDERING ACTIVITIES, FEDERAL LAW REQUIRES ALL FINANCIAL INSTITUTIONS TO OBTAIN, VERIFY AND RECORD INFORMATION THAT IDENTIFIES EACH PERSON WHO OPENS AN ACCOUNT. WHAT THIS MEANS TO YOU: WHEN YOU OPEN AN ACCOUNT, WE WILL ASK FOR YOUR NAME, ADDRESS AND OTHER INFORMATION THAT WILL ALLOW US TO IDENTIFY YOU. WE MAY ALSO ASK TO SEE IDENTIFYING DOCUMENTS.

BY SIGNING THIS LEASE, YOU ACKNOWLEDGE RECEIPT OF PAGES 1 AND 2 OF THIS LEASE, AND AGREE TO THE TERMS AND CONDITIONS ON PAGES 1 AND 2. ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU AND US FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

### TERMS AND CONDITIONS

1. **COMMENCEMENT OF LEASE.** Commencement of this Lease and acceptance of the Equipment shall occur upon delivery of the Equipment to you ("Commencement Date"). To the extent that the Equipment includes intangible property or associated services such as periodic software licenses and prepaid database subscription rights, such intangible property shall be referred to as "Software". You understand and agree that we have no right, title or interest in the Software and you will comply throughout the Term of this Lease with any license and/or other agreement ("Software License") entered into with the supplier of the Software ("Software Supplier"). You are responsible for entering into any Software License with the Software Supplier no later than the Commencement Date of this Lease. You agree to inspect the Equipment upon delivery and verify by telephone or in writing such information as we may require. If you signed a purchase order or similar agreement for the purchase of the Equipment, by signing this Lease you assign to us all of your rights, but none of your obligations under it. All attachments, accessories, replacements, replacement parts, substitutions, additions and repairs to the Equipment shall form part of the Equipment under this Lease.

2. **LEASE PAYMENTS.** You agree to remit to us the Lease Payment and all other sums when due and payable each Billing Period at the address we provide to you from time to time. You agree that you will remit payments to us in the form of company checks (or personal checks in the case of sole proprietorships), direct debit or wires only. You also agree cash and cash equivalents are not acceptable forms of payment for this Lease and that you will not remit such forms of payment to us. Payment in any other form may delay processing or be returned to you. Furthermore, only you or your authorized agent as approved by us will remit payments to us. Lease Payments will include any freight, delivery, installation and other expenses we finance on your behalf at your request. Lease Payments are due whether or not you receive an invoice. You authorize us to adjust the Lease Payments by not more than 15% to reflect any reconfiguration of the Equipment or adjustments to reflect applicable sales taxes or the cost of the Equipment by the manufacturer and/or Supplier.

3. **LEASE CHARGES.** You agree to: (a) pay all costs and expenses associated with the use, maintenance, servicing, repair or replacement of the Equipment; (b) pay all fees, assessments, taxes and charges governmentally imposed upon Lessor's purchase, ownership, possession, leasing, renting, operation, control or use of the Equipment and pay all premiums and other costs of insuring the Equipment; (c) reimburse us for all costs and expenses incurred in enforcing this Lease; and (d) pay all other costs and expenses for which you are obligated under this Lease (the amounts set forth in clause (a) through (d) being collectively referred to as "Lease Charges"). For U.S. federal income tax purposes, the parties hereto agree that it is their mutual intention that you shall be considered the owner of the Equipment and we shall in no event be liable to you if you fail to secure any U.S. federal income tax benefits available to the owner of the Equipment. We may take on your behalf any action required under this Lease which you fail to take, and upon receipt of our invoice you will promptly pay our costs (including insurance premiums and other payments to affiliates), plus reasonable processing fees. Restrictive endorsements on checks you send to us will not reduce your obligations to us. We may charge you a return check or non-sufficient funds charge of $25 for any check which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

### LESSOR ("We", "Us")

WELLS FARGO VENDOR FINANCIAL SERVICES, LLC

By: X *April Waren*
— FAFF6F693B93440...  Warren, April

Name: CA

Title: _____   Date: 6/21/2016

### LESSEE ("You")

BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.

By: X *Jason Bondurant*   Vice President

Name: Jason Bondurant   Title: Vice President

Date: 4/29/16   Federal Tax ID: ████

4. **PAYMENT OF TAXES.** In addition to the Lease Payments under this Lease, you agree to pay all sales, use, excise, gross receipts and other taxes, charges and fees upon or with respect to the Equipment or the possession, ownership, use or operation, control or maintenance thereof and relating to this Lease, whether due before or after the end of the Term to the extent legally permissible. You also agree to file all required property tax returns and promptly pay all property taxes which may be assessed against the Equipment during the term of this Lease and, if we ask, provide us with proof of payment. You agree that if we are required by the applicable taxing jurisdiction to pay such taxes, you will promptly reimburse us for such tax payment.

