Warren J. Stapleton, 018646
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
E-mail: wstapleton@omlaw.com
Attorneys for Sun Valley Marina Development Corporation

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| In re: | Chapter 11 |
|---|---|
| BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC. | No. 2:18-bk-12041-BKM |
| Debtor. | **SUN VALLEY MARINA DEVELOPMENT CORPORATION'S LIMITED OBJECTION TO THE DEBTOR'S MOTION TO APPROVE SALE OF ASSETS FREE AND CLEAR OF LIENS** |

Sun Valley Marina Development Corporation ("Sun Valley"), a tribal corporation chartered by the Gila River Indian Community ("GRIC"), is the landlord for the Bob Bondurant School of High Performance Driving, Inc. ("Bondurant" or the "Debtor"). Sun Valley files this limited objection to Bondurant's expedited motion for sale of its assets (the "Sale Motion"). Dkt #179. While Sun Valley supports the Sale Motion in most aspects, the Motion does not provide enough detail to fully evaluate whether the stalking horse bidder's proposal is in the best interests of the estate's creditors. Additionally, Sun Valley writes separately to address issues unique to its position if the winning bidder intends to remain as a tenant on the leased property.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I. Introduction.**

Sun Valley leases non-residential real property located at 20000 S. Maricopa Road, Gate 3, Chandler, Arizona 85226 (the "Property") to Bondurant pursuant to that certain

sublease dated March 1, 2017 (the "Lease"). A copy of the Lease is attached as Exhibit A to Sun Valley's Motion to Compel Payment of Rent, Dkt # 118, #s118-1 to 118-4. As set forth in the Lease, Sun Valley rents the property from GRIC pursuant to that certain Master Lease, Lease No. B-GR-71, dated March 4, 1974.[1] *See* Exh. A, p. 4. The Lease commenced on March 1, 2017 and expires on March 1, 2029. See Exh. A, § 3, p. 6.

Bondurant is currently occupying and in possession of the Property and uses the Property in connection with its driving school, automotive, and racing business operations. As set forth in the Lease, Bondurant rents Parcel A, the West Track, and the Carousel/Looper (as those terms are defined in the Lease) for a monthly payment of $61,351 per month due in advance on the first day of each month. See Exh. A, § 5.1, pp. 8-9.

Bondurant filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on October 2, 2018 (the "Petition Date"). Although Bondurant made the "stub" rent payment for October 2018, Bondurant did not pay its November rent (as it had indicated it would in connection with its cash collateral budget). *See* Dkt #14, p. 11 (the budget). In addition, Bondurant missed the December 1, 2018 payment, the January 1, 2019 payment, and the February 1, 2019 payment – although it did, pursuant to stipulation, make the March 1, 2019 rent payment. Thus, Bondurant remains four months behind on rent.

The total amount now due and owing for post-petition rent is $245,402.56. This is plainly an administrative claim. And, as Sun Valley noted in its motion to compel payment of rent, numerous courts have suggested administrative rent has priority over other Section 503(b) administrative claims. *See, e.g., In re Worth Stores Corp.*, 135 B.R. 112 (Bankr. E.D. Mo. 1991); *In re Telesphere Communications*, 148 B.R. 525 (Bankr. N.D. Ill. 1992); *In re Rare Coin Galleries of Am., Inc.*, 72 B.R. 415, 416 (Bankr. Mass.

---

[1] As noted at the bidding procedures hearing, the sublease between Sun Valley and GRIC ended on February 28, 2019, so the GRIC is effectively Bondurant's lessor as of March 1, 2019. Sun Valley is currently authorized by GRIC to negotiate the new lease terms and seek final approval of an amended (or new) lease before the GRIC Council.

1987). Moreover, and as set forth below, Sun Valley has a landlord's lien on the personal property assets that are being sold by Bondurant. According to Bondurant's schedules, there are over $1,000,000 in personal property assets, *see* Dkt #47, pp. 5-7 of 108; more than enough to support Chase's lien and Sun Valley's landlord's lien. The distribution of the sale proceeds must account for these lien rights.

In addition to Sun Valley's administrative rent, the Debtor's January monthly operating report showed more than $300,000 of other administrative expenses. *See* Dkt # 164. Thus, the $300,000 offer from the stalking horse may do little more than pay Chase Bank and partially pay Sun Valley's lien claims.[2] Such a result would likely not be acceptable to Sun Valley.

