James E. Cross, Bar No. 009063
**THE CROSS LAW FIRM, P.L.C.**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ph: (602) 412-4422
Fax: (602) 252-4712
Email: jcross@crosslawaz.com
Attorney for Very Fast Enterprises, LLC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>BOB BONDURANT SCHOOL OF HIGH PERFORMANCE DRIVING, INC.,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:18-bk-12041-BKM<br><br>**JOINDER IN OBJECTION OF BONDURANT AND SUN VALLEY AND CONDITIONAL OBJECTION TO ORDER APPROVING BID PROCEDURES FOR SALE OF ASSETS AND SALE OF ASSETS**<br><br>**Sale Date: March 22, 2019**<br>**Hearing Time: 10:00 a.m.**<br>**Courtroom No. 701** |

Very Fast Enterprises, LLC, as successor-in-interest to Arlington Street Investments ("VFE"), a party in interest and Qualified Bidder who has submitted an Asset Purchase Agreement and Earnest Money Deposit to the Debtor-in-Possession, by and through undersigned counsel, respectfully submits its Joinder in the Sale Objections of Robert and Patricia Bondurant [Dkt. #220] and Sun Valley Marina Development Corporation [Dkt. #221] as well as VFE's Conditional Objection to Order Approving Bid Procedures for Sale of Assets [Dkt. #207] (the "Bid Procedures Order") and Sale of Assets scheduled for March 22, 2019, at 10:00 a.m.[1] In support of this Joinder and Conditional Objection, VFE respectfully states as follows:

---

[1] While there had been a notice stating that any objections to the sale had to be filed by noon today, it was not until the Bondurant and Sun Valley objections were filed that VFE found it necessary to join in and state its own concerns regarding the sale process.

## I. FACTUAL BACKGROUND.

1. On October 2, 2019, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

2. No trustee or examiner has been appointed in these bankruptcy cases, nor has an official committee of unsecured creditors been established. However, a Chief Restructuring Officer, Mr. Timothy Shaffer, has been authorized by this Court to operate the Debtor's and Debtor-in-Possession's business as CRO while in Chapter 11.

3. The general background relevant to the Debtor is stated in the Debtor's Sale Motion. For the past three months, VFE's members have been involved in attempting to negotiate both a Debtor-in-Possession Loan as well as a proposed Asset Purchase Agreement.

4. VFE has transacted its business negotiations with Mr. Shaffer and the Debtor-in-Possession in good faith.

5. VFE submitted an Asset Purchase Agreement and Earnest Money Deposit to counsel for the Debtor on Monday, March 18, 2019. VFE has been designated as a Qualified Bidder.

## II. CONDITIONAL OBJECTIONS TO THE BID PROCEDURES ORDER AND SALE MOTION

### a. The Sale Process Has Not Been Transparent and is Not Fair or Equitable to All Bidders.

The Bid Procedures Order requires bidders to go through a "qualification process" in order to become a Qualified Bidder, but nowhere does it require the Debtor to disclose the due diligence Debtor conducted on potential bidders or what information other Qualified Bidders provided to become qualified. The Debtor asked VFE to provide specific financial information in order to prove it had the funds to bid at the Sale. However, when Debtor was asked if the other bidders have submitted the same financial information, no information was provided. This process for "qualifying bidders" has not been transparent, fair, or equitable to all bidders.

The Debtor's financials and claimed assets have been a moving target since VFE became involved in this case. It is the sole reason VFE's predecessor, Arlington Street Investors, withdrew from providing DIP financing or an original Letter of Intent to purchase the assets currently for sale.

### b. The Bid Procedures Order Provides Far Too Much Discretion to the Debtor and CRO and Fails to Adequately Describe the Assets Being Sold.

The Bid Procedures Order invests the "sole and exclusive right to negotiate any bid or offer for the purchase" of the Debtor's assets to the CRO, Timothy Shaffer. This places far too much discretion in the CRO to determine what constitutes the highest and best bid,

without any reliable guidelines for bidders to determine how this process is supposed to work.

When seeking approval of a transaction pursuant to section 363(b) of the Bankruptcy Code, a debtor must consider its fiduciary duties to all creditors and interest holders for the court to approve the proposed sale. In addition, the bankruptcy court must conclude, from the evidence, that the movant satisfied its fiduciary obligations and established a valid business justification to conduct the sale outside of a plan. The court should also consider whether the fiduciaries that control the debtor are truly disinterested with regard to the sale – if the fiduciaries that control the debtor's decisions in connection with the sale will directly benefit from the sale, then the court must carefully consider whether it is appropriate to defer to their business judgment. Again, without impugning the integrity of the professionals who have worked hard and long to get to this point, it is still disconcerting to have so many issues regarding ownership of the assets to be sold in limbo on the day before a Section 363 sale.

