Hilary L. Barnes, #19669
Philip J. Giles, #30340
**ALLEN BARNES & JONES, PLC**
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona 85004
Office: (602) 256-6000
Fax: (602) 252-4712
Email: hbarnes@allenbarneslaw.com
       pgiles@allenbarneslaw.com

Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| In re: | Chapter 11 |
|---|---|
| Bob Bondurant School of High Performance Driving, Inc., | Case No. 2:18-bk-12041-BKM |
| Debtor. | **DECLARATION OF TIMOTHY H. SHAFFER**<br><br>Sale Hearing: March 22, 2019 at 10 am<br>Location: Courtroom 701 |

Timothy H. Shaffer, being duly sworn, states:

1. I am the Chief Restructuring Officer of Bob Bondurant School of High Performance Driving, Inc. (the "**Debtor**"), and I make this Declaration in support of the *Motion to Approve Sale of Assets Free and Clear of Lien* (the "**Sale Motion**") [ECF No. 179].

2. Unless otherwise noted, I have personal knowledge of the matters stated herein.

3. I have reviewed the Sale Motion, and if called to testify on the matters stated herein, I would testify consistently with those matters and this Declaration.

4. Since the Petition Date, the Debtor has operated its driving school ("**School**") and holds and controls its assets as a debtor-in-possession.

5. In 2011, the Debtor entered into a business line of credit ("**Line of Credit**"), pursuant to which Chase loaned to the Debtor $150,000, secured purportedly by a blanket lien against the Debtor's assets pursuant to a grant of security within a promissory note and a filed UCC-1 financing statement. The current amount due to Chase is approximately $149,813 [Claim No. 9], plus attorneys' fees. The Debtor is current on its obligations under the Line of

Credit.

6. On November 12, 2018, certain employees orchestrated a walkout, suspended an ongoing class and dismissed students from the classroom, and locked the doors to the School without the knowledge of its equity holders. The disruption generated significant negative media attention and inaccurate reports that the Debtor was going to convert the Case immediately to a Chapter 7 and was shuttering its doors for good.

7. The next day, on November 13, 2018, on an emergency basis, CEO Pat Bondurant engaged me as the Debtor's Chief Restructuring Officer ("**CRO**") [ECF No. 52]. I met with numerous employees who were part of the walkout, and after numerous discussions, certain key employees returned to work at the School. The Debtor restarted the School's operations less than a week after the walkout occurred.

8. Since I became CRO, the following events have occurred:

   a. The Debtor entered into the *Stipulated Order Granting Stay Relief, Adequate Protection, and Conditional Rejection of Contract* [ECF No. 119], a negotiated resolution with FCA USA, LLC, pursuant to which FCA USA, LLC has been granted stay relief upon the occurrence of certain triggering events, none of which have occurred.

   b. The Debtor's most long-standing sponsor, The Goodyear Tire & Rubber Company, terminated its 45-year relationship with the Debtor [ECF Nos. 94 and 162].

   c. With the assistance of broker Lovitt Touche, the Debtor obtained replacement financing and entered into a premium financing agreement [ECF Nos. 110 and 126]. Since January 1, 2019, the Debtor has paid nearly $180,000 in insurance premiums.

   d. The Debtor has continued to run the School's programs and hold events as usual; however, the foregoing events, stigma of the bankruptcy, the disruption caused by the walkout, and the subsequent media reports have

negatively affected the Debtor's operating capital, slowed its business, and significantly reduced its revenues.

e. Consequently, the Debtor became delinquent on its post-petition rent, and while its landlord, Sun Valley Marina Development Corporation ("**Sun Valley**"), has been patient and supportive of the School's operations during the bankruptcy, Sun Valley filed its *Motion to Compel Payment of Post Petition Rent* ("**Motion to Compel**") [ECF No. 118].

f. The Debtor has engaged in discussions, document and information exchange, and negotiations with more than 20 individuals and groups, subject to non-disclosure agreements, regarding debtor-in-possession financing and/or purchase transactions involving the Debtor's operations and assets. While these negotiations have been ongoing, Sun Valley agreed to continuances of the hearing on its Motion to Compel [ECF Nos. 134 and 145] and agreed to extend the Debtor's time to assume or reject the Sun Valley lease [ECF Nos. 136, 157, and 173].

g. On February 4, 2019, Arlington Street Investments stepped forward with a term sheet to provide debtor-in-possession financing to the Debtor, which if approved by the Court would have enabled the Debtor to resolve the Motion to Compel and move toward a sale, with Arlington Street Investments serving as the putative stalking horse bidder. The Debtor filed the *Emergency Motion to Approve Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Secured Financing; (II) Granting Security Interests and Liens to Debtor-In-Possession Lender and Related Relief* ("**DIP Financing Motion**") and related pleadings to have the DIP Financing Motion heard by the Court on an expedited basis [ECF Nos. 146-150].

