Hilary L. Barnes, #19669
Philip J. Giles, #30340
**ALLEN BARNES & JONES, PLC**
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona 85004
Office: (602) 256-6000
Fax: (602) 252-4712
Email: hbarnes@allenbarneslaw.com
        pgiles@allenbarneslaw.com

Attorneys for the Debtor

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Bob Bondurant School of High Performance Driving, Inc.,<br><br>　　　　Debtor. | Chapter 11<br><br>Case No. 2:18-bk-12041-BKM<br><br>**REPLY IN SUPPORT OF SALE MOTION**<br><br>Hearing (Auction)<br>Date:　　　March 22, 2019<br>Time:　　　10:00 a.m.<br>Location:　230 First Avenue, Ctrm 701<br>　　　　　　Phoenix, AZ 85003 |

　　　　Bob Bondurant School of High Performance Driving, Inc., the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**"), hereby submits its Reply in support of the *Motion to Approve Sale of Assets Free and Clear of Lien* [ECF No. #179] ("**Sale Motion**") and responds to the four objections as follows.

　　　　***JPMorgan Chase Bank, N.A.'s Conditional Objection […]* [ECF No. 218].**

　　　　JPMorgan Chase Bank, N.A. ("Chase") conditionally objects to the Sale Motion on the grounds that it is a first-position over-secured lienholder entitled to full payment from the sale proceeds. There is no dispute (from the Debtor) that Chase holds a first-position, over-secured lien against the Debtor's business assets that are being sold at the auction on March 22, 2019 ("**Sale Hearing**"). The Debtor specifically provided for full payment of Chase's lien in the Sale

Motion. *See* Sale Motion, p. 8. Accordingly, the Debtor does not oppose the relief sought in Chase's conditional objection.

### *Sun Valley Marina Development Corporation's Limited Objection […]* **[ECF No. 221]**

Notwithstanding its general support of the proposed sale, Sun Valley Marina Development Corporation ("**Sun Valley**") objects to the Sale Motion on a limited basis by clarifying and restating its process for negotiating new or amended lease terms with the successful bidder. These concerns, requirements, and contingencies were discussed at the bid procedures hearing on March 14, 2019, and the Debtor and all Qualified Bidders are aware that without reaching a deal with Sun Valley, the Sale as contemplated cannot close. Accordingly, the Debtor does not oppose Sun Valley's limited objection to the extent Sun Valley: (i) seeks to set a continued hearing to discuss the progress of any lease negotiations with the successful bidder, or (ii) requires up to thirty days to close the sale.

With respect to Sun Valley opining on whether the stalking horse bid is in the best interests of the estate, this is no longer an issue in light of the bids received and the Initial Bid of $800,000.00 in cash plus assumption of 100% of the student deposit liabilities, among other terms. Simply, the Initial Bid has changed the bidding landscape significantly, and the Debtor expects a robust auction hopefully with even higher and better offers.

Finally, as to Sun Valley's administrative and pre-petition claims, counsel for Sun Valley, the Debtor, and the Qualified Bidders have all discussed the various payment and/or treatment options of these claims. Based on these discussions, undersigned counsel is confident these issues will be resolved at the auction or within a week or two thereafter.

### *Patricia and Robert Bondurant's Objection […]* **[ECF No. 220]**

Patricia and Robert (Bob) Bondurant (the "Bondurants") object to the Sale Motion to the extent the assets sold include any of the "museum cars" the Bondurants claim to own, and because the assets include intellectual property related to Bob Bondurant's name and likeness.

To be absolutely clear: no party wants to treat Bob Bondurant unfairly. All parties recognize he built this business over an illustrious 50-year career. What he owns, the Debtor is

not attempting to take. From the outset, the Debtor has disclosed that the "Museum Cars" are an open issue, that the Bondurants assert that Bob Bondurant's Trust owns those vehicles, and the transfer of those vehicles to the Trust occurred within 90 days prior to the bankruptcy. The Debtor raised this issue with the Bondurants to see if the ownership/transfer issues could be laid to rest entirely before the Sale Hearing, but that has not occurred. Therefore, to the extent, and only to that extent, the Debtor has an interest in the "Museum Cars" or in a cause of action related to those vehicles, that is what the Debtor has agreed to transfer to the buyer. Unfortunately, the declaration filed in support of the Bondurants' objection reveals there are multiple "Museum Cars" that have no clear evidence of ownership and multiple transfers possibly subject to chapter 5 causes of action.

The Bondurant declaration also sets forth new statements that are inconsistent with prior statements made under penalty of perjury and with publicly available information at the United States Patent and Trademark Office ("**PTO**") regarding the Debtor's ownership of the Bondurant trademarks. In the objection, Mr. Bondurant asserts he will not consent to the use of his name, which is used in various trademarks owned by the Debtor, including its name. Mr. Bondurant also asserts that he will not authorize the use of his image or likeness from "Memorabilia" and an "Archive" owned by the Debtor. However, the Debtor owns these marks, Memorabilia, and Archive, and as such, Mr. Bondurant cannot lawfully prevent the use of his name, image, or likeness embodied in the marks, or currently embodied in the Memorabilia and Archive; the Bondurant name embodies the significant goodwill that has been built over the 51-year history of the School.