5. **LATE CHARGES.** For any payment which is not received within three (3) days of its due date, you agree to pay a late charge equal to the higher of 5% of the amount due or $35 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

6. **OWNERSHIP, USE, MAINTENANCE AND REPAIR.** The parties agree that it is their mutual intention that you shall be considered the owner of the Equipment (other than Software) for various purposes, including federal income tax purposes, as of the Commencement Date, and you hereby grant to us and we reserve a security interest in the Equipment to secure all of your obligations under this Lease. We hereby assign to you all our rights under any manufacturer and/ or supplier warrantees, so long as you are not in default hereunder. You must keep the Equipment free of liens. You may not remove the Equipment from the address indicated on page 1 of this Lease without first obtaining our approval. You agree to: (a) keep the Equipment in your exclusive control and possession; (b) use the Equipment in conformity with all insurance requirements, manufacturer's instructions and manuals; (c) keep the Equipment repaired and maintained in good working order and as required by the manufacturer's warranty, certification and standard full service maintenance contract; and (d) give us reasonable access to inspect the Equipment and its maintenance and other records.

7. **INDEMNITY.** You are responsible for all losses, damages, claims, infringement claims, injuries and attorneys' fees and costs, including, without limitation, those incurred in connection with responding to subpoenas, third party or otherwise ("Claims"), incurred or asserted by any person, in any manner relating to the Equipment, including its use, condition or possession. You agree to defend and indemnify us against all Claims, although we reserve the right to control the defense and to select or approve defense counsel. This Indemnity continues beyond the termination of this Lease for acts or omissions which occurred during the Term of this Lease.

8. **LOSS OR DAMAGE.** If any item of Equipment is lost, stolen or damaged you will, at your option and cost, either: (a) repair the item or replace the item with a comparable item reasonably acceptable to us; or (b) pay us the sum of the following amounts (such sum hereinafter the "Casualty Value"): (i) all past due and current Lease Payments and Lease Charges; plus (ii) the present value of all remaining Lease Payments for the affected item(s) of Equipment, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher). Upon our receipt of the Casualty Value, we will release any security interest which we may have in the item(s) for which payment is made, and transfer to you all our right, title and interest in such affected item(s) AS-IS AND WHERE IS, WITHOUT ANY WARRANTY AS TO CONDITION, TITLE OR VALUE. Insurance proceeds shall be applied toward repair, replacement or payment hereunder, as applicable. No such loss or damage shall relieve you of your payment obligations under this Lease.

9. **INSURANCE.** You agree, at your cost, to: (a) keep the Equipment insured against all risks of physical loss or damage for its full replacement value, naming us as loss payees as our interests may appear, and (b) maintain public liability insurance, covering personal injury and Equipment damage for not less than $300,000 per occurrence, naming us as additional insured. The policy must be issued by an insurance carrier acceptable to us, must provide us with not less than 15 days' prior written notice of cancellation, non-renewal or amendment, and must provide deductible amounts acceptable to us.

10. **DEFAULT.** You will be in default under this Lease if: (a) you fail to remit to us any payment within ten (10) days of the due date or breach any other obligation under this Lease; (b) a petition is filed by or against you or any guarantor under any bankruptcy or insolvency law; or (c) you default under any other agreement with us.

11. **REMEDIES.** If you default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the sum of: (i) all past due and current Lease Payments and Lease Charges; and (ii) the present value of all remaining Lease Payments, discounted at the rate of 6% per annum (or the lowest rate permitted by law, whichever is higher); (b) declare any other agreements between us in default; (c) require you to return all of the Equipment in the manner outlined in Section 12, or take possession of the Equipment, in which case we shall not be held responsible for any losses directly or indirectly arising out of, or by reason of the presence and/or use of any and all proprietary information residing on or within the Equipment, and to lease or sell the Equipment or any portion thereof, and to apply the proceeds, less reasonable selling and administrative expenses, to the amounts due hereunder; (d) charge you interest on all amounts due us from the due date until paid at the rate of 1-1/2% per month, but in no event more than the lawful maximum rate; and (e) charge you for expenses incurred in connection with the enforcement of our remedies including, without limitation, repossession, repair and collection costs, attorneys' fees and court costs. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right.

12. **END OF TERM: RETURN OF EQUIPMENT.** If you are not in default, and all of your obligations under this Lease have been satisfied, including receipt by us of all monies due under this Lease, including but not limited to, the periodic scheduled payments, late charges, and reimbursement for property taxes (if applicable), we will release any security interest which we may have in the Equipment at the end of the Term. You shall have no obligation to provide any end-of-term notice to us, and this Lease shall not be renewed. If you are in default, you shall: (1) return all of the Equipment, freight and insurance prepaid at your cost and risk, to wherever we indicate in the continental United States, with all manuals and logs, in good order and condition (except for ordinary wear and tear from normal use), packed per the shipping company's specifications; and (2) securely remove all data from any and all disk drives or magnetic media prior to returning the Equipment (and you are solely responsible for selecting an appropriate removal standard that meets your business needs and complies with applicable laws). You will pay us for any loss in value resulting from the failure to maintain the Equipment in accordance with this Lease or for damages incurred in shipping and handling.

13. **ASSIGNMENT.** You may not assign or dispose of any rights or obligations under this Lease or sublease the Equipment without our prior written consent. We may, without notifying you: (a) assign all or any portion of this Lease or our interest in the Equipment; and (b) release information we have about you and this Lease to the manufacturer, Supplier or any prospective investor, participant or purchaser of this Lease. If we do make an assignment under subsection 13(a) above, our assignee will have all of our rights under this Lease, but none of our obligations. You agree not to assert against our assignee claims, offsets or defenses you may have against us.