Happily, it appears that there is enough interest in Bondurant's assets to make it likely that the sale auction process will result in a better return for creditors. Sun Valley and its counsel have met with no fewer than six seriously interested bidders (including the stalking horse) and have attempted to flesh out the terms of potential future lease arrangements with them. The terms proposed by various bidders vary according to their needs, their vision for the business going forward, and the amount of capital that they intend to put into the new business. Not surprisingly, given the complexity of the lease and the numerous moving pieces involved, no party has yet reached the point where Sun Valley can assuredly say that it "pre-approves" any particular bidder. But much work has been done and Sun Valley remains committed to finishing the process with the winning bidder.

**II. Sun Valley's Landlord's Lien Should Attach to the Proceeds.**

Sun Valley reminds the Court and the parties that it has a landlord's lien over the personal property located on the leased realty. *See* A.R.S. § 33-362. That lien predates Chase Bank's 2011 lien (Bondurant has been leasing the premises since 1993, although

---

[2] As the Court is aware, in addition to Chase's lien and Sun Valley's lien, there is also a $50,000 super-priority administrative claim ahead of administrative expense creditors (for AZNY22, LLC's termination fee – if it is not the high bidder).

the current version of the lease dates from March 2017).³ Even assuming Chase Bank's lien had priority, Bondurant's schedules show over $170,000 in (non-vehicle) inventory, $632,618.53 in furniture, fixtures, and computers, $262,916.72 in shop assets, $180,249.99 in machinery, and $58,244.50 in photo and video equipment. *See* Dkt #47, pp. 5-7 of 108 (as electronically numbered). This is more than enough to secure Sun Valley's $245,402.56 administrative rent claim and its pre-petition claim for back rent. *See* 11 U.S.C. § 363(p)(2).

In addition, Sun Valley has a property interest in all property affixed to the realty. Sun Valley reserves all rights with respect to fixtures and its landlord's lien and consents to the sale so long as its landlord's lien attaches to the proceeds of the sale in accordance with Section 363.

### III.  Limited Objection.

As counsel for Sun Valley noted at the hearing on the bidding procedures, no bidder has proposed simply assuming the lease in its entirety and paying all outstanding amounts due under the lease. Thus, as a practical matter, to the extent that a winning bidder desires to utilize the leased premises currently occupied by Bondurant, it must have Sun Valley (and GRIC's) permission. In other words, there will be no assumption and "cure" of the lease without Sun Valley's consent. Unfortunately, Sun Valley's Board cannot approve a lease – or amended lease terms – in the minutes that will be available during the bidding process. For that reason, Sun Valley anticipates asking the Court to have a post-auction hearing where it will notify the Court that Sun Valley and the winning

---

³ The landlord's lien attaches at the commencement of the lease or when the personal property is brought on the leased premises and exists independently of the institution of any proceeding. *Dewar v. Hagans*, 61 Ariz. 201, 205, 146 P.2d 208, 209 (1944); *U. S. (Treasury Dep't, Internal Revenue Serv.) v. Globe Corp.*, 113 Ariz. 44, 47, 546 P.2d 11, 14 (1976). However, the landlord's lien does not take priority over a creditor who obtained a security interest in collateral prior to the time the collateral is brought on the premises, even where the lease pre-existed the loan by the secured creditor. *Ex-Cell-O Corp. v. Lincor Properties of Arizona*, 158 Ariz. 307, 309, 762 P.2d 594, 596 (App. 1988); *Schatt–Ajax Industries v. Churchill*, 3 Ariz. App. 34, 411 P.2d 457 (1966) (landlord's lien is subordinate to creditor's interest under conditional sales contract).

bidder have (or have not) signed a new lease. Sun Valley respectfully requests that such a hearing be approximately two weeks after the sale hearing.

In addition, and as noted at the bidding procedures hearing, the approval of the lease also requires approval by GRIC's governing Council. That process is anticipated to take approximately 30 days. Upon GRIC's approval of the lease, Sun Valley should receive payment of its landlord's lien/administrative rent claim – or its pro rata share of these claims – as the case may be.

Finally, Sun Valley's management (and in-house counsel) will be present at the sale hearing to assist in prompt evaluation of the various bids and to answer questions regarding the "value" of the bids as they relate to Sun Valley (e.g., if the Court's bid evaluation includes the payment of future rent as an attribute of the price to be paid by the winning bidder). Sun Valley will take a formal position on whether it supports or opposes a particular bid once the parameters of each bid are presented to the Court.

### IV. Conclusion.

In light of the foregoing, Sun Valley respectfully requests that the Court only approve the Sale Motion if the winning bidder's sale price is substantial enough to significantly benefit creditors of the estate. As noted above, Sun Valley's landlord's lien should attach to the proceeds (even if the Court determines its lien is junior to Chase's lien). To the extent that the winning bidder intends to utilize the leased premises going forward, Sun Valley requests that the Court allow the winning bidder and Sun Valley at least two weeks to finalize the amended (or new) lease and 30 days for GRIC's Council to approve the amended (or new) lease. Upon GRIC's approval of the lease, the Debtor shall be authorized to pay Sun Valley's administrative claim and any other amounts needed to obtain authority to assume the lease. Sun Valley respectfully requests any further relief that the Court deems appropriate.