Much has been made of the legacy standing of this business; and that is precisely how this sale was marketed by the Debtor. The fact that Debtor's equity holders were not in agreement with this process and that the "legacy owners" did not make their disagreement with the Debtor known until the day before the 363 sale is simply incredulous. The Debtor has claimed to be selling certain "museum cars." Based upon the Bondurant objection, how can the estate sell assets it does not own over the objection of the alleged owner? This will have to be sorted out prior to any sale taking place.

The Section 363 sale process is supposed to provide clarity. This sale process places too much discretion in the Debtor and not this Court. With all due respect to Mr. Shaffer, the process and manner by which he determines which bidder ultimately submits the highest and best bid needs to be well established and understandable by comparison prior to any auction sale. For example, is a bid that involves a payment of $400,000 in cash, but requires the estate to deliver the disputed Bondurant IP and "museum cars" better than a $300,000 cash bid that does not encompass such assets?

**c.      The Secured Creditors Objections Require the Debtor to Prove Administrative Solvency of the Estate.**

Based upon pleadings filed by Sun Valley Marina Development Corporation and JPMorgan Chase Bank, N.A. (the "Secured Creditors") in their limited objections to this Sale and the monthly operating reports filed by the Debtor, the estate may become administratively insolvent by virtue of the Sale. Despite repeated requests by VFE, there has been no representation or evidence provided to the court that this sale shall provide any distribution to unsecured creditors. Thus, assuming the Sale closes, the Debtor should have to provide proof that it has the necessary funding to pay post-closing administrative expenses. Of course, a Chapter 11 case will not end upon the closing of the Sale and provisions must be made for an orderly wind-up.[2]

This Court should not allow the Chapter 11 process to be used to liquidate collateral for the sole benefit of secured creditors. See *In re Encore Healthcare Assocs.*, 312 B.R. 52, 54, 56, 58 (Bankr. E.D. Pa. 2004) (denying bidding procedures motion because court

---

[2] Indeed, since no claims bar date has been established, it is impossible to determine at this point the ultimate post-petition liability.

would not approve the sale, "the sole purpose of which was to liquidate assets for the benefit of the secured creditor," and which would render the estate administratively insolvent, noting that an "asset sale can easily be accomplished outside of bankruptcy either with the consent of the secured creditor or by abandoning the asset to the secured creditor to sell on its own"). Why are parties not allowed to know, at the very least, if the Debtors' estate is administratively solvent? Accordingly, if there is an auction sale, the parties should negotiate a post-closing budget and waterfall that sets forth the administrative expenses and confirms that the estate will have sufficient cash to make payments for all administrative expenses not assumed in the Sale.

Section 363 asset sales should not be used to circumvent the protections for unsecured creditors mandated by the Bankruptcy Code. *In re Westpoint Stevens, Inc.*, 333 B.R. 30, 52 (S.D.N.Y. 2005) (stating that "it is well established that section 363(b) is not to be utilized as a means of avoiding Chapter 11's plan confirmation procedures"), aff'd in part, rev'd in part on other grounds, 600 F.3d 231 (2d Cir. 2010) (citing *In re The Babcock & Wilcox Co.*, 250 F.3d 955, 960 (5th Cir. 2001)) ("[T]he provisions of § 363 ... do not allow a debtor to gut the bankruptcy estate before reorganization or to change the fundamental nature of the estate's assets in such a way that limits a future reorganization plan.")).

Therefore, the Sale should not be approved unless the Debtor can provide evidence that there will be sufficient sale proceeds and cash on hand which the Debtor is retaining at closing for the Debtor to: (a) satisfy all accrued and unpaid chapter 11 administrative expenses and priority claims; (b) satisfy all expenses that will accrue during the post-

closing wind-down period;[3] and (c) fund a distribution to unsecured creditors. See *Encore Healthcare Assocs.*, 312 B.R. at n.10 (Bankr. E.D. Pa. 2004) (noting that because Chapter 11 cannot be used to benefit only secured creditors, "most secured creditors understand the necessity of making some distribution available to other creditors as the price of a court-approved sale").

WHEREFORE, VFE respectfully requests that the Court enter its order compelling the Debtor to provide evidence of the amount of Secured and Administrative claims, and further order that the process for determining highest and best bids be open, transparent and applied equally to all Qualified Bidders.

DATED this 21st day of March, 2019.

**THE CROSS LAW FIRM, P.L.C.**

/s/ *James Cross (#9063)*
James E. Cross
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Counsel for Arlington Street Investments

Original filed and Copies of the foregoing
served electronically via the Court's
CM/ECF Notification System this 21st day of
March, 2019, on all parties that have
appeared in the case.