h. On the morning of the hearing to consider the DIP Financing Motion,

Arlington Street Investments withdrew its offer to provide DIP financing.

    i. As a result, the Debtor could not press the DIP Financing Motion with the Court and resolve the Motion to Compel as intended. With no DIP financing, the Debtor had no choice but to stipulate to resolve the Motion to Compel by agreeing to turn over the leased premises to Sun Valley by March 1, 2019 [ECF No. 157].

    j. The Debtor then negotiated an additional 30-day extension from Sun Valley, or until April 1, 2019 ("**Turnover Deadline**"), to enable the Debtor to continue its negotiations with various parties interested in purchasing the School as a going concern [ECF No. 173].

    k. The Bancorp Bank ("**Bancorp**") filed a Motion for Relief from Stay [ECF No. 168] related to certain assets that the Debtor asserts are property of its bankruptcy estate. The Bancorp stay relief motion is pending, subject to the result of the hearing to consider the Sale Motion set for March 22, 2019 at 10 a.m. ("**Sale Hearing**").

9. Of the many parties with whom the Debtor executed non-disclosure agreements, AZNY22, LLC ("**AZNY22**") executed an Asset Purchase Agreement ("**APA**") with the Debtor. Pursuant to this Court's *Order Approving Bid Procedures For Sale of Assets* [ECF No. 207] ("**Bid Procedures Order**"), AZNY22 is now the stalking horse bidder, and the stalking horse bid ("**Initial Bid**") is comprised of the following:

    a. Cash payment of $300,000;

    b. Assumption of certain liabilities:

        i. Sun Valley Lease, including post-petition rent obligation, under amended terms negotiated with Sun Valley;

        ii. Student deposits in the amount of $250,000 or 33.3% of future revenue, whichever is higher at the Closing Date;

        iii. Hunter Fully Automatic Tire Changer Lease; and

        iv. Nitehawk Osprey II Lease.

10. The Initial Bid is subject to higher and better offers submitted at the Sale.

11. The Debtor has determined that the Sale of the Subject Assets pursuant to a competitive bidding process will recognize a greater return for the Debtor's estate, and enable the Debtor to propose a liquidating plan. Unfortunately, the Debtor has insufficient resources to engage in a long-term reorganization, and no party has stepped up to underwrite one. Absent the Sale, the Debtor will run into the Turnover Deadline, and a chapter 7 liquidation will follow, which will provide little to nothing for creditors of this estate.

12. The sale of the Debtor's Assets and operations must close no later than the Turnover Deadline, unless otherwise agreed by Sun Valley, to avoid rejection of the Debtor's real property lease with Sun Valley [ECF Nos. 118 and 173].

13. The Debtor has sent the Sale Motion, the Notice of Sale, and the Bid Procedures Order to the parties that executed NDAs and to all parties on the master mailing matrix.

14. The Bid Deadline passed on March 20, 2019. Based on their meeting the requirements set forth in paragraph j of the Bid Procedures Order, there are six Qualified Bidders:

   a. AZNY22, LLC
   b. Bondurant Holdings, LLC
   c. Liquid Asset Partners
   d. Bondurant Legacy Acquisitions, LLC
   e. Very Fast Enterprises, LLC
   f. Stig Investments, Inc.

15. The Debtor notified the Qualified Bidders, through counsel, that their bids were Qualified Bids and that Stig Investments has submitted the highest and best bid for the Subject Assets. The cash portion of its bid is $800,000, and among other things, it will assume 100% of the student deposit liability.

16. The Chase Line of Credit will be paid from the Sale proceeds. The purchase of the Subject Assets shall be subject to any other liens and encumbrances to extent provided by applicable law.

17. With regard to the United States Trustee's request for information regarding personally identifiable information, to my knowledge, the Debtor: (a) temporarily stores credit card information from some students on the SalesForce platform (SalesForce is a third-party customer relationship management platform); (b) is not selling or transferring any financial information to a buyer or any other third party; and (c) does not have a hard copy of the privacy policy that matches its electronic privacy policy.

18. I am prepared to consider and analyze the bids made by the Qualified Bidders at the Sale Hearing and provide my input to the Court for consideration in determining what constitutes the highest and best offer for the Debtor's Assets.

DATED: March 21, 2019.

/s/ *Timothy H. Shaffer*
TIMOTHY H. SHAFFER
Chief Restructuring Officer
Bob Bondurant School of High Performance Driving