As a threshold matter, the statement that Mr. Bondurant never transferred the right to use his name or the Memorabilia or the Archive to the Debtor (*see* Bondurant Declaration, paragraphs 5-8) is demonstrably false. The Debtor's schedules, signed under penalty of perjury, list the trademarks owned by the Debtor, complete with PTO registration. *See* Dkt # 47, pp. 8, 70-72 of 108. Those marks include the name "Bondurant," which is usable to mark clothes, hats, automobiles, driving and educational services, etc., "Bondurant High Performance Driving," the

"Bondurant Method," and Mr. Bondurant's personalized signature. Mrs. Bondurant cannot use a contradictory declaration now to attempt to create an evidentiary issue over what can be sold. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (party cannot use sham affidavit to contradict prior sworn testimony to avoid summary judgment); *Van Asdale v. Int'l Game Tech*, 577 F.3d 989, 998 (9th Cir. 2009) (same).

The Debtor is the record owner of all of the trademarks on the list and has owned many of these marks since the 1990s or early 2000s. This is confirmed by the information publicly available through the PTO, which is associated with the numbers found on the schedules. Any buyer will become the senior user of the mark(s), including the name Bondurant, and can enjoin others from using the same or similar mark for confusingly similar goods or services. The Bondurants cannot prevent a buyer from purchasing the marks owned by the Debtor, which include the right to use Mr. Bondurant's name consistent with the restriction on the marks. *See, generally, Levitt Corp. v. Levitt,* 593 F. 2d 463, 468 (1979).

Similarly, the Debtor's schedules list "museum" equipment (defined to include "memorabilia") and computers (the information archived in the "Archive") on the Debtor's schedules. *See* Dkt #47, p. 6 of 108. The information in the museum and available on the internet is published to the public at large and is covered under the "single-publication rule," which "limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication, thereby sparing the courts from litigation of stale claims when an offending book or magazine is resold years later." *Yeager*, 693 F.3d at 1081 (quoting *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166-67 (9th Cir. 2011) (internal quotation marks omitted)). "The single-publication rule applies to the internet. *Roberts*, 660 F.3d at 1167. In print and on the internet, statements are generally considered "published" when they are first made available to the public." *Yeager*, 693 at 1081-82. And, as the Yeager decision makes clear, merely adding information to the website, or continuing to host the website, do not constitute republication of a person's likeness or image. *See id.* at 1082-83.

This has three practical implications for the sale and the Bondurants. First, as the

Debtor owns the Memorabilia and Archive, it can sell the right to use the images and likeness of Mr. Bondurant already published in the Memorabilia and Archive within the museum and on the website. Second, the tort of "violating a person's privacy by using their likeness" has a two-year statute of limitation in Arizona and, even if the Bondurants might have some claim, the publication of these images and likenesses years ago means that their claims are time-barred. In addition, while Mr. Bondurant may have had a common law "right of publicity" in his signature and his likeness, these were both conveyed to the company (i.e. trademark registrations 3375193 and 3377443). Third, it likely is true that the new publication of new images or new likenesses would require a license from Mr. Bondurant. A.R.S. § 12-542. But those are not being sold. If any buyer wants to have new marketing materials prepared to take advantage of new images, or new content, the buyer is free to obtain a license from Mr. Bondurant. The buyer cannot, however, be required to pay a license fee for the trademarks, Memorabilia and Archive the Debtor already owns. *See Levitt Corp. v. Levitt,* 593 F. 2d 463, 468 (1979) ("When a business purchases trademarks and goodwill, the essence of what it pays for is the right to inform the public that it is in possession of the special experience and skill symbolized by the name of the original concern, and of the sole authority to market its products").

Based on the foregoing, the Bondurants' objection should be overruled.

### *VFE's Joinder in Objection […]* **[ECF No. 223].**

Very Fast Enterprises, LLC, successor in interest to Arlington Street Investments ("VFE") and a Qualified Bidder, filed an untimely joinder to again voice criticism of the sale process. Notably, no other Qualified Bidders have objected to the Sale and presumably plan to attend and participate in the auction.

Nevertheless, VFE complains that the sale process has not been transparent or fair and equitable to all bidders. This statement is false. In fact, the Debtor had to require VFE to comply with certain of the approved Bid Procedures related to becoming a Qualified Bidder that all other Qualified Bidders provided without fuss. Additionally, despite this Court's entry of the Bid Procedures Order, VFE continues to challenge those procedures and Chief Restructuring

Officer's ability to evaluate the bids and weigh in on what he believes to be the highest and best offer, even though the Bid Procedures Order is clear that the Court makes the final decision regarding what constitutes the highest and best offer. The Procedures have been approved, followed as stated, and the Debtor is headed to an auction within hours.

Finally, this expedited process has been fluid, and the Debtor has been as transparent and responsive as possible to all the parties in interest. Each of the Qualified Bidders also engaged in their own due diligence, albeit some more than others. The Bid Procedures Order specifies that "a Potential Bidder that becomes eligible to bid at the Sale shall be determined to have participated in the Sale process based upon its own due diligence and upon its own evaluation of the Subject Assets and not upon representations made by the Debtor." To the extent VFE believes it does not have enough information, it must decide whether it wants to or should bid rather than trying to prevent other Qualified Bidders from doing so. And the Debtor is informed and believes that other Qualified Bidders are willing to do so. Accordingly, VFE's Objection should be overruled.

**WHEREFORE**, the Debtor respectfully requests the Court to overrule the objections and permit the March 22nd auction of the Subject Assets at the Sale Hearing to move forward as scheduled.

DATED: March 22, 2019.

Respectfully submitted

**ALLEN BARNES & JONES, PLC**

/s/ *HLB #019669*
Hilary L. Barnes
Philip J. Giles
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona 85004
*Attorneys for the Debtor*

**E-FILED** on March 22, 2019 with the U.S. Bankruptcy Court and copies served via ECF notice on all parties that have appeared in the case.