14. **MISCELLANEOUS.** Notices must be in writing and will be deemed given five (5) days after mailing to your (or our) business address. You represent that: (a) you have authority to enter into this Lease and by so doing you will not violate any law or agreement; and (b) this Lease is signed by your authorized officer or agent. This Lease is the entire agreement between us, and cannot be modified except by another document signed by us. This Lease is binding on you and your successors and assigns. All financial information you have provided is true and a reasonable representation of your financial condition. You authorize us our agent or our assignee to: (a) obtain credit reports and make credit inquiries; (b) furnish your information, including credit application, payment history and account information to credit reporting agencies and our assignees, potential purchasers or investors and parties having an economic interest in this Lease or the Equipment, including, without limitation, the seller, Supplier or any manufacturer of the Equipment and (c) you irrevocably grant us the power to prepare, sign on your behalf (if applicable), and file, electronically or otherwise Uniform Commercial Code ("UCC") financing statements and any amendments thereto or continuation thereof relating to the Equipment, and containing any other information required by the applicable UCC. Any claim you have against us must be made within two (2) years after the event which caused it. If a court finds any provision of this Lease to be unenforceable, all other terms shall remain in effect and enforceable. You authorize us to insert or correct missing information on this Lease, including your proper legal name, serial numbers and any other information describing the Equipment. If you so request, and we permit the early termination of this Lease, you agree to pay a fee for such privilege. THE PARTIES INTEND THIS TO BE A "FINANCE LEASE" UNDER ARTICLE 2A OF THE UCC. YOU WAIVE ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A OF THE UCC. YOU FURTHER HEREBY ACKNOWLEDGE AND AGREE THAT WE AND/OR SUPPLIER MAY MAKE A PROFIT ON ANY AND ALL FEES REFERENCED HEREIN AND, IN SO DOING WAIVE ANY AND ALL CLAIM WHICH YOU MAY HAVE FOR UNJUST ENRICHMENT. We may receive compensation from the manufacturer and/or Supplier of the Equipment in order to enable us to reduce the cost of this Lease below what we otherwise would charge. If we received such compensation, the reduction in the cost of this Lease is reflected in the Lease Payment.

15. **TIME PRICE.** You understand that the Equipment may be purchased for cash (the "Equipment Cost") or purchased pursuant to this Lease for a Time Price equal to the Lease Payment times the number of Lease Payments, plus the Document Fee, plus the Purchase Option amount, all as set forth on page 1 of this Lease, and by executing this Lease you have chosen to purchase the Equipment for that Time Price.

16. **LEASE RATE FACTOR.** Each Lease Payment includes a part of our investment in the Equipment Cost and a return on our investment in this Lease. The total return on our investment (the total finance charge) is determined by multiplying the Lease Payment times the number of Lease Payments, then adding the Document Fee and the Purchase Option amount (all as set forth on page 1 of this Lease), then deducting the Equipment Cost (as determined above). The difference so determined is the return to us on our investment (the total finance charge). The rate of return (finance rate) may be determined by applying to the Equipment Cost, the rate that will amortize the Equipment Cost down to the Purchase Option amount by applying as payments, the Lease Payments and the Document Fee. For purposes of that amortization, each Lease Payment, including the Advance Payment, will be considered received on the date it is required to be paid under this Lease, and the Document Fee will be considered received on the date of this Lease.

17. **LIMITATIONS ON CHARGES.** This Section controls over every other part of this Lease and over all other documents now or later pertaining to this Lease. We both intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. Any part of this Lease or any other documents now or hereafter pertaining to the Lease that could, but for this Section, be read under any circumstances to allow for a charge higher than that allowable under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under this Lease to the maximum amount allowed under the legal limit. If in any circumstance, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally owed under this Lease, or refunded to you.

18. **ELECTRONIC TRANSMISSION OF DOCUMENTATION.** This Lease may be executed in counterparts. The executed counterpart which has our original signature and/or is in our possession shall constitute chattel paper as that term is defined in the UCC and shall constitute the original agreement for all purposes, including, without limitation: (i) any hearing, trial or proceeding with respect to this Lease; and (ii) any determination as to which version of this Lease constitutes the single true original item of chattel paper under the UCC. If you sign and transmit this Lease to us by facsimile or other electronic transmission, the transmitted copy shall be binding upon the parties. You agree that the facsimile or other similar electronic transmission of this Lease manually signed by us, when attached to the facsimile or other electronic copy signed by you, shall constitute the original agreement for all purposes. The parties further agree that, for purposes of executing this Lease, and subject to our prior approval and at our sole discretion: (a) a document signed and transmitted by facsimile or other electronic transmission shall be treated as an original document; (b) the signature of any party on such document shall be considered as an original signature; (c) the document transmitted shall have the same effect as a counterpart thereof containing original signature; and (d) at our request, you, who executed this Lease and transmitted its signature by facsimile or other electronic transmission shall provide the counterpart of this Lease containing your original manual signature to us. No party may raise as a defense to the enforcement of this Lease that a facsimile or other electronic transmission was used to transmit any signature of a party to this Lease.