DATED this 21st day of March, 2019.

OSBORN MALEDON, P.A.

By  /s/ Warren J. Stapleton
    Warren J. Stapleton
    2929 North Central Avenue
    21st Floor
    Phoenix, Arizona 85012-2793
    Attorneys for Sun Marina Development
    Corporation

COPY of the foregoing sent via email and/or
U.S. Mail this 21st day of March, 2019.

| | |
|---|---|
| Hillary L. Barnes<br>Philip J. Giles<br>Allen Barnes & Jones, PLC<br>1850 N. Central Ave., Ste. 1150<br>Phoenix, AZ 85004<br>hbarnes@allenbarneslaw.com<br>pgiles@allenbarneslaw.com<br>*Attorney for Debtor* | Elizabeth C. Amorosi<br>Office of the U.S. Trustee<br>230 N First Ave Ste 204<br>Phoenix AZ 85003-1706<br>Elizabeth.C.Amorosi@usdoj.gov |
| Michelle E. Shriro<br>Singer & Levick, P.C.<br>16200 Addison Rd Ste 140<br>Addison TX 75001<br>mshriro@singerlevick.com<br>*Attorneys for Moses Smith Racing LLC* | Thomas E. Littler<br>Littler, PC<br>341 W Secretariat Dr<br>Phoenix AZ 85284<br>telittler@gmail.com<br>*Attorneys for Semple Marchal Cooper PLC* |
| Christopher C. Simpson<br>Stinson Leonard Street LLP<br>1850 N Central Ave Ste 2100<br>Phoenix AZ 85004<br>christopher.simpson@stinson.com<br>*Attorneys for FCA US LLC* | Sheryl L. Toby<br>Dykema Gossett PLLC<br>39577 Woodward Ave Ste 300<br>Bloomfield Hills MI 48304<br>stoby@dykema.com<br>*Attorneys for FCA US LLC* |
| James E. Cross<br>The Cross Law Firm, PLC<br>1850 N Central Ave Ste 1150<br>Phoenix AZ 85004<br>jcross@crosslawaz.com | Christopher R. Kaup<br>Tiffany & Bosco P.A.<br>2525 E Camelback Rd 7th Floor<br>Phoenix AZ 85016-4237<br>crk@tblaw.com |

| | |
|---|---|
| *Attorneys for Arlington Street Investments* | *Attorneys for Patricia and Robert Bondurant* |
| Leslie A. Berkoff<br>Moritt Hock & Hamroff LLP<br>400 Garden City Plaza<br>Garden City NY 11530<br>lberkoff@moritthock.com | Larry O. Folks<br>Folks Hess Kass, PLLC<br>1850 N Central Ave Ste 1140<br>Phoenix AZ 85004<br>folks@folkshesskass.com |
| *Attorneys for Unifi Equipment Finance* | *Attorneys for JP Morgan Chase Bank NA* |
| Jared G. Parker<br>Parker Schwartz PLLC<br>7310 N 16th St Ste 330<br>Phoenix AZ 85020<br>jparker@psazlaw.com | Scott Cohen<br>Patrick A. Clisham<br>Engelman Berger, P.C.<br>3636 N Central Ave Ste 700<br>Phoenix AZ 85012<br>sbc@eblayers.com<br>pac@eblawyers.com |
| *Attorneys for Goodyear Tire & Rubber Co.* | *Attorneys for Moses Smith Racing, LLC* |
| Mark Giunta<br>Liz Nguyen<br>Law Office of Mark J. Giunta<br>531 E Thomas Rd Ste 200<br>Phoenix AZ 85012<br>markgiunta@giuntalaw.com<br>liz@giuntalaw.com | Robert J. Miller<br>Khaled Tarazi<br>Bryan Cave Leighton Paisner LLP<br>Two N Central Ave Ste 2100<br>Phoenix AZ 85004-4406<br>rjmiller@bclplaw.com<br>khaled.tarazi@bclplaw.com |
| *Attorneys for Bancorp Bank* | *Attorneys for Wells Fargo Vendor Financial Services, LLC and Wells Fargo Financial Leasing, Inc.* |
| Benjamin Court<br>Stinson Leonard Street LLP<br>50 S Sixth St #2600<br>Minneapolis MN 55402<br>Benjamin.court@stinson.com | |
| *Attorneys for Stig Investments, Inc.* | |

/s/ Peggy L. Nieto
7989628