Additionally, COPIES sent via e-mail transmission
this 21st day of March, 2019, to:

| | |
|---|---|
| Hilary Barnes, Esq. | Elizabeth Amorosi, Esq. |
| Philip Giles, Esq. | Office of the U.S. Trustee |
| Allen, Barnes & Jones, PLC | 230 N. 1st Ave., Suite 204 |
| 1850 N. Central Ave., Suite 1150 | Phoenix, AZ 85003 |
| Phoenix, AZ 85004 | Email: elizabeth.c.amorosi@usdoj.gov |

---

[3] This is especially true if the Bondurant name and IP is not sold as an asset of this sale. VFE believes it shall take any purchaser a month or two to re-brand the operations after closing.

Email: hbarnes@allenbarneslaw.com
pgiles@allenbarneslaw.com
Counsel for Debtor

| | |
|---|---|
| Christopher Kaup, Esq.<br>Tiffany & Bosco, PA<br>Camelback Esplanade II, 7th Floor<br>2525 E. Camelback Rd.<br>Phoenix, AZ 85016<br>Email: crk@tblaw.com<br>Counsel for Patricia and Robert Bondurant | Sheryl Toby, Esq.<br>Dykema Gossett PLLC<br>39577 Woodward Ave., #300<br>Bloomfield Hills, MI 48304<br>Email: stoby@dykema.com<br>Counsel for FCA US, LLC |
| Christopher Simpson, Esq.<br>Stinson Leonard Street LLP<br>1850 N. Central Ave., Suite 2100<br>Phoenix, AZ 85004<br>Email: christopher.simpson@stinson.com<br>Counsel for FCA US, LLC | Larry Folks, Esq.<br>Folks Hess Kass, PLLC<br>1850 N. Central Ave., Suite 1140<br>Phoenix, AZ 85004<br>Email: folks@folkshesskass.com<br>Counsel for JPMorgan Chase Bank, NA |
| Michelle Shriro, Esq.<br>Singer & Levick, PC<br>16200 Addison Rd., Suite 140<br>Addison, TX 75001<br>Email: mshriro@singerlevick.com<br>Counsel for Moses Smith Racing, LLC | Thomas Littler, Esq.<br>341 W. Secretariat Dr.<br>Tempe, AZ 85284<br>Email: telittler@gmail.com<br>Counsel for Semple, Marchal & Cooper, PLC |
| Warren Stapleton, Esq.<br>Osborn Maledon, PA<br>2929 N. Central Ave., Suite 2100<br>Phoenix, AZ 85012<br>Email: wstapleton@omlaw.com<br>Counsel for Sun valley Marina Development Corporation | Jared Parker, Esq.<br>Parker Schwartz, PLLC<br>7310 N. 16th Street, Suite 330<br>Phoenix, AZ 85020<br>Email: jparker@psazlaw.com<br>Counsel for The Goodyear Tire & Rubber Company |
| Leslie Berkoff, Esq.<br>Moritt Hock & Hamroff, LLP<br>400 Garden City Plaza, #202<br>Garden City, NY 11530<br>Email: lberkoff@moritthock.com<br>Counsel for Unifi Equipment Finance, Inc. | Robert Miller, Esq.<br>Khaled Tarazi, Esq.<br>Bryan Cave Leighton Paisner, LLP<br>Two N. Central Ave., Suite 2100<br>Phoenix, AZ 85004<br>Email: rjmiller@bclplaw.com<br>Khaled.tarazi@bclplaw.com |

| | |
|---|---|
| | Counsel for Wells Fargo Vendor Financial Services, LLC and Wells Fargo Financial Leasing, Inc. |
| Mark Giunta, Esq.<br>Liz Nguyen, Esq.<br>Law Office of Mark J. Giunta<br>531 E. Thomas Rd., Suite 200<br>Phoenix, AZ 85012<br>Email: markgiunta@giuntalaw.com<br>　　　　liz@giuntalaw.com<br>Counsel for The Bancorp Bank | Robert Lapowsky, Esq.<br>Stevens & Lee, P.C.<br>620 Freedom Business Center, Suite 200<br>King of Prussia, PA 19406<br>Email: rl@stevenslee.com<br>Pro Hac Counsel for The Bancorp Bank |
| Scott Cohen, Esq.<br>Patrick Clisham, Esq.<br>Engelman Berger, PC<br>3636 N. Central Ave., Suite 700<br>Phoenix, AZ 85012<br>Email: sbc@eblawyers.com<br>　　　　pac@eblawyers.com<br>Counsel for Moses Smith Racing, LLC | Alan Meda, Esq.<br>Burch & Cracchiolo, PA<br>702 E. Osborn Rd., Suite 200<br>Phoenix, AZ 85014<br>Email: ameda@bcattorneys.com<br>Counsel for Bondurant Legacy Acquisition, LLC |

*/s/ Kara L. Stewart*