DocuSign Envelope ID: 1B86E66C-56CC-49DE-BDC6-D43054F91D7F

THIS IS A COPY
This is a copy view of the Authorative Copy held
by the designated custodian



SCHEDULE "A"

Lease / Agreement # ▮

Equipment Description:

| Equipment MFG Model & Description | Serial Number | Accessories | Equipment Location Address |
|---|---|---|---|
| Phone System 32SC - PHONE SYSTEM ROUTERS & SWITCHES - WIRED | | Soft Console, Mobile App, Web App, Redundant Server, Handsets YeaLink T46G, Provision Software, Gateways, IP Conference Phone, 48 PORT POE Switch, PF Sense Firewall, Battery Back Up, SAN STORAGE DEVICE, Side Car | 20000 S Maricopa Rd, Chandler, AZ 852250000 |

BOB SONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.
LESSEE / CUSTOMER ("You")

By: X _____
Signature of Authorized Signer

Name: Jason Bondurant
Please Print

Title: Vice President

Date: 4/29/16
Date of Signature

# Certificate of Acceptance

Re: Agreement / Contract / Account Schedule Number ▓▓▓▓4001 ("Contract")
Financial Services Provider: **WELLS FARGO VENDOR FINANCIAL SERVICES, LLC** ("FS Provider")
Lessee/ Customer: **BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.** ("Customer")

This Certificate of Acceptance to the lease, loan or other form of financial services contract described above ("Contract") is by and between the FS Provider identified above and the Customer identified above.

Customer, through its authorized representative, hereby certifies to FS Provider and any assignee of FS Provider with respect to the Contract that:

1. The equipment ("Equipment") identified in the Contract, including in any equipment list attached to the Contract ("**Contract Equipment List**") has been delivered to the location where the Equipment will be used and which is the "Equipment location" identified in the Contract.

2. In the event of inconsistencies between the Contract Equipment List and the list of Equipment provided to FS Provider by the supplier of the Equipment, Customer authorizes FS Provider to correct the Contract Equipment List and substitute the Equipment identified in such corrected Contract Equipment List as the "Equipment" accepted under the Contract.

3. All of the Equipment has been inspected and is (a) complete, (b) properly installed, (c) fully functioning, and (d) in good working order.

4. The Equipment is of a capacity, size, design, and manufacture acceptable to Customer and is suitable for Customer's purposes.

5. Customer is not in default under the Contract and all of Customer's statements and promises set forth in the Contract are true and correct.

6. The Equipment is accepted for all purposes under the Contract as of the Acceptance Date below.

**IN WITNESS WHEREOF**, Customer's duly authorized representatives has executed this Acceptance Certificate as of the Acceptance Date.

Customer: BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.

By: _____
Title: Vice President
Acceptance Date: 4/29/16

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company    1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscinfo.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

115428944 - 334580
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

Filed In: Arizona
(S.O.S.)

**2016-001-5904-2**

**ARIZONA**
**SECRETARY OF STATE**
**05/02/16 23:21**
**F I L E D**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC. | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS P. O. BOX 51980 | CITY PHOENIX | STATE AZ | POSTAL CODE 85076 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | Wells Fargo Vendor Financial Services, LLC | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS PO Box 35701 | CITY Billings | STATE MT | POSTAL CODE 59107 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
All Equipment, described herein or otherwise, leased to or financed for the Debtor by Secured Party under that certain $1 Lease Agreement No. █████4-001 including all accessories, accessions, replacements, additions, substitutions, add-ons and upgrades thereto, and any proceeds therefrom.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box.
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: EFS - Indirect - Office Imaging - ██████

115428944

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Corporation Service Company

# Image Management Agreement



*Wells Fargo Financial Leasing, Inc. | 800 Walnut, 4th floor | Des Moines, Iowa 50309 | Phone: 800-247-5083*

| Customer Information: Customer's Full Legal Name ("You" and "Your"): MW<br>Bob Bondurant School of High Performance Driving, Inc. | Supplier Information: Supplier Name ("Supplier"):<br>Document Technologies of Arizona |
|---|---|
| Address:<br>20000 S. Maricopa Road | Address:<br>1350 W. 23rd Street |
| City/State/Zip Code:<br>Chandler, AZ 85226 | City/State/Zip Code:<br>Tempe, AZ 85282 |
| Telephone Number:<br>800-842-7223 | Federal Tax ID #: | County:<br>Maricopa |

**Equipment Information:**
☐ See Attached Equipment Schedule

Equipment Location (if different than address shown above):

| Quantity | Equipment Make, Model/Accessories | Serial Number | Starting Meter | "Service Only" |
|---|---|---|---|---|
| 1 | Kyocera 5052ci with feeder, paperdeck, saddle finisher, punch | | | ☐ |
| 1 | Kyocera 2552ci with feeder, fax unit, stand | | | ☐ |

| Term And Payment Information: Initial Term: 60 months | Payment*: $1,778.00 | (*plus applicable taxes) |
|---|---|---|
| Payment Period is "Monthly" unless otherwise noted here: | Security Deposit: $0 | Documentation/Processing Fee: $75.00 |

Advance Payment: $ _____ applied to: ☐ 1st Payment ☒ Last Payment ☐ 1st and Last Payments

| Payment Includes 3,000 | B&W copies per month | Overages billed Monthly | at $.01 | per B&W copy* |
| Payment Includes 4,000 | Color copies per month | Overages billed Monthly | at $.06 | per Color copy* |
| Payment Includes | B&W prints per month | Overages billed | at $ | per B&W print* |
| Payment Includes | Color prints per month | Overages billed | at $ | per Color print* |

You acknowledge and agree that this agreement (as amended from time to time, the "Agreement") represents the complete and exclusive agreement between You and Us regarding the subject matter herein and supersedes any other oral or written agreements between You and Us regarding such matters. This Agreement can be changed only by a written agreement between You and Us. Other agreements not stated herein (including, without limitation, those contained in any purchase order or service agreement between You and the Supplier) are not part of this Agreement. To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify and record information that identifies each person (individuals or businesses) who opens an account. What this means for You: When You open an account or add any additional service, We will ask You for Your name, address, federal employer identification number and other information that will allow Us to identify You. We may also ask to see other identifying documents.

1. **EQUIPMENT RENTAL.** You agree to rent from Us the personal property listed above (together with all existing and future accessories, attachments, replacements and embedded software, the "Equipment") upon the terms stated herein. This Agreement is binding on You as of the date You sign it. You agree that after You sign, We may insert or correct any information missing on this Agreement, including Your proper legal name, serial numbers and any other information describing the Equipment, and change the Payment by up to 15% due to a change in the Equipment or its cost or a tax or payment adjustment.

2. **EQUIPMENT SERVICE, SUPPLIES; UNCONDITIONAL OBLIGATION.** The Supplier has agreed to provide You with Equipment service during normal business hours and to provide You with all toner, developer and parts necessary for You to produce copies and prints, all of which are included in the Payment amount. However, You agree that: (a) You must separately purchase all other supplies, including, without limitation, copier paper, at Your own cost, and (b) You must separately purchase Equipment service outside the Supplier's normal business hours and any service, parts or supplies required by Your misuse of the Equipment or failure to follow the manufacturer's suggested use instructions. You agree that: (i) We are a separate and independent company from the Supplier, manufacturer and any other vendor (collectively, "Vendors"), and the Vendors are NOT Our agents; (ii) No representation or warranty by any Vendor is binding on Us, and no Vendor has authority to waive or alter any term of this Agreement; (iii) You, not We, selected the Equipment and the Vendors based on Your own judgment; (iv) Your obligations hereunder are absolute and unconditional and are not subject to cancellation, reduction or setoff for any reason whatsoever (including, without limitation, any Equipment failure or any Vendor's failure to provide You with any Equipment service, parts or supplies); (v) We are not responsible for providing You with Equipment service, parts or supplies, or for any other obligations that the Supplier owes to You (even though We may, as a convenience to You and the Supplier, bill and collect monies owed by You to the Supplier); and no breach by the Supplier will excuse You from performing Your obligations to Us hereunder; and (vi) If the Equipment is unsatisfactory or if any Vendor fails to provide any service or fulfill any other obligation to You, You shall not make any claim against Us and shall continue to fully perform under this Agreement. With respect to any equipment designated as "Service Only", You acknowledge and agree that: (i) We do not own such equipment, (ii) such equipment is not provided or rented to You pursuant to the terms of this Agreement, (iii) the Supplier has agreed to provide service and supplies for such equipment in accordance with the terms of this Section 2, and (iv) the portion of the Payment attributable to such "service only" equipment includes payment only for the service and supplies provided by the Supplier pursuant to this Section 2 and not for the use or rental of such equipment.

3. **PAYMENTS.** You agree to pay Us an interim rent charge as reasonably calculated by Us for the period from the date the Equipment is delivered to You until the Commencement Date. The payment for this interim period will be based on the Payment prorated on a 30 day calendar month and will be added to Your first invoice. Each Payment Period, You agree to pay Us, by the due date set forth on Our invoice to You: (i) the Payment, (ii) the applicable overage charges for each metered copy or print in excess of the applicable number of copies or prints included in the Payment, and (iii) applicable taxes and other charges provided for herein. You agree to pay the minimum Payment amount even if You do not make the applicable number of copies or prints in a given month. There are no "credits" that carry over from any Payment Period during which You make fewer than the applicable number of included copies or prints. You agree that We may increase the Payment and/or the applicable overage charges once each year during the Term, by an amount not to exceed 15% per year. At Our option, You will: (a) provide Us by telephone or facsimile with the actual meter readings when We so request; (b) allow Us to attach an automatic meter reading device to the Equipment, or (c) allow Us access to the Equipment to obtain meter readings or audit the meter reading device. If We request You to provide Us with meter readings and You fail to do so within 7 days of Our request, then (i) We may estimate the number of copies and prints made and invoice You accordingly, and (ii) We will adjust the estimated charge for overages upon receipt of actual meter readings. Restrictive endorsements on checks will not be binding on Us. All payments received will be applied to past due amounts and to the current amount due in such order as We determine. Any security deposit that You pay is non-interest bearing, may be commingled with Our funds, may be applied by Us at any time to cure any default by You, and the unused portion will be returned to You after You have satisfied all of Your obligations hereunder. If We do not receive a payment in full on or before its due date, You shall pay a fee equal to the greater of 10% of the amount that is late or $29.00 (or the maximum amount permitted by applicable law if less). You shall pay Us a returned check or non-sufficient funds charge of $20.00 for any returned or dishonored check or draft.

4. **TERM; AUTOMATIC RENEWAL.** The term of this Agreement will begin on the date that it is accepted by Us or any later date that We designate (the "Commencement Date") and will continue for the number of months shown above (the "Initial Term"). As used herein, "Term" means the term presently in effect at any time, whether it is the Initial Term or a Renewal Term (defined below). Unless You notify Us in writing at least 30 days before the end of the Term (the "Notice Period") that You intend to return the Equipment at the end of such Term, then: (a) this Agreement will automatically renew for an additional one-month period (a "Renewal Term") and (b) all terms of this Agreement will continue to apply. If You do notify Us in writing within the Notice Period that You intend to return the Equipment at the end of the Term, then You shall return the Equipment pursuant to Section 12. This Agreement is non-cancelable for the full Term.

5. **INDEMNIFICATION.** You shall indemnify and hold Us harmless from and against, any and all claims, actions, damages, liabilities, losses and costs (including but not limited to

*BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES RECEIPT OF PAGE 2 OF THIS AGREEMENT AND AGREES TO THE TERMS ON BOTH PAGES 1 & 2*

| Customer: (identified above) Bob Bondurant School of High Performance Driving, Inc. | Wells Fargo Financial Leasing, Inc. ("We," "Us," "Our" and "Owner") |
|---|---|
| By: [signature] Date: 7/17/17 | By: [signature] Date: 07/27/17 |
| Print name: Jason Bondurant Title: Vice President | Print name: Padma [illegible] Title: Authorized Signer |
| | Agreement Number: 9950 |

#2417737 v1 - OA MR IMA (10/02/13)   Page 1 of 2

Case 2:18-bk-12041-BKM   Doc 214   Filed 03/20/19   Entered 03/20/19 13:18:33   Desc
Main Document    Page 15 of 18

reasonable attorneys' fees) made against Us, or suffered or incurred by Us, arising directly or indirectly out of, or otherwise relating to, the delivery, installation, possession, ownership, use, loss of use, defect in or malfunction of the Equipment. This obligation shall survive the termination of this Agreement. We shall not be liable to You for any damages of any kind, including any liability for consequential damages, arising out of the use of or the inability to use the Equipment.

6. **NO WARRANTIES.** WE ARE PROVIDING THE EQUIPMENT TO YOU "AS IS". WE HAVE NOT MADE AND HEREBY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, ARISING BY APPLICABLE LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. The parties hereto agree that this Agreement is, or shall be treated as, a "finance lease" under Article 2A of the Uniform Commercial Code (the "UCC"). You hereby waive any and all rights and remedies conferred upon You by Article 2A of the UCC. If this Agreement is deemed to be a secured transaction, You hereby grant to Us a security interest in the Equipment and all proceeds thereof. You authorize Us to record UCC financing statements to protect Our interests in the Equipment. You may be entitled under Article 2A of the UCC to the promises and warranties (if any) provided to Us by the Supplier(s) in connection with or as part of the contract (if any) by which We acquire the Equipment, which warranty rights We assign to You for the Term (provided You are not in default). You acknowledge that You are aware of the name of the Supplier of each item of Equipment and You may contact the Supplier(s) for an accurate and complete statement of those promises and warranties (if any), including any disclaimers and limitations of them or of remedies.

7. **DELIVERY; LOCATION; OWNERSHIP; USE AND MAINTENANCE.** We are not responsible for delivery or installation of the Equipment. You are responsible for Equipment maintenance to the extent the Supplier does not provide the same. You will not remove the Equipment from the Equipment Location unless You first get Our permission. If the Equipment is moved to a new location, We may increase the Payment and/or "overage" charges by a reasonable amount in order to account for any increased costs to the Supplier in providing covered service, parts and supplies to You. You shall give Us reasonable access to the Equipment Location so that We may inspect the Equipment, and You agree to pay Our costs in connection therewith. We will own and have title to the Equipment (excluding any software) during the Agreement. If the Equipment includes any software: (i) We don't own the software, (ii) You are responsible for entering into any necessary software license agreements with the owners or licensors of such software, (iii) You shall comply with the terms of all such agreements, if any, and (iv) any default by You under any such agreements shall constitute a default by You under this Agreement. You agree that the Equipment is and shall remain personal property and without Our prior written consent, You shall not permit it to become (i) attached to real property or (ii) subject to liens or encumbrances of any kind. You represent that the Equipment will be used solely for commercial purposes, and not for personal, family, or household purposes. You will use the Equipment in accordance with all laws, operation manuals, service contracts (if any) and insurance requirements, and shall not make any permanent alterations to it. At Your own cost, You will keep the Equipment in good working order and warrantable condition, ordinary wear and tear excepted ("Good Condition").

8. **LOSS; DAMAGE; INSURANCE.** You shall, at all times during this Agreement, (i) bear the risk of loss and damage to the Equipment and shall continue performing all Your obligations to Us even if it becomes damaged or suffers a loss, (ii) keep the Equipment insured against all risks of damage and loss ("Property Insurance") in an amount equal to its replacement cost, with Us named as sole "loss payee" (with a lender's loss payable endorsement if required by Owner or its Assignee), and (iii) carry public liability insurance covering bodily injury and property damage ("Liability Insurance") in an amount acceptable to Us, with Us named as an additional insured thereunder. You have the choice of satisfying these insurance requirements by providing Us with satisfactory evidence of Property and Liability Insurance ("Insurance Proof"), within 30 days of the Commencement Date. Such Insurance Proof must provide for at least 30 days prior written notice to Us before it may be cancelled or terminated and must contain other terms satisfactory to Us. If you do not provide Us with Insurance Proof within 30 days of the Commencement Date, or if such insurance terminates for any reason, then (a) You agree that We have the right, but not the obligation, to obtain such Property Insurance and/or Liability Insurance in such forms and amounts from an insurer of Our choosing in order to protect Our interests ("Other Insurance"), and (b) You agree that We may charge you a periodic charge for such Other Insurance. This periodic charge will include reimbursement for premiums advanced by Us to purchase Other Insurance, billing and tracking fees, charges for Our processing and related fees associated with the Other Insurance, and a finance charge of up to 18% per annum (or the maximum rate allowed by law if less) on any advances We make for premiums (collectively, the "Insurance Charge"). We and/or one or more of our affiliates and/or agents may receive a portion of the Insurance Charge, which may include a profit. We are not obligated to obtain, and may cancel, Other Insurance at any time without notice to You. Any Other Insurance need not name You as an insured or protect Your interests. The Insurance Charge may be higher than if You obtained Property and Liability Insurance on Your own.

9. **ASSIGNMENT.** You shall not sell, transfer, assign or otherwise encumber (collectively, "Transfer") this Agreement, or Transfer or sublease any Equipment, in whole or in part, without Our prior written consent. We may, without notice to You, Transfer Our interests in the Equipment and/or this Agreement, in whole or in part, to a third party (an "Assignee"), in which case the Assignee will, to the extent of such Transfer, have all of Our rights and benefits but will not have to perform Our obligations (if any). Any Transfer by Us will not relieve Us of Our obligations hereunder. You agree not to assert against the Assignee any claim, defense or offset You may have against Us.

10. **TAXES AND OTHER FEES.** You are responsible for all taxes (including, without limitation, sales, use and personal property taxes, excluding only taxes based on Our income), assessments, license and registration fees and other governmental charges relating to this Agreement or the Equipment (collectively "Governmental Charges"). Sales or use taxes due upfront will be payable over the Initial Term, with a finance charge. You authorize Us to pay any Governmental Charges as they become due, and You agree to reimburse Us promptly upon demand for the full amount. You agree to pay Us a fee for Our administration of taxes related to the Equipment. You also agree to pay Us upon demand (i) for all costs of filing, amending and releasing UCC financing statements, and (ii) a documentation/processing fee in the amount set forth on Page 1 (or as otherwise agreed to). You also agree to pay Us a fee for additional services We may provide to You at Your request during this Agreement. You acknowledge that We may, (on behalf of the Supplier), bill You for any supply, freight fee that the Supplier charges for shipping supplies to You. If You so request and We permit the early termination of this Agreement, You acknowledge that there may be a cost or charge to You for such privilege. You agree that the fees and other amounts payable under this Agreement may include a profit to Us and/or the Supplier.

11. **DEFAULT; REMEDIES.** You will be in default hereunder if (i) You fail to pay any amount due hereunder within 15 days of the due date, (2) You breach or attempt to breach any other term, representation or covenant herein or in any other agreement now existing or hereafter entered into with Us or any Assignee, (3) an event of default occurs under any obligation You may now or hereafter owe to any affiliate of Us or any Assignee, and/or (4) You: and/or any guarantors or sureties of Your obligations hereunder (i) die, (ii) go out of business, (iii) commence dissolution proceedings, (iv) merge or consolidate into another entity, (v) sell all or substantially all of Your or their assets, or there is a change of control with respect to Your or their ownership, (vi) become insolvent, admit Your or their inability to pay Your or their debts, (vii) make an assignment for the benefit of Your or their creditors (or enter into a similar arrangement), (viii) file, or there is filed against You or them, a bankruptcy, reorganization or similar proceeding or a proceeding for the appointment of a receiver, trustee or liquidator, or (ix) suffer an adverse change in Your or their financial condition. If You default, We may do any or all of the following: (A) cancel this Agreement, (B) require You to promptly return the Equipment pursuant to Section 12, (C) take possession of and/or render the Equipment (including any software) unusable (and for such purposes You hereby authorize Us and Our designees to enter Your premises, with or without prior notice or other process of law), and sell, lease or otherwise dispose of the Equipment on such terms and in such manner as We may in Our sole discretion determine, (D) require You to pay to Us, on demand, liquidated damages in an amount equal to the sum of (i) all Payments and other amounts then due and past due, (ii) all remaining Payments for the remainder of the Term discounted at a rate of 6% per annum, (iii) the residual value of the Equipment estimated by Us at the inception of this Agreement (as shown in Our books and records), discounted at a rate of 6% per annum, (iv) interest on the amounts specified in clauses "i", "ii" and "iii" above from the date of demand to the date paid at the rate of 1.5% per month (or the maximum amount permitted by law if less), and (v) all other amounts that may thereafter become due hereunder to the extent that We will be obligated to collect and pay any such amounts to a third party (such amounts specified in sub-clauses "i" through "v" referred to below as the "Balance Due"), and/or (E) exercise any other remedy available to Us under law. You also agree to reimburse Us on demand for all reasonable expenses of enforcement (including, without limitation, reasonable attorneys' fees and other legal costs) and reasonable expenses of repossession, holding, preparing for disposition, and disposition ("Remarketing") of the Equipment plus interest at the rate in sub-clause (iv) on the foregoing amounts from the date of demand to the date paid. In the event We are successful in Remarketing the Equipment, We shall give You a credit against the Balance Due in an amount equal to the present value of the proceeds received and to be received from Remarketing minus the above-mentioned costs (the "Net Proceeds"). If the Net Proceeds are less than the Balance Due, You shall be liable for such deficiency. Any delay or failure to enforce Our rights hereunder shall not constitute a waiver thereof. The remedies set forth herein are cumulative and may be exercised concurrently or separately.

12. **RETURN OF EQUIPMENT.** If You are required to return the Equipment under this Agreement, You shall, at Your expense, send the Equipment to any location(s) that We may designate and pay Us a handling fee of $250.00. The Equipment must be properly packed for shipment, freight prepaid and fully insured, and must be received in Good Condition (defined in Section 7). All terms of this Agreement, including Your obligation to make Payments and pay all other amounts due hereunder shall continue to apply until the Equipment is received by Us in accordance with the terms of this Agreement. You are solely responsible for removing all data from any digital storage device, hard drive or other electronic medium prior to returning the Equipment or otherwise removing or allowing the removal of the Equipment from Your premises for any reason (and You are solely responsible for selecting an appropriate removal standard that meets Your business needs and complies with applicable laws). We shall not be liable for any losses, directly or indirectly arising out of, or by reason of the presence and/or use of any information, images or content retained by or resident in any Equipment returned to Us or repossessed by Us.

13. **APPLICABLE LAW; VENUE; JURISDICTION; SEVERABILITY.** This Agreement shall be deemed fully executed and performed in the state of Iowa and shall be governed and construed in accordance with the laws of the state of Iowa. If Owner or its Assignee shall bring any judicial proceeding in relation to any matter arising under this Agreement, You hereby irrevocably agree that any such matter may be adjudged or determined in any court or courts in the state of Iowa or the state of Owner's or its Assignee's principal place of business, or in any other court or courts having jurisdiction over You or Your assets, all at the sole election of Owner or its Assignee. You hereby irrevocably submit generally and unconditionally to the jurisdiction of any such court so elected by Owner or its Assignee in relation to such matters and irrevocably waive any defense of an inconvenient forum to the maintenance of any such action or proceeding. YOU AND WE HEREBY WAIVE YOUR AND OUR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY LEGAL ACTION. If any amount charged or collected under this Agreement is greater than that allowed by law (an "Excess Amount"); then (i) any Excess Amount charged but not yet paid will be waived by Us and (ii) any Excess Amount collected will be refunded to You or applied to any other amount then due hereunder. Each provision hereof shall be interpreted to the maximum extent possible to be enforceable under applicable law. If any provision is construed to be unenforceable, such provision shall be ineffective only to the extent of such unenforceability without invalidating the remainder hereof.

14. **MISCELLANEOUS.** You shall furnish Us or an Assignee with current financial statements upon request by Us or an Assignee. You authorize Us or an Assignee to (a) obtain credit reports or make credit inquiries in connection with this Agreement, and (b) provide Your credit application, information regarding Your account to credit reporting agencies, potential Assignees, Vendors and parties having an economic interest in this Agreement and/or the Equipment. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same document; provided, however, only the counterpart which is marked "Original" and is in Our possession shall constitute chattel paper under the UCC. You acknowledge that You have received a copy of this Agreement and agree that a facsimile or other copy containing Your faxed, copied or electronically transmitted signature may be treated as an original and will be admissible as evidence of this Agreement. You waive notice of receipt of a copy of this Agreement with Our original signature. You hereby represent to Us that this Agreement is legally binding and enforceable against You in accordance with its terms.

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional):** Corporation Service Company 1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional):** SPRFiling@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

1342 72001
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Arizona (S.O.S.)

2017-002-8188-2

**ARIZONA SECRETARY OF STATE**
**07/28/17 08:12**
**FILED**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:**

1a. ORGANIZATION'S NAME: BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.

1c. MAILING ADDRESS: 20000 S. MARICOPA ROAD | CITY: CHANDLER | STATE: AZ | POSTAL CODE: 85226 | COUNTRY: USA

**2. DEBTOR'S NAME:**

(blank)

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):

3a. ORGANIZATION'S NAME: Wells Fargo Financial Leasing, Inc.

3c. MAILING ADDRESS: 800 Walnut Street, MAC N0005-044 | CITY: Des Moines | STATE: IA | POSTAL CODE: 50309 | COUNTRY: USA

**4. COLLATERAL:**

Lessee: BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.

Lessor: Wells Fargo Financial Leasing, Inc.

This UCC-1 Financing Statement covers all of Lessee's right, title and interest in and to the following:

Quantity    Description of Goods    Serial Numbers (if known)

(1) Kyocera 5052ci SN W2H6Z02565
(1) Kyocera 2552ci SN VFJ7300695

and all existing and future accessions, accessories, attachments, replacements, replacement parts, additions,

**8. OPTIONAL FILER REFERENCE DATA:** 9950

1342 72001

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
**BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.**

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
TRANSACTION, THEN IN ACCORDANCE WITH THE CONTRACT, LESSEE SHALL BE DEEMED TO HAVE GRANTED TO LESSOR A FIRST PRIORITY SECURITY INTEREST IN THE GOODS AND THIS FILING SHALL HAVE THE EFFECT OF PERFECTING SUCH SECURITY INTEREST.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd. Ste. 400
Wilmington, DE 19808

2017-002-8188-2